JOHN S. LEONARDO
United States Attorney
District of Arizona

Kristen Brook
Joseph E. Koehler
Arizona State Bar No. 023121
Arizona State Bar No. 013288
Assistant United States Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: kristen.brook @usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-15-707-PHX-SRB (MHB) |
|---|---|
| Plaintiff, | **GOVERNMENT'S BRIEF IN SUPPORT OF DETENTION** |
| vs. | **(FILED UNDER SEAL)** |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

**INTRODUCTION AND SUMMARY OF ARGUMENT**

The detention hearing for Abdul Malik Abdul Kareem ("Kareem") is scheduled for June 16, 2015, at 4:00 p.m. For the reasons set forth below, the Court should order that Kareem be detained pending trial. Kareem has been indicted for facilitating an attempted mass murder—the May 2015 attack on the attendees of the Muhammad Art Exhibit and Contest in Garland, Texas, that resulted in the death of two of Kareem's close associates and the wounding of a law enforcement officer. The circumstances of this crime, standing alone, easily compel the conclusion that Kareem is a grave danger to the

community and a flight risk. But there is more. Kareem is also a felon with a long history of violating court orders; has used his computer to view inflammatory material advocating the use of weapons of mass destruction and violence toward civilians; and had several firearms and body armor in his possession when he was arrested on the current charges. It is difficult to imagine a stronger case for detention.

At the hearing, the United States will rely on the Pretrial Services Report ("PTS Report") and on a proffer (contained below) detailing the attack in Garland, Texas on May 3, 2015, and on actions preparatory to that attack, as well as a description of weapons found in Kareem's possession when he was arrested on the instant charges. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay."). The United States also may present testimony at the hearing, if the Court wishes to hear testimony from a Special Agent with the Federal Bureau of Investigation (FBI).

**FACTUAL AND PROCEDURAL HISTORY**

The Prior Convictions. This case is not Kareem's first brush with the criminal justice system. Between 1991 and 2004, Kareem was arrested eleven times for a myriad of offenses, convicted three separate times of the crime of Driving under the Influence of Alcohol ("DUI"), and convicted on a separate occasion of the crime of Disorderly Conduct. *See* PTS Report at 4-6.

On three separate occasions, Kareem failed to comply with court orders and had his probation reinstated or continued. *Id*. In December 1997, Kareem was convicted of Disorderly Conduct and sentenced to three months of jail and two years of probation. *Id*. Kareem was serving this term of probation when he was arrested in April 1998 for a misdemeanor DUI offense, for which he was convicted and sentenced to five years of probation. *Id*. Three months later, Kareem was arrested again for DUI, this time a felony offense. *Id*. In November 2001, Kareem was convicted of the felony offense and sentenced to four months in jail and four years of probation. *Id*. Kareem was still

serving both terms of probation for these separate DUIs when he was arrested again in April 2004 for another felony DUI offense. *Id.* He was convicted of this crime in November 2004. *Id.*

The Current Offense. On June 10, 2015, an Arizona grand jury returned a three count indictment against Kareem. *See* CR 1. Broadly speaking, the indictment alleges that Kareem, his co-conspirators Elton Francis Simpson ("Simpson") and Nadir Hamid Soofi ("Soofi"), and others planned to attack and disrupt the Muhammad Art Exhibit and Contest held at the Curtis Culwell Center in Garland, Texas. *Id.* Simpson and Soofi drove from Arizona to the Curtis Culwell Center in Texas, stopped their car, got out and began shooting with assault rifles at security personnel and law enforcement. A security guard was stuck by a bullet and injured, and Simpson and Soofi were shot and killed by police officers. *Id.* The indictment further alleges that Kareem helped facilitate the attack by providing firearms to Simpson and Soofi, traveling to remote desert areas to practice shooting with Simpson and Soofi, and that hosting Simpson, Soofi and others in his home to discuss plans to travel to Texas and conduct an attack on the contest. *Id.*

The United States hereby proffers that Simpson and Soofi arrived at the Muhammad Art Exhibit and Contest prepared to carry out a lethal attack with multiple weapons and well over a thousand rounds of ammunition. Simpson and Soofi had in their possession six weapons, including an Elk River Tool and Die, Inc. ERTD Rifle - 5.45x39 caliber, a Keltec Sub-2000 9mm rifle, a Hi-Point C9 9mm pistol, a Romarm/Cuir Draco 7.62x39 caliber, a Taurus 605 5-shot revolver, and a Jimenez Arms J.A. nine 9mm pistol. The United States further proffers that a witness previously observed Simpson, Soofi and Kareem all handling several of these exact weapons.

