1   JOHN S. LEONARDO
    United States Attorney
2   District of Arizona

3   KRISTEN BROOK
    Arizona State Bar No. 023121
4   JOSEPH E. KOEHLER
    Arizona State Bar No. 013288
5   Assistant U.S. Attorneys
    Two Renaissance Square
6   40 N. Central Ave., Suite 1200
    Phoenix, Arizona  85004
7   Telephone:  602-514-7500
    Email: kristen.brook@usdoj.gov
8   Email: joe.koehler@usdoj.gov
    Attorneys for Plaintiff

9

10                  IN THE UNITED STATES DISTRICT COURT

11                     FOR THE DISTRICT OF ARIZONA

12
    United States of America,              No. CR-15-00707-01-PHX-SRB
13
                     Plaintiff,
14                                         **GOVERNMENT'S RESPONSE TO**
         vs.                               **MOTION TO PRECLUDE OR LIMIT**
15                                         **EXPERT TESTIMONY**

16  Abdul Malik Abdul Kareem,

17                     Defendant.

18
            The United States of America, through undersigned counsel, respectfully submits
19
    this opposition to defendant Kareem's motion to preclude or limit the expert testimony of
20
    Evan Kohlmann. As described below and in the updated expert report attached as Exhibit
21
    A, Kohlmann will help put the Government's evidence in context in this case. For
22
    example, Kohlmann will explain the history of the modern global violent jihadist
23
    movement as well as the history and structure of the Islamic State of Iraq and the Levant
24
    (ISIL) and its various aliases, including the Islamic State of Iraq and Syria (ISIS)
25
    (hereinafter referred to as ISIS)  Additionally, he will explain the emergence of ISIS and
26
    its relationship with the al Qaeda organization and al Qaeda in the Arabian Peninsula
27
    during the period leading up to and covered by the Indictment. Kohlmann will identify
28

key leaders and members of these global jihadist movements, many of whom will be mentioned during the trial.

In addition, Kohlmann will explain how ISIS is engaged in online recruitment. Kohlmann will explain the communication platforms used by ISIS as well as their communication techniques and strategies.   Kohlmann will further explain global jihadists' use of video and audio recordings distributed through news agencies or the Internet, to recruit willing participants to join ISIS or to otherwise engage in jihad by carrying out attacks against the United States.   Finally, Kohlmann will explain how certain items of evidence collected in the investigation of this matter are specifically related to the violent jihadist movement.

As discussed below, Kohlmann's methods are reliable, and his testimony is relevant, will be helpful to the jury, and is not unfairly prejudicial. The Court therefore should deny defendant's motion.

**A.    Applicable Law**

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) the Supreme Court held that FRE 702 imposes a "gatekeeping" obligation on the trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Id*. at 589.   In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that the gatekeeper role is not just limited to scientific expert testimony, but

applies to all expert testimony.  The trial court has broad discretion to decide whether to admit expert testimony and "must have the same kind of latitude in deciding how to test an expert's reliability."  *Kumho Tire Co.*, 526 U.S. at 1176.  The *Daubert* factors were not intended to be exhaustive nor apply in every case.  *Id*. at 1178.

"Likewise, in considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally. (Internal citation omitted.)" *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).  In admitting the testimony of a police officer about gang practices, the Ninth Circuit found that "[t]he *Daubert* factors (peer review, publication potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hankey* at 1169.   In fact, when an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical frame," but instead can be found reliable based on the expert's knowledge and experience alone. *Hangarter v. Provident Life and Acc. Ins. Co*., 373 F.3d 998, 1018 (9th Cir. 2004).

The "Rules of Evidence provide a liberal standard for the admissibility of expert testimony," *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003), as "[e]xpert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

Courts have "considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. The object is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.  *See* Advisory Committee Notes to Fed. R. Evid., Rule 702.  As described herein, specific to the type of testimony at issue here,

courts have repeatedly approved the admission of expert testimony regarding terrorist organizations and activities.  Moreover, "[t]he Rule of Evidence has a strong and undeniable preference for admitting any evidence which has the potential of assisting the trier of fact.  *Kannankeril v. Terminix International, Inc.*, 128 F.3d 802, 806 (3rd Cir. 1997); *see also*, *Daubert*, 509 U.S. at 588.

