Daniel D. Maynard, No. 009211
dmaynard@mmcec.com
Mary K. Plomin, 032368
msplomin@gmail.com
**MAYNARD CRONIN ERICKSON**
**CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR 15-00707-PHX-SRB |
|---|---|
| Plaintiff, | **OBJECTION TO PRESENTENCE INVESTIGATIVE REPORT** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

Defendant, Abdul Malik Abdul Kareem ("Abdul Kareem"), through his undersigned counsel, makes the following objections concerning the Draft Presentence Investigative Report ("PSR") that was prepared on July 15, 2016.

**Identifying Data**

Age: 45

Alternative IDs: Abdul Kareem has never used alias dates of birth or an alias SSN so he has no idea where these come from.

**Part A: The Offense**

**The Offense Conduct**

Abdul Kareem objects to the DPSR's factual conclusions. Admittedly, the jury found there were facts that supported the conviction but the DPSR writer jumps to conclusions as to what the jury found without any actual support. His conclusions appear to come from the Government's closing argument and we cannot be sure of what the jury found other than to say

it found facts sufficient to support the charges and the jury specifically did not find that Abdul Kareem lied to the FBI when he allegedly stated:

    1) That Defendant did not go shooting in the desert with Simpson and Soofi before May 3, 2015;

    2) That before May 3, 2015, neither Simpson nor Soofi fired the weapons they used in connection with the attack in Garland, Texas (Verdict Form, Dkt. No. 285)

The sentencing commission recognizes that "[r]eliable fact-finding is essential to procedural due process and to the accuracy and uniformity of sentencing." USSG ch. 6, pt. a (intro comment). The following are some examples of objections made to the conclusions drawn by the DPSR writer to which we cannot be sure were found by the jury; however, it is not exhaustive and just because there is not an objection does not mean Abdul Kareem agrees with the statement. The jury found facts to support the verdict but that is all that can be said with certainty concerning offense conduct.

On page 6, ¶ 13, Abdul Kareem does not believe this is an accurate recitation of the facts at the trial. The evidence demonstrated that Simpson and Soofi were shot by one officer and while lying on the ground, they continued to move and police snipers shot them when they kept moving. There was no testimony about pulling anything out of a backpack that was believed to be a hand grenade.

On page 7, ¶ 16, Abdul Kareem denies that his computer that was seized in 2012 contained documents and videos advocating ideological violence against civilians; the thumb drive might have but he denied it was his.

On page 7, ¶ 16, Abdul Kareem did not deny going shooting with Simpson and Soofi and he never said neither of them fired the weapons prior to the attack. The jury found he did not make the following statements to the FBI:

    1) That defendant did not go shooting in the desert with Simpson and Soofi before May 3, 2015;

|   |   |   |
|---|---|---|
| 1 | 2) | That before May 3, 2015, neither Simpson nor Soofi fired the weapons |
| 2 |    | they used in connection with the attack in Garland, Texas. |
| 3 |    | (See Doc. No. 285, Verdict) |

On page 7, ¶ 18, Abdul Kareem never said he believed Simpson found religious justification for the Garland attack from a Jamaican-based cleric, "Faisal").

On page 7, ¶ 19, Stephen Verdugo, lived with Abdul Kareem on four separate occasions between January 2013 until March 2015. (Tr. Test. 2/19/16, p. 63) Verdugo testified that he went shooting with Kareem, Soofi and Simpson in the desert; however, Kareem denied this, most of Verdugo's testimony was impeached.

On page 8, ¶ 20, the 15 year old juvenile testified on February 24, 2016. Again, there is no way to tell if the jury believed any of this witness' testimony. He testified that he heard Abdul Kareem discuss a drawing contest in Texas for the first time before Christmas 2014 even though the drawing contest was not announced until February 2015. He testified he heard Abdul Kareem discuss the drawing contest a second time in a car and the third time two weeks after Abdul Kareem discussed it the first time, some time between Christmas 2014 and New Years 2015, all before the contest was announced. He testified that Osama bin Laden was to be drawn (not Mohammed). He said Abdul Kareem was going to go to the contest to shoot people but Ibrahim (Simpson) and Abdul Kabir (AK) were trying to talk Abdul Kareem out of going and Simpson was not going with him. Also, he heard Abdul Kareem say he was going to strap a bomb to himself and go to a mall and blow himself up and Simpson was trying to talk him out of it because if he did that, he would spend the rest of his life in jail. Also, Abdul Kareem planned to blow himself up before going to Texas. 2/24/16 Testimony of Juvenile Juan.

On page 8, ¶ 21, the 13 year old juvenile Carlos testified and it is not clear if the jury believed any of his testimony. He testified that Abdul Kareem discussed an art contest with him before Thanksgiving 2014. This was in reference to the contest in Garland, Texas that was

1  not announced until February 2015.