The United States also proffers for the Court's consideration that approximately 125 people were in attendance at the Muhammad Art Exhibit and Contest at 6:45 pm, shortly before the event was set to conclude. Moreover, Simpson and Soofi arrived minutes before those individuals would have left the event, headed for the parking lot.

<u>The Arrest</u>. On June 10, 2015, Kareem was arrested on the current charges.

The United States hereby proffers that, Kareem, a prohibited possessor by virtue of his two prior felony DUI convictions, was arrested in possession of two weapons and admitted those weapons were his. Additionally, Kareem was also arrested in possession of a bullet proof vest.

<u>The PTS Report</u>. The PTS Report was issued on June 11, 2015. It concludes that Kareem poses both a flight risk and a danger to the community due to his prior criminal history, which includes arrests for assaultive behavior, his abuse of alcohol, his history of mental health issues, including post-traumatic stress disorder, history of abusing alcohol, and three failures to comply with court orders. *Id.* at 6.

Nevertheless, the PTS Report recommends that Kareem be released pending trial. *Id.* at 6. It states that release is warranted because the risks of flight and danger can be minimized through an order to not possess any firearms, destructive devices, or other dangerous weapons or ammunition, random drug-testing, drug/alcohol treatment, mental health treatment, employment requirements, and pretrial supervision. *Id.*

### ARGUMENT

I. **<u>The Court Should Order Detention Based On The Risk Of Flight</u>**.

As the Court is no doubt aware, "[t]he Bail Reform Act . . . requires a district court to order a defendant detained pending trial if 'no condition or combination of conditions will reasonably assure the appearance of the person as required.'" *United States v. Gentry*, 455 F. Supp. 2d 1018, 1019-20 (D. Ariz. 2006) (quoting 18 U.S.C. § 3142(e)). This analysis involves a "two-step inquiry." *Id.* First, the court must make a finding as to whether the defendant presents a "serious risk that such person will flee" if not detained. *Id.* at 1020 (quoting 18 U.S.C. § 3142(f)(2)(A)). The government bears the burden of proving such risk of flight by a preponderance of the evidence. *Id.*

Second, if the defendant is likely to flee, the court next must determine whether some set of conditions would sufficiently vitiate that risk. *Id.* (citing 18 U.S.C. §

3142(g)). "In making the determination whether conditions exist that would reasonably assure a defendant's appearance, Section 3142(g) requires the district court to take into account four statutory factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or community that would be posed by the person's release." *Id.*

As explained below, these factors compel the conclusion that Kareem is a flight risk and that no combination of conditions exist to overcome this risk.

A. <u>Kareem Is A Flight Risk</u>.

As the PTS Report correctly concludes, Kareem poses a flight risk for several independent reasons.

First, Kareem constitutes a flight risk because he self-reports suffering from post-traumatic stress disorder, which may make him less able to follow release conditions.

Second, Kareem's history of abusing alcohol increases his risk of flight. As noted, Kareem has been arrested four times and sustained three prior DUI-related convictions.

Third, Kareem also constitutes a flight risk because he has demonstrated in the past that he is unable (or unwilling) to comply with release conditions. Kareem's history of failing to comply with court orders is significant. Three times for three separate probation sentences, Kareem's terms of probation was reinstated or continued based upon reoffending while on probation. *Id.* These violations show that Kareem was unwilling to abide by the release conditions set by a court. There is no reason to believe he will show greater respect for any release conditions set by this Court. *United States v. Weaver*, 2006 WL 1719531, *2 (N.D. Ill. 2006) (ordering detention in part because "[t]he fact that

Weaver . . . engaged in fraudulent activity while on supervised release shows that Weaver has little respect for court orders").

Fourth, and not mentioned in the PTS report, Kareem faces a potentially lengthy prison sentence if convicted of the current charges. He has been indicted on three felony counts, one of which is punishable by a statutory maximum sentence of ten years and two of which are punishable by a statutory maximum sentence of 5 years, and he faces a substantial prison term under the Sentencing Guidelines. The base offense level for Interstate Transportation of Firearms with Intent to Commit a Felony is 20, as the offense involved a semiautomatic firearm that is capable of accepting large capacity magazine and the defendant was a prohibited person at the time of instant offense, and an enhancement of 2 levels may apply if Kareem is deemed responsible for all of the weapons associated with the scheme and 4 levels for possessing any firearm or ammunition in connection with another felony offense; or possessing or transferring any firearm or ammunition with knowledge, intent or reason to believe that it would be used or possessed in connection with another felony offense. *See* USSG § 2K2.1(b)(A) and (6)(B). Even if all of Kareem's prior convictions fall outside of the Guidelines due to age, *see* USSG § 4A1.1, the sentencing range at Level 26, Category I is 63-78 months. Such substantial exposure cuts in favor of finding a risk of flight. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); *United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("He is further a 'flight risk' considering his extensive criminal record . . . and the potential harsh sentence."). In addition, Kareem faces additional exposure—in the form of superseding charges—based on the fact he was in possession of firearms at the time of arrest.