Under these standards, a number of Federal Circuit Courts have specifically upheld the admission of Kohlmann's expert testimony relating to terrorism issues.  *See, e.g.*, *United States v. Farhane*, 634 F.3d 127, 158-60 (2d Cir. 2011) (upholding Kohlmann's expert testimony regarding "al Qaeda and Azzam Publications, the publisher of a jihadist videotape"); *United States v. Mustafa*, 406 Fed. Appx. 526, 528-29 (2d Cir. 2011) (affirming the trial court's decision to allow Kohlmann to testify as a "terrorism expert" regarding al Qaeda); *United States v. Aref*, 285 Fed. Appx. 784, 792 (2d Cir. 2008) (upholding Kohlmann's expert testimony regarding Pakistani and Kurdish terrorist groups); *United States v. Paracha*, 313 Fed. Appx. 347, 351 (2d Cir. 2008) (upholding Kohlmann's expert testimony regarding "the organization and structure of al Qaeda"). More recently, the Fourth Circuit, in *U.S. v. Hassan et al*, 742 F.3d 104, 131 (4th Cir. 2014) affirmed the trial court's decision to admit Kohlmann's expert testimony regarding terrorism.  *See also*, *United States v. Benkahla*, 530 F.3d 300, 309 (4th Cir. 2008).

**B.   Kohlmann's Testimony Is Reliable**

Kohlmann has previously testified as an expert witness in thirty-one federal criminal trials in the United States between 2004 and 2015.  He has testified twice in military commission trials held in Guantanamo Bay, Cuba. And he has testified in twelve different foreign courts and tribunals as an expert witness on terrorism issues. He has also testified regarding terrorism issues before both House and Senate subcommittees in Congress.  Kohlmann is a civilian who is often retained by various law enforcement agencies around the world because of his expertise on terrorism matters. As set out in his curriculum vitae (attached as Exhibit B), he is the founder and Chief Research and Development Officer for an international intelligence and cybersecurity firm known as

Flashpoint Global Partners.  Kohlmann also provides on-air analysis and discussion for NBC News and MSNBC for news stories related to international terrorism.

Kohlmann holds a degree in International Politics from the Edmund A. Walsh School of Foreign Service from Georgetown University.  Additionally, he has a Juris Doctor degree from the University of Pennsylvania Law School.  He also is the recipient of a certificate in Islamic studies from the Prince Alwaleed bin Talal Center for Muslim-Christian Understanding at Georgetown.  As detailed in Exhibit A, Kohlmann has authored a substantial number of papers on terrorism related topics including the use of online social media by terrorist organizations.  He has published a book entitled Al'Qaida's Jihad in Europe: the Afghan-Bosnian Network which is utilized in graduate–level terrorism courses at Harvard University's Kennedy School of Government, Princeton University and the John Hopkins School of Advanced International Studies.  Contrary to defendant's claims, this publication was peer reviewed as were a number of his papers.

In addition to his extensive academic background, Kohlmann has been researching terrorist movements since 1997.  His methods include interviewing known terrorist recruiters and organizers as well as his attendance at underground conferences and rallies.  He has amassed one of the largest collections of terrorist multimedia and propaganda from open source documents including sworn legal affidavits, court exhibits, video and audio recordings, text communiques, eyewitness testimonies and archived Internet sites.

There is more than a sufficient factual basis to support Kohlmann's opinions here.  Even if the factual basis were lacking, however, "[t]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility; it is up to the opposing party to examine the factual basis for the opinion in cross-examination.  Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."  *Bonner v. ISP Tech, Inc.*, 259 F.3d 924, 929-930 (8th Cir. 2001) (citing *Hose v. Chicago NW Transp. Co.*, 70 F.2d 968, 974 (8 Cir. 1996)).