2  On page 8, ¶ 22, the testimony of Sergio Martinez. Again, we do not know what the jury
3  found to be true. However, Mr. Martinez did not express concern about the shooting trip nor
4  was there testimony that his children's mother feared for her children's safety.

5  On page 9, ¶ 23, Ali Soofi testified but it is not clear what the jury believed of his
6  testimony. He never mentioned in his first interview with the FBI that Kareem came to the
7  apartment he shared with his brother, Nadir Soofi. He only mentioned Abdul Kabir. It was not
8  until subsequent FBI and AUSA interviews that he claimed Kareem frequently spent the night
9  at the apartment and was there two or three times a week leading up to the Garland attack.
10  Kareem denied the sleep overs and frequent visits and there was testimony from others that
11  Kareem was sleeping at places other than Simpson's and Soofi's apartment.

12  On page 9, ¶ 25 Ali Soofi stated Simpson purchased an AK-47 rifle with money
13  provided by Abdul Kareem which Abdul Kareem denied and there was evidence that others had
14  provided money to Simpson that he used to prepare for the attack on Garland, Texas. We do
15  not know what the jury found. Kareem denied loaning or giving money to Soofi or Simpson
16  and there was no evidence other than Ali Soofi's testimony that he did.

17  On page 10, ¶ 27, Abdul Kareem asked Abdul Mubarak whether there was a Khalifa and
18  was told no.

19  **Adjustment for Acceptance of Responsibility**

20  ¶ 33 Abdul Kareem admitted he was a prohibited possessor. § 3E1.1 cmts n.2 and n5.
21  **Count Group 1: Conspiracy to Provide Material Support or Resources to a Designated**
22  **Foreign Terrorist Organization (Counts 1, 2, 3 and 5).**

23  ¶ 36 **Base Offense Level**, Abdul Kareem objects to the DPSR writer concluding that the
24  base offense level is 43 for the following reasons. Pursuant to USSG § 2M5.3(a), the base
25  offense level is 26. If the offense involved dangerous weapons then there is an increase by two
26  levels (2M5.3(b)(1)). The DPSR writer imposes a base level 43 because of the death of

- 4 -

1  Simpson and Soofi since the cross-reference under 2M5.3(c) states "[i]f the offense resulted
2  in death apply § 2A1.1 (First degree Murder) if the death was caused intentionally or
3  knowingly, or § 2A1.2 (Second Degree Murder). In § 2A1.1, murder is defined under 18
4  U.S.C. § 1111. First-degree murder under federal law requires: (1) an unlawful killing; (2) with
5  malice aforethought; (3) specific intent: deliberate, malicious, willful premeditation; and (4)
6  that the killing occur within the special maritime and territorial jurisdiction of the United States.
7  18 U.S.C. § 1111. These elements are not present in this case. The offense resulted in the
8  death of the perpetrators; *i.e.*, Simpson and Soofi. The guideline clearly contemplates the death
9  of one who is not a perpetrator or co-co-conspirator. The death of Simpson and Soofi do not
10 constitute murder.
11       If the court were to consider this as felony murder pursuant to 18 U.S.C. § 1111, which
12 it is not since it results in the death of the perpetrators, a downward adjustment would be proper
13 since Abdul Kareem did not cause the death intentionally or knowingly, Application Note 2(B).
14 The guideline does not contemplate a sentence for murder when the persons who are killed are
15 the perpetrators and not victims.
16       Additionally, the DPSR writer errs in applying this cross-reference under the facts of this
17 case. In *United States v. Felton*, 166 Fed.App 64, 67-68 (4th Cir. 2006), the Appellate Court
18 found the district court erred in applying the murder cross-reference to Defendant's sentence,
19 because the murder was not charged in the indictment or found guilty by a jury beyond a
20 reasonable doubt. Additionally, even if the court were to find that the cross-reference applied,
21 the court should depart downward because the cross-reference results in (1) an enormous
22 upward adjustment, (2) for uncharged conduct, (3) not proved at trial, and (4) found by only
23 a preponderance of the evidence; (5) and there is substantial doubt as to the accuracy of the
24 finding. *United States v. Murgas*, 321 F.Supp.2d 451, 455-56 (N.D.N.Y. 2004). There is no
25 discussion that a co-defendant is guilty of murder when his co-defendant is killed by a victim.
26 In this case, Soofi and Simpson may have been intending to kill others or it may have been

suicide by police.

At most, this was tantamount to attempted murder and § 2A2.1 (Assault with Intent to Commit Murder) would apply which would result in a base level 27 or 33. Abdul Kareem believes that the base level should be 28.