    B.    <u>No Conditions Exist To Reasonably Assure Kareem's Appearance</u>.

Although the PTS Report concludes that Kareem's risk of flight can be mitigated through random drug-testing, drug/alcohol treatment, mental health treatment, employment requirements, and pretrial supervision, the United States respectfully disagrees that such release conditions would be adequate here.

Nature of Crime. The first factor to be considered when assessing the adequacy of release conditions is "the nature and circumstances of the crime charged, including whether the offense is a crime of violence . . . or involves . . . a firearm, explosive or destructive device." *See* 18 U.S.C. Section 3142(g)(1). Here, this factor is significant. The crimes charged in the indictment involve firearms and the potential mass murder of dozens, if not more, by the defendant's co-conspirators. Moreover, it cannot be overlooked that Kareem faces substantial exposure if convicted.

Weight of Evidence. The second factor to be considered when assessing release conditions is "the weight of the evidence against the person." *See* 18 U.S.C. § 3142(g)(2). Here, this factor weighs in favor of detention. As a threshold matter, the grand jury already has found that probable cause supports the charges against Kareem. This, alone, is enough to show that the weight of the evidence supports detention. *United States v. Hamlin*, 2007 WL 2225868, *1 (E.D. Mich. 2007) ("Under subsection (g)(2), from the a grand jury having passed an Indictment, there is a definite weight of evidence against the Defendant."); *United States v. Bradshaw*, 2000 WL 1371517, *4 (D. Kan. 2000) ("[T]he grand jury's indictment, standing alone, establishes probable cause . . . . The Government presented no other evidence. Nor did the defendant. Accordingly, the weight of the evidence must be deemed against the defendant. This factor thus weighs in favor of detention, but only slightly.").

In this case, Confidential Source 1 (CS #1)[1] reported to law enforcement that Kareem told him about the Muhammad Art Exhibit and Contest before May 3, 2015. Moreover, Kareem told CS #1 that he (Kareem) planned to attack the event along-side Simpson and Soofi. In January or Feburary of 2015, CS # 1 reported that Kareem attempted to purchase silencers and bullet proof vests from him. CS # 1 also reported that Kareem was angry at CS #1 for not selling him the vests and silencers. CS # 1 also reported that he twice went shooting with Kareem, Simpson and Soofi in the desert prior to May 3, 2015.

In addition, Confidential Witnesses (CW #1)[2] reported to law enforcement that several months prior to the attack in Garland, Texas, Kareem insisted CW #1 take him (Kareem) and Simson and Soofi shooting in the desert - a place Kareem could fire assault weapons. CW #1 also reported that Kareem drove Simpson and Soofi to the desert to shoot. CW # 1 identified three weapons Kareem, Simpson and Soofi fired that day. Those three weapons were found at the scene in Garland, Texas.

History of Defendant. The third factor to be considered when assessing release conditions is "the history and characteristics of the" defendant. *See* 18 U.S.C. ϲ 3142(g)(3). Here, this factor weighs heavily in favor of detention. As noted above, Kareem has at least four criminal convictions, has repeatedly failed to comply with court orders on probation, and has a history of disregarding his release conditions.

---

[1] CS # 1 was recently arrested on domestic violence charges for kidnapping and adult sex trafficking, which have not yet been adjudicated. CS # 1 was paid a one-time payment of $500.00 by the F.B.I. on or about May 15, 2015. Anecdotal information suggests that CS # 1 has stolen vehicles and used illegal drugs in the past.

[2] Over 10 years ago, CW # 1 was convicted of three misdemeanor offenses. Anecdotal information suggests that CW # 1 has used illegal drugs in the past.

Danger to Others. The final factor to be considered when assessing release conditions is the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. Section 3142(g)(4). This factor again cuts in favor of detention. As noted, Kareem already has been convicted of two felony offenses, has an acknowledged alcohol problem, mental health issues, carries and possesses weapons despite the fact that he is prohibited from doing so under Arizona law, and was arrested in possession of a bullet proof vest. These are the hallmarks of dangerousness. *United States v. Stenger*, 536 F. Supp. 2d 1022, 1028 (S.D. Iowa 2008) (noting that the Defendant has six prior felony convictions, including a robbery conviction. . . . He has a sporadic work history, a history of substance abuse, and a history of unsuccessful treatment and failed efforts to comply with supervision. Given the Defendant's criminal history, along with the nature of the current charge, . . . the Defendant would pose a serious risk to the community if released on his own recognizance pending trial). He also stands charged with attempting to facilitate a mass murder and has used his computer to view extremist videos advocating violence.