In *Farhane*, the Second Circuit affirmed the introduction of Kohlmann's expert testimony, holding:

> Kohlmann's proposed expert testimony had a considerable factual basis: (1) his graduate studies at Georgetown University's School of Foreign Service and Center for Contemporary Arab Studies and at the University of Pennsylvania Law School; (2) his full time employment at two organizations focusing on terrorism and al Qaeda, "Globalterroralert.com" and the Investigative Project; (3) his authorship of various academic papers and a book on al Qaeda; (4) his provision of consulting services on terrorism and al Qaeda to various federal agencies; and (5) his ongoing efforts to collect, analyze, and catalogue written, audio, and visual materials relevant to terrorism generally and al Qaeda in particular, including the records of guilty pleas and confessions from admitted al Qaeda operatives. *Farhane*, 634 F.3d at 158-59.

Defendant claims that Kohlmann's "report and projected testimony have not grown naturally and directly out of research but rather have been developed expressly for the purpose of testifying in this case." Defendant's Motion to Preclude, p. 10. Defendant's sweeping allegation is both unsubstantiated and contrary to the facts. As described above, Kohlmann has been conducting independent research into terrorist organizations since as early as 1997, well before the current litigation began. As a result, he has collected a vast amount of information and documentation concerning the subject matter of terrorism.

Defendant correctly cites the Ninth Circuit's *Daubert* decision on remand for the proposition that "independent research carries its own indicia of reliability, as it is conducted, so to speak, in the usual course of business and must normally satisfy a variety of standards to attract funding and institutional support." Defendant's Motion to Preclude, p. 10. To this point, in 2013, Kohlmann's company, Flash Point Global Partners, received a sizeable grant from the Canadian government to study how the Internet was being used to radicalize individuals and recruit them for terrorist organizations. Kohlmann's independent research has not only been conducted in the

normal course of business, but it has also satisfied a variety of standards to attract funding and institutional support.

Kohlmann's research regarding terrorist organizations not only preexisted this litigation, but it was also unrelated to the litigation.  Only his opinions as to how that research relates to this litigation was created in connection with this matter.  Clearly, Kohlmann has acquired the requisite specialized knowledge through his independent research and his extensive studies to be deemed qualified and reliable as an expert in this case.  Consistent with the multiple decisions establishing the reliability of Kohlmann's testimony on terrorism-related topics, the Court should deny defendant's motion and allow Kohlmann to testify as an expert on ISIS and other terrorist organizations.

**C.  Kohlmann's Testimony Does Not Implicate the Sixth Amendment Right to Confrontation or *Crawford v. Washington***

Defendant argues that Kohlmann should be precluded from "introducing custodial or testimonial statements at trial," because such testimony would "constitute inadmissible hearsay and would violate Abdul Kareem's constitutional rights under the Confrontation Clause as established in the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. at 61, because Abdul Kareem would not have the opportunity to confront or cross-examine the declarants on their statements."  Defendant's Motion to Preclude, p. 11.  But because none of the information upon which Kohlmann relies will be offered in evidence to prove its truthfulness, it is not hearsay.  Rule 801(c)(2), Fed. R. Evid.  Moreover, even if it were hearsay, it consists of non-testimonial evidence that is not subject to the demands of the Sixth Amendment.  *See Crawford*, 541 U.S. at 69.

Federal Rule of Evidence 703 explicitly allows an expert to base "an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Fed. R. Evid., Rule 703.  "It has long been accepted that an expert witness

1   may voice an opinion based on facts concerning the events at issue in a particular case
2   even if the expert lacks first-hand knowledge of those facts." *Williams v. Illinois*, 132
3   S.Ct. 2221, 2233 (2012).  Although Kareem fails to specify any particular statement that
4   should be precluded, he generally refers to the information upon which Kohlmann relies
5   as "propaganda and rhetoric issued in communiques by 'media wings' designed for
6   political and/or public relations purposes (as well as to promote personal and
7   organizational rivalries)…." Defendant's Motion to Preclude, p. 11.  Reliance upon such
8   information, however, would create no Confrontation Clause violation because "[t]he
9   Confrontation Clause refers to testimony by 'witnesses against' an accused." *Williams*,
10  132 S.Ct. at 2242.