¶ 38 **Victim Related Adjustment.** Abdul Kareem opposes this enhancement. For a three level enhancement to apply, the jury, *i.e.*, finder of fact, had to determine beyond a reasonable doubt that the Defendant intentionally selected a victim because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability or sexual orientation of any person. The jury was not asked to make such a finding not did it. As set forth in ¶ 31, the DPSR writer said there were no identifiable victims so there cannot be a victim related adjustment.

¶ 39 **Victim Related Adjustment**. Abdul Kareem opposes this enhancement on the grounds that 1) there are no identifiable victims (¶ 31) and 2) this matter is already being punished as terrorism pursuant to § 2M5.3. To enhance it by 12 levels is to add on to the elements that were already found and penalizes him twice for the same conduct. Also, even if Simpson and Soofi intended to influence government conduct, there was no evidence that Abdul Kareem had such motivation. *US v. Stewart*, 590 F.3d 93, 139 (2nd Cir. 2009).

¶40 **Adjustment for Role in the Offense**. Abdul Kareem objects to this enhancement since there was no finding by the jury that Abdul Kareem knew Soofi was wearing a bulletproof vest when he participated in the attack in Garland, Texas. Additionally, pursuant to 3B1.2, Abdul Kareem is entitled to a reduction due to his role in the offense. Simpson and Soofi traveled to Garland, Texas to carry out an act of terror. Abdul Kareem did not travel to Garland, Texas. He did not tweet support to ISIS or the Islamic State. He was in Arizona when the act occurred and based on his testimony and the testimony of others it is clear he was not aware of what Simpson and Soofi were planning. Others provided money to Simpson for his attack that he paid back by giving them the title to his car. Clearly, his participation was not

as great as Simpson and Soofi and he should get a downward adjustment for his role in the offense.

¶ 42 **Adjusted Offense Level (Subtotal)**. Abdul Kareem states that the Adjusted Offense Level should be 25.

¶ 50 **Greater of the Adjusted Offense Level Above**. The level should be 26.

¶ 54 Abdul Kareem admitted he was a prohibited possessor when he testified and during closing argument. Thus, he did accept responsibility for his acts of being a felon in possession of a firearm. § 3E1.1 cmt n2 and n5.

¶ 55 **Total Offense Level**. The level should be 26.

**Part B.  Defendant's Criminal History**.

On page 14, ¶ 60, Abdul Kareem believes he was in jail for ten (10) months.

¶ 65 **Criminal History Computation.** Abdul Kareem objects to the criminal history category being enhanced to VI. In this case, Abdul Kareem has been found guilty of numerous crimes involving terrorism and should be sentenced pursuant to § 2M5.3. To add this enhancement results in his being penalized twice for the same conduct, in other words, it would seem that if a crime involved terrorism, the penalty should be found in § 2M5.3.

¶ 71 **Criminal Conduct** involved a civil dispute between Abdul Kareem and Budget Truck Rental. The truck brown down and Abdul Kareem wanted Budget to tow it in but Budget refused. There were never any criminal complaints filed to Abdul Kareem's knowledge.

**PART C – OFFENDER CHARACTERISTICS**

**Personal and Family Data**

¶ 79, Abdul Kareem said he was shot while working at a friend's barbershop in Detroit.

**Physical Condition**

¶ 83, Abdul Kareem is 45.

**Substance Abuse**

¶ 85, Abdul Kareem states that he did not use cocaine until approximately 30. During

the past, he has also used "bath salts" to get high.  He has continued to drink even after his conversion to Islam and believes that an alcohol and drug treatment program can be beneficial.

## PART D – SENTENCING OPTIONS

¶ 90, Abdul Kareem believes that the total offense level should be 27 with a criminal history of II and that the guidelines imprisonment range is 87-108 months.

## PART E: FACTORS THAT MAY WARRANT DEPARTURE

¶ 107,  Abdul Kareem disputes that the offenses involved premeditated killing and denies that life should apply for the reasons stated earlier.

## PART E: FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM.

### The Nature and Circumstances of the Offense Warrant a Downward Departure or Variance.

While Simpson and Soofi committed a very serious crime, this Court should consider the minimal role Abdul Kareem played in aiding and abetting a conspiracy.  While Abdul Kareem continues to deny any involvement in the conspiracy, the jury found him guilty.

Under 18 U.S.C. § 3553(a), the Court may consider factors not ordinarily deemed relevant by the Sentencing Guidelines. *Gall v. United States*, 552 U.S. 38.  In *Gall*, the Court upheld a downward variance based in large part on withdrawal from the conspiracy even though withdrawal from conspiracy is not a factor ordinarily considered under the Guidelines. *Id*.