II.     **The Court Should Order Detention Based On Danger To The Community.**

In addition to seeking detention based on the risk of flight, the United States also seeks detention on the ground that Kareem poses a risk of danger to the community. The government bears the burden of proving such danger by clear and convincing evidence. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

The United States re-incorporates the arguments set forth above. Kareem poses a flagrant risk of danger to others and no release conditions would be adequate to overcome this risk. *Stenger*, 536 F. Supp. 2d at 1029 (The Defendant's history is indicative of dangerousness . . . and his past difficulties in supervisory settings demonstrate that no condition or combination of conditions will reasonably assure the safety of the public if the Defendant is released prior to trial in this matter).

Beyond the attack at issue in the indictment, the Government has information that Kareem sought to obtain destructive devices and discussed plans to attack other venues. CS #1 reported to law enforcement that beginning on or about January 1, 2015, Kareem, Simpson, and Soofi asked him if he knew how to build pipe bombs. CS #1 stated that over the next several weeks, all three would continue to pressure CS #1 to either build them a pipe bomb, show them how to make one, or help them find someone who could. On May 8, 2015, CS #1 engaged in a consensually recorded, coded telephonic conversation with Kareem, during which they followed up on the earlier, unrecorded discussions to purchase pipe bombs and silencers. During the telephone call, the following conversation took place:

CS #1: "I found some things you asked me about a while ago."

KAREEM: "I know what you talking about… What was the number?"

CS #1: "Like, 350."

KAREEM: "For real?"

CS #1: "Yeah, but I mean, there are cheaper ones… I just don't know… that was just for a really nice one… he had some for like a bill-fifty, a hundred bucks."

KAREEM: "Yeah, we'll get together."

CS #1: "All right."

KAREEM: "You think they'll still have them?"

CS #1: "Yeah, they'll have them, it's like a solid connect, I've already gone through them, like, twice now, so…"

KAREEM: "All right, that'll work… that will definitely work…"

In an interview with the FBI on or about May 14, 2015, CS #1 further advised that Kareem had previously spoken to CS #1 about a plot to utilize explosive devices during the Super Bowl, which took place in Arizona in February, 2015. CS #1 advised that the

details of the plot were not shared. In an earlier interview with the FBI, CS # 1 reported that Karim, Simpson and Soofi all stated that they would like to join ISIS.

The government's investigation into Kareem has revealed one additional significant fact probative of danger. On July 20, 2012, a state search warrant was executed at the residence of a man living in an apartment in Phoenix. The search warrant was for an investigation related to the creation of fraudulent Arizona State University degrees and the subject of the investigation resided with Kareem and Elton Simpson. During the search, several items were seized that were eventually identified as belonging to or used by Kareem. Among the items seized were a Lenovo 0768 laptop and a Memorex 2 GB flash drive, which were forensically analyzed.[3]

A search of the Lenovo 0768 laptop revealed the presence of a document entitled the "GIMF Security and Intelligence Course," recovered from the Recycle Bin from the laptop. The same document was also discovered on the Memorex 2 GB flash drive. The United States proffers that GIMF is a media distributor utilized by the media wings of some al-Qaeda affiliates and that the Security and Intelligence Course advises readers on proper tradecraft in order to ensure operational security and evade detection by authorities. The flash drive also revealed the presence of the following seven documents/media: A Treatise on the Legal Status of Using Weapons of Mass Destruction Against Infidels by Sheikh Nasir Bin Hamad al-Fahd (PDF); The Rageh Omaar Report – From Minneapolis to Mogadishu (mp4); Training that makes killing civilians acceptable (mp4); When the Terrorist were Freedom Fighters (mp4); Inspire

---

[3] On January 23, 2014, Kareem was telephonically interviewed by an FBI task force officer. During the interview, Kareem admitted that the Lenovo 0768 laptop (at that time in FBI custody) was his property. Kareem denied ownership of the Memorex 2 GB flash drive, although he did admit that the flash drive was in his computer at the time the search warrant was executed.

Magazine Issue 8; Inspire Magazine Issue 9; An article from the extremist website Unjust Media, "The Ruling on Dispossessing the Disbelievers Wealth in Dar al-Harb"

**III. Conclusion**

For the foregoing reasons, the Court should order that Kareem be detained.

Respectfully submitted this 15th day of June, 2015.

                                              JOHN S. LEONARDO
                                              United States Attorney
                                              District of Arizona

                                              *s/ Kristen Brook*
                                              Kristen Brook
                                              Joseph E. Koehler
                                              Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, June 15, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Daniel Maynard

3200 N. Central Ave., Ste. 1800

Phoenix, AZ 85012

*s/Andrea Flores*

Kristen Brook

Assistant United States Attorney