11       Unlike the information upon which Kohlmann relies here, "[i]n all but one of the
12  post-*Crawford* cases in which a Confrontation Clause violation has been found" by the
13  Supreme Court, the statements at issue have involved both "out-of-court statements
14  having the primary purpose of accusing a targeted individual of engaging in criminal
15  conduct," and "formalized statements such as affidavits, depositions, prior testimony, or
16  confessions." *Id*.  In fact, "if a statement is not made for the 'primary purpose of creating
17  an out-of-court substitute for trial testimony," its admissibility 'is the concern of state and
18  federal rules of evidence, not the Confrontation Clause.'" *Id*. at 2243 (quoting *Michigan
19  v. Bryant*, 562 U.S. 344, 358-359 (2011).

20       The information upon which Kohlmann relies clearly was not made for the
21  primary purpose of creating an out-of-court substitute for trial testimony.  Instead, that
22  information is terrorist propaganda, which is much different from the sort of extrajudicial
23  statements that the Confrontation Clause was originally understood to reach.  *See
24  Williams*, 132 S.Ct. at 2228.  The terrorist propaganda was produced before any suspect
25  in this case was identified.  *Id*.  It was not produced for the purpose of obtaining evidence
26  against the defendant, who was not even under suspicion of criminal activity at the time it
27  was created.  *Id*.  Because the propaganda does not accuse a targeted individual, even less

28

the defendant, of engaging in criminal conduct, it is not testimonial hearsay. For that reason, reliance upon the information does not implicate the Confrontation Clause.

Defendant's reliance on *United States v. Dukagjini*, 326 F.3d 45 (2nd Cir. 2002), and *United States v. Mejia*, 545 F.3d 179 (2nd Cir. 2008), does nothing to advance his argument. Each of those cases involved the testimony of a law enforcement officer who testified in the capacity of expert witness based on his training and experience in law enforcement. In *Dukagjini*, the Second Circuit specifically held that "an expert witness may rely on hearsay evidence while reliably applying expertise to the hearsay evidence…." *Dukagjini*, 326 F.3d at 58. The expert in that case, however, went astray when he deviated from his expertise in drug jargon to interpret the meaning of recorded telephone conversations. *Id*. at 58-59. Similarly, the expert in *Mejia* "did not analyze his source materials so much as repeat their contents." *Mejia*, 545 F.3d at 198. Unlike the experts in *Dukagjini* and *Mejia*, Kohlmann will not simply repeat or "parrot" hearsay statements as Kareem claims he will do. *See* Defendant's Motion to Preclude, p. 12. Instead, he will permissibly rely upon information, some of which may not be admissible evidence, while applying his expertise to relay how that information is relevant to the conduct at issue in this case.

"Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." *Williams*, 132 S.Ct. at 2228. "It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert." *Id*. Kohlmann's testimony will proceed in precisely this fashion. It is true that Kohlmann's opinions are based on hearsay information he gleaned from FBI reports, especially the location of terrorist videos and other terrorist propaganda found in the various media devices recovered during the investigation. But unlike *Dukagjini* and *Mejia*, where the government relied solely on the expert witnesses to introduce the facts underlying their opinions, the government here will introduce those underlying facts through the FBI agents who recovered those materials and who wrote the reports upon which Kohlmann relies. Because those agents

1    will be subject to cross-examination, the defendant's right to confrontation will not be
2    violated.

3            Finally, in *United States v. Locascio*, 6 F.3d 924, 936 (2nd Cir. 1993) the Second
4    Circuit held that the government's expert was entitled to rely upon hearsay as to such
5    matters as the structure and operating rules of organized crime families and the
6    identification of specific voices heard on tape in forming his opinion, since there is little
7    question that law enforcement agents routinely and reasonably rely upon such hearsay in
8    the course of their duties.  *Id*. at 938. The court noted that "[a]n expert who meets the test
9    of Rule 702 . . . is assumed to have the skill to properly evaluate the hearsay, giving it
10   probative force appropriate to the circumstances." *Id*. (internal quotation marks omitted).
11   An expert's reliance "upon inadmissible evidence is therefore less an issue of
12   admissibility for the court than an issue of credibility for the jury." *Id*. (Citing *United*
13   *States v. Young*, 745 F.2d 733, 761 (2d Cir.1984) and pointing out that the defendants
14   were free to expose the weaknesses in the prosecution's widespread use of expert
15   testimony through cross examination).  Similar to the expert in *Locascio*, Kohlmann will
16   appropriately rely on out-of-court statements to form his opinions in this case.  By doing
17   so, he will in no way implicate the Sixth Amendment right to confrontation.   His
18   testimony, therefore, is not subject to preclusion.