The most important and uncontroverted facts established at trial were that Abdul Kareem did not travel to Garland, Texas nor did he participate in the attack.  While the attack was occurring, Abdul Kareem was 1,000 miles away working for his moving business.  While witnesses testified that Abdul Kareem had possible knowledge of Simpson and Soofi's desire to do harm at the Draw Muhammad Contest, there was no evidence that Abdul Kareem knew any details of the plan or took any steps to go to Texas to participate in the attack.  Abdul Kareem requests this Court consider this along with his minimal participation in the conspiracy

as discussed early and grant a downward variance in his sentence.

**The Nature of the Offense Falls Outside the Heartland of Cases to Which the Federal Guideline Range Describes Therefore a Downward Departure is Warranted.**

Abdul Kareem moves for a downward departure pursuant to 5K2.0(a)(2)A) and (B), which provide that the Court can depart downward if there is a factor not adequately taken into consideration by the Sentencing Commission or in exceptional cases in which there is present a circumstance that the Sentencing Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence. Alternatively, he argues for being sentenced to the low end of the guideline range.

Chapter 1, Part A(b) of the Federal Sentencing Guidelines Manual states that sentencing courts are to treat each guideline as carving out a "heartland" which is a set of typical cases embodying the conduct that the guideline describes. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Section 5K2.0(a)(4) states "a departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of an offense."

The sentencing court may consider disregarding the Guidelines sentence where the case falls outside the "heartland" to which the Commission intends individual Guidelines to apply. *Rita v United States*, 551 U.S. 338, 351 (2007).

Here, the offense for which Abdul Kareem was convicted falls outside the "heartland" of cases applicable to the guideline range. The instant case is extremely unusual, in that Abdul Kareem has no ties to ISIS or any other terrorist organization. In contrast to Simpson, there is no evidence that he communicated with anyone from ISIS nor did he pledge allegiance to ISIS.

Unlike Simpson, Abdul Kareem did not attempt to travel to a foreign country to fight on behalf of a terrorist organization. Most importantly, Abdul Kareem did not participate in the Garland attack. Given the minimal and attenuated role Abdul Kareem was convicted of playing in the offense, this case falls outside the heartland to which Guidelines apply.

**Harshness of Pretrial Confinement**

The Court should take into account that Abdul Kareem was subjected to solitary confinement from the time he was arrested and charged through his trial; *i.e.*, approximately ten (10) months. He was in a cell that was approximately 7 by 12 with a bed on the ground and no chair. When he met with counsel, he had to sit on the floor next to a grate in his jail door. He was not allowed outside or into an exercise facility and did not have access to a TV, radio or other prisoners. *United States v. Carty*, 264 F.3d 191 (2nd Cir. 2001); *United States v. Pressley*, 345 F.3d 1205 (11th Cir. 2003).

**Justice and Fairness**

Lastly, judges are entitled to use their own sense of what is fair and just. *United States v. Cruz-Rodriguez*, 541 F.3d 19 (1st Cir. 2008); and *United States v. Jones*, 460 F.3d 191 (2nd Cir. 2006). The judge can impose a non-guideline sentence when she considers her own sense of what is fair and just as long as the judge considers the sentencing factors outlined in section 3553(a). The historic role of sentencing judges is to do what is fair and just subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness. In this case, the evidence was conflicting. Abdul Kareem admitted he was a felon in possession but denied assisting a terrorist organization. He took the stand to explain what he had done and why and to explain how certain things may have gotten onto computers he owned but permitted others to use.

The climate at this time in America is a very difficult one for American Muslims to get a fair trial when they are accused of supporting terrorism. Admittedly, Simpson and Soofi did support terrorism. Soofi told his son of his support of terrorism and his plan to go to Garland,

Texas but he never mentioned that Abdul Kareem was involved. Simpson and Soofi visited Abdul Kabir the night they left for Garland and left an envelope for Sabir Nurse but they never mentioned Abdul Kareem. There were no written messages, phone calls or texts to Abdul Kareem about Garland. Although he has been convicted, the judge should decide what she believes is a fair and just sentence under all of these circumstances.

### Conclusion

The DPSR writer has made factual determinations that are not supported by the record and has added enhancements and upward departures that are not appropriate as outlined above. Abdul Kareem will be filing a sentencing memorandum that will elaborate on the arguments made in this memorandum in favor of a downward departure and or a sentence outside the Advisory Guideline System.

RESPECTFULLY SUBMITTED this 1st day of August, 2016.

**MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.**

By /s/Daniel D. Maynard
Daniel D. Maynard
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
Attorney for Defendant

**ORIGINAL** of the foregoing e-filed this 1st day of August, 2016 via ECF with:

Clerk of the Court
United States District Court
401 W. Washington
Phoenix, AZ 85003

**COPY** of the foregoing electronically delivered this 1st day of August, 2016 via ECF to:

Kristen Brook
Joseph E. Koehler
U.S. Attorneys' Office
2 Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4408
Attorneys for Plaintiff

By  /s/Stacey Tanner