19   **D.    Kohlmann's Testimony is Both Relevant and Helpful to the Jury**

20           Numerous courts, including the Second Circuit, have held that Kohlmann's
21   testimony is "relevant to the jury's understanding of al Qaeda." *Paracha*, 313 Fed. Appx.
22   at 351. For example, in *Paracha*,   the district court allowed Kohlmann to testify
23   "regarding al Qaeda's origin, leadership, and operational structure," despite the fact that
24   it was "undoubtedly true . . . that the jurors will already be aware of the existence of an
25   entity known as al Qaeda and that its leader is Usama bin Laden." 2006 WL 12768, at
26   *21-22. Relying on cases involving expert testimony of organized crime families, the
27   district court concluded that "expert testimony about al Qaeda is appropriate despite its
28   regular appearance in the popular media both because the media's depiction may be

misleading and because some features of al Qaeda relevant to the allegations in this case remain 'beyond the knowledge of the average citizen.'" *Id.* at *22 (quoting *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994)). The Second Circuit agreed. 313 Fed. Appx. at 351 (holding that Kohlmann's testimony was "relevant to the jury's understanding of al Qaeda").

Similarly, in *Sabir*, the district court concluded that "Kohlmann's proffered testimony will assist the jury in understanding the evidence." 2007 WL 1373184, at *11. For example, Kohlmann's "testimony regarding the history, structure, organization, membership, and operation of al Qaeda will give the jury an important overview of al Qaeda, so that the members of the jury will have at least a working knowledge of what al Qaeda is," and be able to place other evidence in context. *Id*. Affirming, the Second Circuit wrote:

> We have approved the use of expert testimony to provide juries with background on criminal organizations, notably organized crime families. *See*, e.g., *United States v. Matera*, 489 F.3d 115, 121- 22 (2d Cir. 2007). . . . Despite the prevalence of organized crime stories in the news and popular media, these topics remain proper subjects for expert testimony. Aside from the probability that the depiction of organized crime in movies and television is misleading, the fact remains that the operational methods of organized crime families are still beyond the knowledge of the average citizen. The rationale applies with equal force to terrorist organizations, including al Qaeda.

*Farhane*, 634 F.3d at 159 (internal quotation marks, citation, and alteration omitted) (quoting *Amuso*, 21 F.3d at 1264).

The Government represents that it will introduce evidence of terrorist propaganda allegedly seized or accessed from the defendant and his coconspirators' electronic media containing documents or recordings of violent jihadist advocates, including prominent persons who have inspired ISIS and its members.  Expert testimony identifying these

individuals and their role in the violent jihadist movement would place this evidence into context and help the jury understand its relevance to the charges.

Here, Kohlmann's testimony is imperative to a proper jury determination of whether defendant conspired with others to supply material support to ISIS, a designated Terrorist Organization. Though the Government need not prove that defendant was a member of ISIS, the Government's proof will establish that the defendant engaged in a conspiracy to provide material support in the form of personnel and services to ISIS. Therefore, as a threshold matter, the jury must have a working knowledge of what and who ISIS is, how it operates, and the basis for its beliefs. For example, to sustain its burden on Count Five (conspiracy to provide material support), the Government must prove, among other things, that two or more individuals agreed to provide personnel, meaning themselves, and services to support ISIS and in this case to conduct an attack in the United States. Kohlmann's testimony regarding ISIS's history, its stated mission- calling for violent jihadists to join ISIS or conduct attacks at home against Americans- is also central to that element of Count Five, and without it the jury will be left without the tools to properly evaluate the Government's evidence.  In addition, Kohlmann will assist the trier of fact in understanding certain evidence seized and internet sites accessed by the defendant and coconspirators and how that evidence relates to the violent jihadist movement advocated by ISIS and others.

Perhaps most importantly, the jury must understand how ISIS both recruits terrorists and promotes and encourages terrorist acts against the United States and its citizens around the world. Kohlmann will explain that ISIS creates and disseminates

video and audio recordings for the purpose of recruiting new members and for encouraging like-minded individuals to commit terrorist attacks around the world. Kohlmann is uniquely qualified to explain the import and purpose of these videos, and place the videos in the context of ISIS's recruiting and propaganda effort.

Put simply, Kohlmann's testimony will advance the truth-seeking process. Kohlmann's testimony is therefore necessary to give the jury the tools and appropriate background to fairly weigh the Government's evidence in this matter. His testimony should be permitted and the Court should deny Kareem's motion.

**E.    Kohlmann's Testimony is Not Unfairly Prejudicial**

As set out above, the evidence in this case is highly relevant for several reasons. Nevertheless, defendant argues that the Court should preclude it pursuant to Federal Rule of Evidence 403. Defendant argues that Kohlmann's testimony would equate the defendant to known al Qaeda terrorists and terrorist acts including 9/11. See Defendant's Motion to Preclude, p. 13.

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence. Fed. R. Evid., Rule 403.  "Proof that evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair, or that the trial court abused its discretion in weighing that prejudice against the evidence's probative value. *Boyd v. City and Cnty. of S.F.*, 576 F.3d 938, 948 (9th Cir. 2009).  "As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and

prejudicial effect of proffered evidence before its admission … the demands of Rule 403 have been met." *United States v. Verduzco*, 373 F.3d 1022, 1029 n. 2 (9th Cir. 2004). "Normally, the decision of the trial court is reversed under the abuse of discretion standard only when the appellate court is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *United States v. Harman*, 211 F.3d 1172, 1175 (9th Cir. 2000).

The Ninth Circuit noted in *United States v. Hankey*, 203 F.3d at 1172 "[a]s aptly stated by the court in *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir.1983)," in admitting evidence of Aryan Brotherhood gang activities:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."

It is the defendant's and his coconspirators' conduct, here, that has forced the issue of terrorism into the center of this case. *See, e.g. United States v. Felton*, 417 F.3d 97, 103 (1st Cir. 2005) (finding that the government's use of the term "terrorist" to describe defendants and their actions was appropriate because, while the term is "highly pejorative," it was a "function of the acts defendants engaged in, not the government's inaccurate description of those acts." Simply put, the defendant's and his coconspirators' actions require a discussion of terrorism.

1   Moreover, any unfair prejudice could at most serve to limit, rather than preclude,

2   Kohlmann's testimony.  As defendant points out, while it is true that the district court in

3   *United States v. Kabir*, et al, 12 Cr. 92 (VAP) (C.D. Cal.)(July 14, 2014), precluded some

4   of Kohlmann's expert testimony, the preclusion was only as it related to a "homegrown

5   terrorist" profile Kohlmann constructed in that case.  Kohlmann was otherwise permitted

6   to testify on the history and context of Islamic extremism; the use of various social and

7   internet media employed by Islamic terrorist organizations; and the terms, concepts and

8   phrases used in this context.  Similarly in the present case, Kohlmann will be providing a

9   history of these modern violent jihadist groups, their practices and methods, and will put

10  in context the Internet sites and documents seized in connection with this investigation.

11  Unlike *Kabir*, he will not be applying a "homegrown terrorist" profile here.   As

12  mentioned above, the expert testimony is probative here in that it assists the trier of fact

13  in determining whether the conspirators' had a motive and intent to conduct an attack in

14  the United States in support of ISIS.  On the other hand, any resulting prejudice is not

15  unfair.  Accordingly, Kohlmann's expert testimony should not be precluded or limited on

16  the basis of Rule 403.

17  /

18  /

19  /

20

21

22

23

24

25

26

27

28

**F.     Conclusion**

For all of these reasons, Kareem's motion should be denied.

Respectfully submitted this 18th day of February, 2016.

JOHN S. LEONARDO
United States Attorney
District of Arizona

_s/Kristen Brook_
KRISTEN BROOK
JOSEPH E. KOEHLER
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that true and accurate copies have been transmitted electronically to counsel for the defendant via the ECF system.

Daniel Maynard, Attorney for Defendant

By:  /s Kristen Brook