## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| United States of America, | ) |
| | ) |
| plaintiff. | ) **APPEAL** |
| | ) **CR15-00707-PHX-SRB** |
| vs. | ) Phoenix, Arizona |
| | ) March 10, 2016 |
| Abdul Malik Abdul Kareem, | ) 9:03 a.m. |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

BEFORE:  THE HONORABLE SUSAN R. BOLTON, JUDGE
REPORTER'S TRANSCRIPT OF PROCEEDINGS
JURY TRIAL - DAY 15
(Pages 2644 through 2716, Inclusive.)

**APPEARANCES:**
**For the Government:**
            U.S. ATTORNEY'S OFFICE
            By:  **Kristen Brook, Esq.**
                **Joseph Edward Koehler, Esq.**
            40 North Central Avenue, Suite 1200
            Phoenix, AZ  85004

**For the Defendant Abdul Malik Abdul Kareem:**
            MAYNARD CRONIN ERICKSON CURRAN & REITER PLC
            By: **Daniel D. Maynard, Esq.**
                **Mary Kathleen Plomin, Esq.**
            3200 North Central Avenue, Suite 1800
            Phoenix, AZ  85012

Official Court Reporter:
Elizabeth A. Lemke, RDR, CRR, CPE
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 34
Phoenix, Arizona  85003-2150
(602) 322-7247
Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                               **INDEX**

2

3       **SUMMARY OF COURT PROCEEDINGS**                    **PAGE:**

4       **JURY INSTRUCTION CONFERENCE**                    Page 2646

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CR15-00707-PHX-SRB    JURY TRIAL-DAY #15    3-10-16

1         **P R O C E E D I N G S**

2         (Called to the order of court at 9:03 a.m.)

3         (Open court, no jury present.)

4    **JURY INSTRUCTION CONFERENCE**

5         THE COURT:  Good morning.  Please sit down.  The

6    record will show the presence of counsel and the defendant.

7    The jury is not present.

8         The instructions that I looked at, there were

9    basically three sets; joint proposed, government's proposed,

10   defendant's proposed.

11        Yesterday the government handed Maureen five

12   instructions.  The pages are numbered starting at page 6.  I

13   can't -- I don't know exactly what these five instructions

14   represent, Mr. Koehler.

15        MR. KOEHLER:  Four of them, the ones other than the

16   "Felon in Possession" instruction, take the place of starting

17   with page 6 in the Government's Proposed Jury Instructions,

18   starting with the "Conspiracy to Transport Firearms in

19   Interstate Commerce with Intent to Commit a Felony."

20        THE COURT:  So these are revisions to document -- I

21   don't know the document number -- to the filing of February

22   10, 2016, entitled Government's Proposed Jury Instructions?

23        MR. KOEHLER:  Correct.  Document 203.

24        THE COURT:  And you said with the exception of "Felon

25   in Possession," is that not a revision?

```
 1              MR. KOEHLER:  It is a revision.  And it takes the

 2    place of the "Felon in Possession" instruction that is in the

 3    Joint Proposed Jury Instructions which is on page 9 of that

 4    document; and that document is document No. 202.

 5              THE COURT:  All right.  So I didn't notice that it

 6    was page 9 and we had -- so these first four are revisions to

 7    document 203?

 8              MR. KOEHLER:  Yes.

 9              THE COURT:  And this "Felon in Possession" is a

10    revision to the Joint Proposed Instructions?

11              MR. KOEHLER:  That is correct.  And all of the

12    revisions we've made, Your Honor, track exactly what we talked

13    about the other afternoon, which was the notion of simplifying

14    that language to a felony for the "Felon in Possession"

15    instruction.

16              THE COURT:  We're going to go through them.  I just

17    wanted to be sure I knew what they were, but the details,

18    we're going to go through them one by one.

19              So I want to look --

20              MR. KOEHLER:  There's one more matter, Your Honor,

21    and that is, we have been going through the ECF and had not

22    seen a filing from the defense of proposed jury instructions.

23              Maybe I missed something, but I hadn't seen any.

24              MR. MAYNARD:  We filed some at the very beginning.

25              THE COURT:  Right.  I mean, I have it right here.
```

```
1              MR. MAYNARD:  Yes.

2              THE COURT:  I don't have the document number, but

3       it's dated February 11th, 2016.

4              MR. MAYNARD:  We filed it 3:12 on February 11, 2016.

5              THE COURT:  Maureen, maybe you can --  she's going to

6       tell us what document number it is.

7              THE CLERK:  205.

8              THE COURT:  So let's start with the joint proposed

9       jury instructions.

10             Starting with instructions at the end of the case,

11      starting with 3.1.

12             The parties have agreed and the Court will give 3.1.

13             3.2.  With some very minor revisions, changed

14      "charge" to "charges" and changed "every element of the

15      charge" to "every element of each charge."

16             3.3.  Defendant's decision not to testify is

17      withdrawn as he did testify.

18             The Court does not give 3.4.  I believe that it's an

19      unnecessary instruction.  And I also don't agree that it's

20      necessarily an accurate instruction, so that is refused.

21             The parties have requested, and I will give, 3.5.

22      "Reasonable Doubt - Defined."

23             3.6.  "What is Evidence."

24             3.7.  "What is Not Evidence."

25             Except here, I want to pause at item 2.  The
```

1   bracketed language says:  In addition, some evidence was

2   received only for a limited purpose, et cetera.

3           I don't recall admitting any evidence for a limited

4   purpose and instructing the jury in that regard, so I would

5   propose deleting the bracketed language at item 2 on 3.7,

6   "What is Not Evidence."

7           Is that agreeable to the government?

8           MR. KOEHLER:  Yes, Your Honor.

9           THE COURT:  Mr. Maynard?

10          MR. MAYNARD:  Yes.

11          THE COURT:  The parties have requested, and I will

12  give, 3.8.  "Direct and Circumstantial Evidence."

13          3.9.  "Credibility of Witnesses."

14          3.10.  "Activities Not Charged."

15          3.11.  "Separate Consideration of Multiple Counts."

16          And 3.17.  "Possession - Defined."

17          Although I might come back and ask you -- well, here

18  is my question on this one, though.

19          I believe that as we get to any element that is --

20  involves "possession," my recollection, and I'm not positive,

21  is that the only place where "possession" is used is in

22  connection with the possession of a firearm.

23          And there are only two firearms allegedly possessed.

24  And this instruction has the second sentence:

25          "More than one person can be in possession of

1   something if each knows of its presence and has the power and

2   intention to control it."

3         And I don't think that's applicable here.  These two

4   particular weapons, I don't think there is any suggestion that

5   anyone else might also have been in possession of them.  So I

6   would propose deleting that as confusing under the facts of

7   this case.

8         Does the government have any problem with deleting

9   that last sentence?

10        MR. KOEHLER:  No, Your Honor.

11        THE COURT:  Mr. Maynard?

12        MR. MAYNARD:  No, Your Honor.

13        THE COURT:  The parties have requested, and the Court

14   will give, 4.1.  "Statements by Defendant."

15        I will also be giving, as requested by the parties,

16   7.1.  "Duty to Deliberate."

17        7.2.  "Consideration of Evidence."

18        I am refusing 7.3.  "Use of Notes."  Because it's

19   redundant of this identical instruction -- or more or less

20   identical instruction given in the preliminary instructions

21   and I don't think it's necessary to repeat.

22        I will be giving 7.4, 7.5, and 7.6, which are "Jury

23   Consideration of Punishment," "Verdict Form."  Once again, I

24   changed it to make it plural.  And 7.6.  "Communication With

25   The Court."

1           I mentioned this briefly when we talked about the

2    instructions for a few moments on Friday and now I think we

3    can agree that requested instruction, "Jury to Be Guided by

4    Official English Interpretation" and "Foreign Language

5    Testimony" can be withdrawn.

6           MS. BROOK:  Yes.

7           THE COURT:  Agreed?

8           MR. KOEHLER:  Yes, Your Honor.

9           THE COURT:  Mr. Maynard?

10          MR. MAYNARD:  Yes.

11          I don't think proposed instruction "On Or About -

12   Defined" is necessary or helpful and I don't usually give it.

13          In addition, I'm not sure that in this case, with

14   respect to the conspiracies, it's not an "on or about."  It's

15   a span of time.  And with respect to "any other dates that

16   were involved in this case," the dates are the dates.  There's

17   not a "well, maybe it happened on a different day than what we

18   charged."

19          So I find this one unnecessary.  And unless you can

20   convince me we need it, I would recommend that it be -- well,

21   either refused or withdrawn.

22          MR. KOEHLER:  It might be helpful for Count 2, Your

23   Honor, and that is the aiding and abetting the transportation

24   of firearms, because it does say "on or about May 3rd."  And

25   clearly, the transportation began a day or two before that in

```
 1    the preparation for --
 2            THE COURT:  But I don't think it's helpful.
 3            The thing is that what Count 2 charges is that he
 4    aided or abetted the crime that occurred on May 3.  We know
 5    that's when it occurred.  It's not a charge of "he aided or
 6    abetted on or about."
 7            It's the crime happened on or about and we all know
 8    it happened on May 3rd, so I don't find that it's helpful.
 9            MR. KOEHLER:  Okay.  We won't push that.
10            THE COURT:  Mr. Maynard, is it agreeable to you to
11    withdraw this joint instruction?
12            MR. MAYNARD:  Yes.
13            THE COURT:  Thank you.
14            The parties have also requested, and I will give,
15    4.14.  "Opinion Evidence.  Expert Witness."
16            So we have an agreement to the elements on Count 3.
17    However, I would like to try to simplify this a little bit.
18            Well, I will be simplifying it a little bit, because
19    I'm never going to say "of the Second Superseding Indictment"
20    and in violation of some section of the United States Code,
21    because the jury is not finding that it is a section of the
22    United States Code and it doesn't matter what number
23    indictment it's in, because they're only determining the
24    charges in "an" indictment.
25            Those are things that I'm just going to delete from
```

1    all of the proposed instructions.

2         But can't we say "The defendant is charged in Count 3

3    with knowingly" -- well, actually, I don't even want to say

4    that because I'm also going to change them all to say:  The

5    defendant is charged in Count 'blank' with this crime.  Not

6    with what he did, but with the crime.

7         Because the verdict forms will say "guilty" or "not

8    guilty" of a certain crime.  And so I'm going to change them

9    all, but let's talk about Count 3, specifically.

10        The defendant is charged in Count 3 with False

11   Statements.

12        And this is where I want to say "to the FBI."  Why

13   do we need to talk about "in a matter within the jurisdiction

14   of a governmental agency or department" when it's only the

15   FBI?  None other.  Agreed?

16        MR. KOEHLER:  We have no objection to that.

17        THE COURT:  So "a false statement to the FBI."

18        Do you agree, Mr. Maynard?

19        MR. MAYNARD:  Yes.

20        THE COURT:  So then we will say:

21        On or about May 5th the defendant made a false

22   statement to the FBI.

23        Second, he acted willfully, that is, deliberately and

24   with knowledge both that the statement was untrue and his

25   conduct was unlawful.

1            And third, that it was material to the activities or

2    decisions of the FBI.

3            And then no other changes.

4            Now, the question that I raise here is:  Shouldn't we

5    be reminding the jury in the instruction as to what the

6    alleged statements are, particularly since there were five and

7    now there are only four?

8            MR. MAYNARD:  Yes.

9            THE COURT:  So I would say that we add just to the

10   bottom of this instruction:

11           "The alleged false statements are."

12           And then I need to just take them right out of the

13   Indictment, which I know I have up here some place, but I

14   don't know exactly where it is.

15           Agreed?  We do that?  And it's 1, 2, 4, and 5 from

16   the Second Superseding Indictment.

17           MR. KOEHLER:  Yes, Your Honor.

18           MR. MAYNARD:  Yes, Your Honor.

19           THE COURT:  Thank you.

20           MR. MAYNARD:  Can I ask one question?

21           THE COURT:  Sure.

22           MR. MAYNARD:  When you were talking about the -- when

23   you were discussing the first element and you were changing it

24   to "making a false statement to the FBI" --

25           THE COURT:  Right.

1          MR. MAYNARD:  Did you intend to take out "with all of

2     you agreeing on the false statement"?

3          THE COURT:  No.  No.  I was just telling you how I

4     was changing and taking out "in a matter within the

5     jurisdiction of."

6          MR. MAYNARD:  That's fine.

7          THE COURT:  I don't think that the government has to

8     prove beyond a reasonable doubt that it's a matter within the

9     jurisdiction of.  They have to prove that it's a false

10    statement to the FBI.

11         MR. MAYNARD:  Yes.

12         THE COURT:  And if you do have to prove that, I'm not

13    sure we have any such evidence.  So it's a good thing you

14    don't.

15         Thank you, Maureen for, another copy of the

16    Indictment.  Let me get -- as long as I'm sitting here, I want

17    to just put that in.

18         Now, this is the first revision -- well, I'm now on

19    page 9.

20         Felon in Possession of Firearms.  So I'm going to

21    look at yesterday's filing, page 9, and see if I can tell

22    what's different.

23         MR. KOEHLER:  The change is on the last line at the

24    very end.

25         THE COURT:  Okay.  Thank you.  And the only minor

 1    revisions that I made are consistent with what I said before.

 2    I'm going to call it "Felon in Possession" -- is charged with

 3    "Felon in Possession of Firearms."

 4           And then I would suggest that in Count 1 we say:

 5           "And/or" a Tanfoglio model Witness, et cetera and

 6    that we add paren "s" to the word "firearm" at the end of the

 7    next line.  So it's:

 8           With all of you agreeing on the particular

 9    firearm(s) he possessed, because they obviously could find

10    both.

11           And I think we need the second element "and/or."

12           MR. KOEHLER:  No objection.

13           MR. MAYNARD:  No objection.

14           THE COURT:  Well, you know what?  I just -- I mean,

15    this may be too picky, but it says they all have to agree on

16    the firearm he possessed.

17           Theoretically, and I mean really theoretically, they

18    could find that he possessed the Ultralite but that it wasn't

19    transported in interstate commerce.

20           So I think we'll just leave the "and" in.  We will

21    make them find they were both transported in interstate

22    commence, which isn't really going to be a difficult task

23    under the circumstances of the undisputed testimony.

24           Okay.  That concludes the joint instructions.

25           And, Maureen, if you want to go ahead and give them

1    to Debbie.

2        (Discussion had off the record.)

3            THE COURT:  All right.  Now I want to turn to the

4    Government's Proposed Instructions, and possibly

5    simultaneously, the Defendant's Proposed Instructions.

6            And some of these were a part of -- or proposed for

7    preliminary instructions, so with respect to the Government's

8    Proposed Instructions, I think the first one is page 5,

9    "Knowingly - Defined."  And with respect to the defendant's,

10   it's page 4.  "Conspiracy to Transport Firearms in Interstate

11   Commerce."  So let's look at --

12           Is there any objection to "Knowingly," Mr. Maynard?

13   Instruction 5.6.  I mean, it's in the Government's Proposed

14   Instructions rather than take agreed-upon instructions.

15           MR. MAYNARD:  No.  I don't think so, Judge.

16           THE COURT:  Okay.  So that can be given.

17           The only place I paused in reading this is that it's

18   the second sentence of "Knowingly" says:

19           "The government is not required to prove that the

20   defendant knew his acts or omissions were unlawful."

21           And yet they are with respect to Count 3.

22           MR. KOEHLER:  I had the same thought going through my

23   head as I was reading that instruction.

24           THE COURT:  Can we just take it out?

25           MR. KOEHLER:  No.  I don't think that's appropriate

1    either, Your Honor.  What we would propose to do is to say

2    "with the exception of the false statements charge alleged in

3    Count 3," comma, and then go from there.

4         THE COURT:  Okay.  I haven't done this yet, but what

5    I'm going to try to do is to instruct on Count 1 and instruct

6    on Count 5, one after the other, rather than go 1, 2, 3, 4, 5,

7    so that I can hopefully not read twice the definition of a

8    conspiracy, the aiding and abetting a conspiracy, and the

9    Pinkerton charge.

10        But we can talk -- so I want to at least with respect

11   to -- there's no dispute about the -- this instruction where

12   it begins, "A conspiracy is a kind of criminal partnership."

13        I just don't want to have to read it twice.  So let's

14   just look at the top of that instruction of Count 1.

15        MR. MAYNARD:  Judge, are you looking at the new page

16   6?  I'm sorry.

17        THE COURT:  No, but I guess I should be.

18        MR. MAYNARD:  That the government filed.

19        THE COURT:  I am now.  Can you tell me where this is

20   new, Mr. Koehler, page 6?

21        MR. KOEHLER:  It was simplified to change the

22   language where it says "with the intent to commit the felonies

23   of Murder or Aggravated Assault in violation Section 924(b) of

24   Title 18."

25        So in that first paragraph.

1          THE COURT:  Okay.

2          MR. KOEHLER:  And then in the second paragraph at the

3   end "with knowledge or reasonable cause to believe that the

4   felonies of Murder or Aggravated Assault would be committed

5   with the firearms and ammunition."

6          THE COURT:  Okay.  So this is how the instruction is

7   going to read at the beginning.

8          MR. KOEHLER:  And the same revision is made at the

9   very bottom line and continuing to the top line of the next

10  page.

11         THE COURT:  "The defendant is charged in Count 1 with

12  conspiracy to transport firearms and ammunition in interstate

13  commerce..."

14         And so we're going to change -- that's how I revised

15  it.

16         "...with the intent to commit the felonies of murder

17  and aggravated assault.  In order for the defendant to be

18  found guilty of this charge, the government must prove each of

19  the following elements beyond a reasonable doubt."

20         MR. KOEHLER:  Your Honor, I think where it says

21  "murder or aggravated assault" would be a good place to put

22  the "and/or."

23         THE COURT:  Okay.  And I want to just talk for a

24  second.

25         The defendant's proposed instruction says Count 1 and

1   5, but I don't see anything about Count 5 in here.  And I

2   don't know how we can combine the elements of these two

3   conspiracies because one, apparently, requires an overt act

4   and the other does not.

5           So I think we have to separately deal with Count 1

6   and Count 5 as it relates to the elements that the government

7   has to prove beyond a reasonable doubt.

8           So we're going to change the first element, "To

9   commit the felonies of murder and/or aggravated assault..."

10          MR. MAYNARD:  Judge, could I be heard just briefly?

11          THE COURT:  Hold on.  Let me just finish this

12   sentence.

13          "... or with reasonable cause to believe the felonies

14   of murder and/or aggravated assault would be committed with

15   the firearms and ammunition."

16          So, you have a problem with that element?

17          MR. MAYNARD:  Yes.  The government charged him with

18   committing murder and aggravated assault.  There was not an

19   "or" in the Indictment.

20          THE COURT:  Oh.  So you just have a problem with the

21   "or"?

22          MR. MAYNARD:  Yes.

23          THE COURT:  That's it?  One word?

24          MR. MAYNARD:  Well, small.

25          THE COURT:  I mean, we can talk about the word.

1          MR. KOEHLER:  This brings us back to the age-old

2   adage of charge in the conjunctive and prove in the

3   disjunctive which is required in federal indictments.

4          THE COURT:  Yeah, he's right about that.

5          MR. KOEHLER:  Ms. Brook and I were considering a

6   deletion.

7          THE COURT:  As if it matters.

8          MR. MAYNARD:  I agree, but.

9          THE COURT:  But I think that Mr. Koehler is right.

10  That they have to charge it that way, but that doesn't mean

11  they have to prove them both.

12         MR. MAYNARD:  And additionally, Judge, I believe that

13  it should be that -- in the first sentence it should end in

14  "felonies of murder and aggravated assault in Texas."

15         THE COURT:  Oh.  I don't think we have a dispute

16  about that.

17         MR. KOEHLER:  No.

18         MR. MAYNARD:  Okay.

19         MR. KOEHLER:  The one other thing that I would

20  recommend --

21         THE COURT:  So you want to have "in Texas" at the end

22  of "murder and/or aggravated assault" in the two places?

23         MR. MAYNARD:  Yes.

24         MR. KOEHLER:  The one other thing Ms. Brook and I

25  were discussing was once we've said "felonies of murder and/or

UNITED STATES DISTRICT COURT

1    aggravated assault" in the first paragraph and repeated it in

2    the second paragraph, thereafter the words "the felonies of"

3    probably becomes redundant and somewhat confusing.

4            In other words --

5            THE COURT:  You mean you don't want to say it twice

6    in the first element?

7            MR. KOEHLER:  No.  No.  Where it says "first," yes.

8            In the second sentence we would propose to delete

9    after the word "believe that the felonies of," so it would

10   read "with knowledge or reasonable cause to believe that

11   murder and/or aggravated assault would be committed with the

12   firearms and ammunition."

13           THE COURT:  Oh.  And take out the word "the felonies

14   of."

15           MR. KOEHLER:  Right.

16           THE COURT:  Because we already know -- that seems not

17   to change anything.

18           Agreed, Mr. Maynard?  We can just say in the second

19   "with knowledge or reasonable cause to believe that murder

20   and/or aggravated assault in Texas would be committed" but

21   with the firearms and ammunition.

22           MR. MAYNARD:  Yes.  I have no problem with that.

23           THE COURT:  We're agreeable on the second and third

24   element?  The second, member; third, overt act.

25           MR. MAYNARD:  I believe that in the "overt act" it

1    should say something to the nature of "on or about January 7th

2    of 2015."

3              THE COURT:  What?

4              MR. MAYNARD:  No.  Forget that, Judge.

5              THE COURT:  Okay.  So here's my question, similar to

6    my question about Count 3.

7              Do we need to remind the jury what the overt acts

8    were that were charged?  Do we need to tell the jury more

9    about what an "overt act" is?

10             So in the indictment you charged possibly -- four

11   different overt acts.

12             And I'm just asking.  I mean, you know, most of the

13   time when we have conspiracies there's no "overt act," so we

14   don't usually have to instruct about "overt acts."

15             Or is this something that you think you can save for

16   argument?

17             But we have this with all of you agreeing on a

18   particular -- a particular overt act that you find was

19   committed.

20             What do you think, Mr. Maynard?  Do we have to remind

21   them what the alleged overt acts were?

22             MR. MAYNARD:  No.  I don't want to go through 18

23   overt acts, if that's --

24             THE COURT:  No.  No.  That's on Count 5 where no

25   overt act is required to be proven.

1        MR. MAYNARD:  Oh.

2        THE COURT:  This is the "overt acts" on Count 1

3  that -- and there are only four that were alleged to be --

4  have been done in furtherance of the conspiracy.

5        MR. MAYNARD:  I don't have a problem either way,

6  Judge.

7        MR. KOEHLER:  We don't think it's necessary to --

8        THE COURT:  Well, if neither of you think it's

9  necessary, then I'm not going to include it in the

10 instructions.

11       MR. KOEHLER:  -- to include the overt acts that are

12 alleged in the indictment and the instructions.

13       It does probably make sense to have a sentence that

14 states at the beginning of the last paragraph of the

15 instruction:  That an overt act is an act that is a

16 substantial step toward the completion of the conspiracy.

17       I thought that was part of the Model Ninth Circuit

18 instruction.  I'm kind of surprised not to see it in there.

19       THE COURT:  Oh, yeah.  It says "an overt act" --

20       So you want me to say what before we get to that last

21 paragraph of the instruction?

22       MR. KOEHLER:  "An overt act is an act that is a

23 substantial step toward completion of the conspiracy."

24       MR. MAYNARD:  Judge, I'm going to ask that the

25 Court --

1          THE COURT:  Hold on.  I'm still writing.

2          MR. MAYNARD:  Sorry.

3          THE COURT:  "A substantial step to the completion of

4  the conspiracy"?

5          MR. KOEHLER:  "Toward."

6          THE COURT:  "Toward."  And then it would just go on

7  in that paragraph "the overt act does not have to be

8  unlawful."

9          Okay.  Mr. Maynard, what is your concern?

10         MR. MAYNARD:  I am going to request that those four

11  overt acts be included.

12         THE COURT:  Changed your mind?

13         MR. MAYNARD:  I did.

14         THE COURT:  Okay.  So "The overt acts alleged in the

15  indictment are..."

16         And what I'm going to do here, because I'm confident

17  in my success in being -- not having to repeat this -- the

18  next three paragraphs -- is I'm going to take out from this

19  instruction so that it will be its own instruction.  "A

20  conspiracy is a kind of criminal partnership."

21         But I'm going to leave in the last paragraph defining

22  an "overt act" because it's only applicable to Count 1.

23         And this also -- so the next instruction and the

24  government's proposed instruction is the "aiding and abetting

25  a conspiracy" instruction.  And the way I'm envisioning the

1    instructions when they're put together in a set is that I will

2    have the elements of Count 1, the elements of Count 5, "the

3    conspiracy is a kind of criminal partnership."

4           Then, "A defendant may be found guilty of

5    conspiracy."  Period.  Aiding and abetting.  And not give it

6    separately for each of the two alleged conspiracies.  So

7    I'll -- I'm not going to do it as we sit here, but I'll modify

8    this instruction to only refer to a conspiracy.

9           Let's talk about the next one in order so that I

10   don't miss any, which is page 11, which is the one I brought

11   to the government's attention that never had the elements of

12   Count 2.  And so I know there's a revision, but I don't

13   think -- so the revision is now called count -- or page 10

14   because the former page 10 was actually a blank page.

15          But this isn't quite right because it says that the

16   defendant is charged in Count 2 with Conspiracy to Transport

17   Firearms and Ammunition in Interstate Commerce and that's

18   actually what is charged in Count 1.

19          MR. KOEHLER:  I just saw that, Your Honor.

20          Where it says "conspiring to transport," it should

21   simply say "transportation of."

22          THE COURT:  But should it say "aiding and abetting

23   the transportation of" because this one is charged exclusively

24   as an aiding and abetting.

25          MR. KOEHLER:  Yes.

1          THE COURT:  And now can we just say "with the intent

2    to commit murder and/or aggravated assault" since we think the

3    jury is smart enough to not need the "with the intent to

4    commit the felonies of" again.

5          MR. MAYNARD:  That's fine.  And I think it should say

6    "in Texas."

7          MR. KOEHLER:  We have no objection to that, Your

8    Honor.

9          THE COURT:  So I don't think I need the sentence --

10    the second sentence since I just told them he's charged with

11    aiding and abetting.

12          So I don't have to tell them he can be found guilty

13    of aiding and abetting even if he didn't commit the underlying

14    crime.

15          Okay.  Let's look at the elements.

16          First, a person transported firearms and ammunition

17    from one state to another with the intent to commit murder

18    and/or aggravated assault or with knowledge that murder and/or

19    aggravated assault would be committed with the firearms and

20    ammunition.

21          Second, the defendant aided, counseled, et cetera

22    with respect to at least one element -- is there more than one

23    element?

24          I mean, isn't the element what is stated in the first

25    element?  Can't I just say, "The defendant aided, counseled,

1    commanded, induced, or procured that person to commit the

2    crime of interstate transportation of firearms and ammunition

3    with the intent to commit murder and aggravated assault."

4         I mean, didn't I just get the whole elements all

5    stated in one sentence?

6         I think it says "at least one element" is confusing.

7    Typically, when we're doing aiding and abetting, we have a

8    separate instruction on the elements of the underlying crime

9    because the defendant is accused in the alternative.

10        MR. KOEHLER:  I'm trying to remember what those

11   elements looked like separately.

12        THE COURT:  Well, let me look.  Let me look.

13        MR. KOEHLER:  For some reason we were thinking there

14   were two elements in that charge but it's been a while.

15        THE COURT:  Okay.  I'm not seeing it immediately in

16   the instructions.  Let me look in the statute.

17        Well, this isn't particularly helpful because 924(b)

18   which is the only statute alleged says:  Whoever, with intent

19   to commit -- oh, I'm going to paraphrase -- a felony or with

20   knowledge or reasonable cause to believe that a felony is to

21   be committed, ships, transports, or receives a firearm or any

22   ammunition in interstate or foreign commercial shall be fined

23   or imprisoned for not more than ten years or both.

24        I don't think there is any elements other than what's

25   set out in this first paragraph that begins "First."

```
 1              And in the indictment --

 2              I ripped out page 2 to give to Debbie so I think

 3   that's it.

 4              MR. KOEHLER:  We don't object to the simplification

 5   on that part.

 6              THE COURT:  Okay.  So the second element is:  The

 7   defendant aided, counseled, commanded, induced, or procured

 8   that person --

 9              MR. KOEHLER:  I think you could simply delete "at

10   least one element of."

11              THE COURT:  Yes.  Right.  But what do I put in

12   between?

13              "to transport firearms and ammunition in interstate

14   commerce with the intent to commit murder and/or aggravated

15   assault."

16              And I don't -- I don't think that the third

17   element -- I'm trying to figure -- okay.  The defendant acted

18   with the intent to facilitate.  Okay.

19              All right.  I think we're okay.  You can see it.

20   This one, let's see it when it's done, and if anybody has any

21   problems, we can address it after you see it when it's done.

22              MR. MAYNARD:  Can I address element 1 on that?

23              THE COURT:  Hold on a second.

24              Okay.  What about element 1?

25              MR. MAYNARD:  I agree, it should say:
```

1           "First, a person transported firearms and ammunition

2    from one state to another with the intent to commit murder or

3    aggravated assault in Texas."

4           I disagree with "or with knowledge or reasonable

5    belief to believe that the felonies of Murder or Aggravated

6    Assault would be committed with the firearms and ammunition."

7           The last portion there.

8           THE COURT:  But that's actually in 924(b).

9           MR. MAYNARD:  It may be, but I still disagree with

10   it.

11           THE COURT:  The statute says:  Who, with the intent

12   to commit a felony, or with knowledge or reasonable cause to

13   believe that a felony is to be committed with the firearms

14   does this.

15           You say it's just not applicable to this case?

16           MR. MAYNARD:  Yes.  I think you have to have specific

17   intent.  I think the component about --

18           THE COURT:  "Who" has to have specific intent?

19           MR. MAYNARD:  My client.

20           THE COURT:  Okay.  Well, one, isn't -- element No. 1

21   isn't about Mr. Kareem.  Element No. 1 is about the person who

22   actually committed the crime.

23           Element No. 2, 3, and 4 are about Mr. Kareem.

24           MR. MAYNARD:  I see.  All right.  I see.

25           THE COURT:  And then I think we're agreeable with the

1    rest of the instruction?

2            MR. MAYNARD:  Yes.

3            THE COURT:  Oh, so the next instruction is the

4    Pinkerton instruction.

5            And so this revision, again, is just to use "murder

6    and/or aggravated assault" in lieu of what it said before.

7            Is that the only change in the Pinkerton instruction?

8            MR. KOEHLER:  That's correct.

9            THE COURT:  And on this one, I'm going to try to

10   combine it, again, 1 and 5, after I get 1 and 5 put together,

11   because this has a specific reference -- well, it has a

12   reference to Count 2, but I think that's wrong.

13           MR. MAYNARD:  And it was a reference to Count 1 also.

14           THE COURT:  Oh, the new.  I'm dealing with the old.

15   So the new one did change it to Count 2 -- or Count 1.  But

16   I'm going to see if I can combine them so I don't have to read

17   it twice.

18           Okay.  Here is Count 5 which is from the original

19   set, not revised.

20           So the defendant is charged in Count 5 with

21   conspiracy to provide material support to the Islamic State of

22   Iraq and the Levant, a designated foreign terrorist

23   organization.

24           So this is the place where after the word "Levant"

25   I'm going to put "ISIL" so that I don't have to say that

```
 1    again.
 2             Okay.  Other than those minor corrections,
 3    Mr. Maynard, through fifth -- the fifth element, do you agree
 4    that this is accurate -- an accurate instruction?
 5             MR. MAYNARD:  Yes, up to the fifth element.
 6             THE COURT:  And I'm just going to turn for a moment
 7    with your proposed instruction that did suggest that there had
 8    to be an overt act.
 9             Mr. Koehler has told me that that's not necessary.
10    Do you agree that the elements of this conspiracy do not
11    require an overt act proved by the government?
12             MR. MAYNARD:  No.
13             THE COURT:  You don't agree?
14             MR. MAYNARD:  No.
15             THE COURT:  Okay.  Let's look at the statute.
16             I assume there's no pattern instruction to look at.
17    Would that be accurate?
18             So this is 18 U.S.C., 2339B(a)(1)?
19             MR. KOEHLER:  Correct, Your Honor.
20             THE COURT:  So the "unlawful conduct" is as defined
21    in (a)(1) is knowingly provides material support or resources
22    to a foreign terrorist organization or attempts or conspires
23    to do so.
24             The statute then says:
25             To violate this paragraph, a person must have
```

1    knowledge that the organization is a designated terrorist

2    organization, that the organization has engaged or engages in

3    terrorist activity, or that the organization has engaged or

4    engages in terrorism.

5            What causes you to think an overt act is required?

6            MR. MAYNARD:  Because I just want there to be one.

7    No.

8            THE COURT:  Well, that's what I kind of thought,

9    Mr. Maynard, but I need more than that.

10           MR. MAYNARD:  Judge, it just seems to me you have to

11   do something.  I mean --

12           THE COURT:  Well, you know, in drug conspiracies you

13   don't.  I mean, it's not unprecedented that no overt act is

14   required.

15           MR. MAYNARD:  Well, I still believe that there should

16   be one.

17           THE COURT:  So this is some really off-the-cuff

18   research, but I want to look at the general conspiracy statute

19   is 18 U.S. Code Section 371.  And that general conspiracy

20   statute -- here's my -- let me tell you why I get to this --

21   why this is my brief research.

22           I just looked at the instruction in the pattern --

23   Ninth Circuit Pattern Instructions 9.19 which is the

24   Conspiracy With Respect to Controlled Substances.

25           The comment says -- cites a case from 1994, holding

1    that in order to establish a violation of 21 United States

2    846, which is Conspiracy With Respect to Controlled

3    Substances, the government is not required to prove the

4    commission of overt acts in furtherance of the conspiracy.

5            And the Court contrasted Section 846, which is silent

6    as to whether there needs to be an overt act, with the general

7    conspiracy statute, which is 18 U.S.C. Section 371 which

8    contains the explicit requirement that a conspirator do any

9    act to effect the object of the conspiracy.

10           By analogy, 2339B has its own crime of conspiracy

11   which doesn't say anything about an overt act.

12           Is that how you got to where you got in your view or

13   do you have actual real research beyond what I just did as I

14   was sitting here talking to you, Mr. Koehler?

15           MR. KOEHLER:  That's pretty much precisely how we got

16   there, Your Honor.

17           The *Shabani* decision that you referenced from 1994 is

18   a Supreme Court decision and there have been cases in the

19   Ninth Circuit and elsewhere discussing other conspiracy

20   statutes like this one, such as 8 U.S. Code, Section

21   1324(a)(1)(A)(v) which is the Conspiracy to Transport and

22   Harbor Illegal Aliens.

23           That statute, likewise, lacks an overt act element.

24   And the courts have interpreted that statute not to require

25   proof of an overt act.

1          So in light of that, although 371 is the general

2   conspiracy statute, actually, the majority of the federal

3   conspiracy statutes do not contain an overt act requirement.

4   And so the government stands by its position that 2339B,

5   subsection (a)(1), does not require an overt act.

6          THE COURT:  Without something more specific, I agree

7   with the government on this one that the specific conspiracy

8   statute controls over the general and it doesn't require an

9   overt act.

10          So with that ruling, I think we're fine through the

11   fifth element.  And then the question is:  Do you have any --

12          Well, one thing I'm going to do, because no place

13   else in the instructions have we bolded any terms or words.

14   I'm going to unbold everything rather than go back and bold a

15   whole bunch of other stuff.

16          MR. KOEHLER:  For the ease of whoever is going to be

17   doing this, if they select the entire document and hit

18   Control-B twice, it will remove all bolding from the entire

19   document.

20          THE COURT:  Okay.  I hope Maureen was listening.

21          MR. KOEHLER:  Control-8.  Select all.  Then Control-B

22   twice and it's all gone.

23          THE COURT:  Do you have any -- you know, I think

24   there's much more in this instruction than we need for

25   purposes of this case.

1          For example, is there any evidence in this case of --

2     that would require us to explain "expert advice or

3     assistance"?  I mean, can we -- can we define the term

4     "material support or resources" to be more tailored to what's

5     plausible in this case with respect to the government's

6     theory?

7               MR. KOEHLER:  Yes.

8               THE COURT:  So can we take out "financial

9     securities"?

10              MR. KOEHLER:  Yes.

11              THE COURT:  What's your view on "financial services"?

12              MR. KOEHLER:  I think we can take that out as well.

13              THE COURT:  Thank you.

14              How about "lodging"?

15              MR. KOEHLER:  We agree to take that out.

16              THE COURT:  "Expert advice or assistance."

17              MR. KOEHLER:  We agree to take that out.

18              THE COURT:  "Safe houses."

19              MR. KOEHLER:  Agreed.

20              THE COURT:  "False documentation or identification."

21              MR. KOEHLER:  Agreed.

22              THE COURT:  "Communication equipment."

23              MR. KOEHLER:  Agreed.

24              THE COURT:  "Facilities."

25              MR. KOEHLER:  The meeting place of the apartment

1    would constitute a facility.

2            THE COURT:  Okay.  "Lethal substances."

3            MR. KOEHLER:  Agreed.

4            THE COURT:  "Explosives."

5            MR. KOEHLER:  Agreed.

6            THE COURT:  "Personnel."

7            MR. KOEHLER:  That one is obviously what we're --

8    part of what we're alleging.

9            THE COURT:  "Transportation."

10           MR. KOEHLER:  We would keep that.

11           THE COURT:  Okay.  Can we take out "but does not

12   include medicine or religious materials"?

13           MR. KOEHLER:  I think that would be up to the

14   defense.

15           MR. MAYNARD:  I don't need it in.

16           THE COURT:  Out?  Okay.  Okay.  So we leave in the

17   definition of "training" but now we can take out the

18   definition of "expert advice or assistance."

19           Do you want to leave in the definition of

20   "personnel"?

21           MR. KOEHLER:  The definition of "personnel" should

22   remain.

23           THE COURT:  Okay.  So let's look at this next

24   paragraph -- the last paragraph on page -- or the paragraph

25   after the definition of "personnel."

1          It says:  "The material support or resources that the

2    defendant conspired to provide ISIL as alleged in the

3    indictment was services and personnel."

4          But you just told me you wanted me to keep in all of

5    these things that aren't services and personnel.

6          MR. KOEHLER:  I think you can take out where it says

7    "property, tangible or intangible" before "or service."

8          THE COURT:  Okay.  Hold on.  Property, tangible or

9    intangible.  You want it to say "any service, including

10   currency or monetary instruments, training" --

11         "Facilities," then isn't a service or a personnel.

12         MR. KOEHLER:  I think those are part of services.

13         THE COURT:  Property -- pardon?

14         Oh.  You're saying services including currency and

15   monetary instruments, training, facilities -- well, weapons

16   isn't a service.

17         I mean, as I heard the evidence in this case,

18   primarily, the government has attempted to prove that the

19   defendant provided services of -- that included money,

20   training, and that -- and the money was used to buy weapons.

21         You didn't allege that -- I don't think you've tried

22   to prove that he provided a weapon, only that he provided

23   funds to buy a weapon.

24         MR. KOEHLER:  And ammunition and there was --

25         THE COURT:  Okay.  We're not on ammunition.  There's

 1    no -- it's not here.

 2            I'm on "facilities and weapons."  I'm trying to find

 3    out what the definition of "material support or resources"

 4    means in connection with the allegations in this case.

 5            So it means "any service, including currency or

 6    monetary instruments or training" because -- "services" ends

 7    at "false documentation."

 8            Actually, it's hard to say where this -- what's

 9    included within a service, but a facility and a weapon isn't a

10    service.

11            Where does this definition come from?  The statute?

12            MR. KOEHLER:  Yes, Your Honor.  It's straight from

13    the statute itself.

14            THE COURT:  I need to look at the punctuation in the

15    statute.

16            MR. MAYNARD:  Your Honor, I think maybe we're -- not

17    that I want to be helpful -- but material support or resources

18    means any property.

19            THE COURT:  Hold on.  Hold on.  I'm trying to get to

20    the statute.  Okay.  There we go.  So let me find.

21            Help me, Mr. Koehler.  Where am I going to find the

22    definitions?

23            MR. KOEHLER:  Just to make it fun, Your Honor?

24            THE COURT:  I found it.  2339A not B.

25            I don't know why I'm looking for punctuation because

1    one of the problems with the United States Code is that they

2    have the longest sentences in the world.

3          But definitions.  2339A, subsection (b).

4          Okay.  Here is how I read it.  I read "services" to

5    include "currency or monetary instruments or financial

6    securities" because then there's a comma and they talk about

7    "financial services."  So that's not within the definition of

8    "service" or the inclusion of "service."

9          "Service" includes currency or monetary instruments

10   or financial securities.

11         Then the next thing is financial services, lodging,

12   training, expert advice, safe houses, false documentation, et

13   cetera.  So the "services" are currency -- as it related to

14   this case, currency and monetary transactions.

15         "Training" is something separate from what's termed

16   here "or service."  So I think we keep "facilities, weapons,

17   and personnel" but we took out "property, tangible or

18   intangible" also.

19         Okay.  So then we don't need to define "expert

20   assistance."  We define "personnel."

21         So we're back to that same paragraph again.  That the

22   material support that you said -- the government says the

23   defendant conspired to provide was services and personnel.

24         Is that true?  Let me find it.

25         Well, in the indictment you said "including services

1    and personnel..."  Can't we just take out that first sentence?

2    You all must -- and start with, "You all must agree as to the

3    type of material support or resources the defendant conspired

4    to provide"?

5              MR. KOEHLER:  We agree.

6              THE COURT:  Do we really need to define "provide"?

7              MR. KOEHLER:  I think we included it simply because

8    it's in the statute, but, no.

9              THE COURT:  Thank you.

10             Once again, the definition of "terrorist activity"

11   does not have to encompass, in my opinion, anything that's not

12   arguably within the facts of this case.  So, for example,

13   first -- oh, let me just start earlier.

14             I don't think we need the parenthetical that says "or

15   which, if it had been committed in the United States, would be

16   unlawful under the laws of the United States."  This was done

17   in the United States.

18             MR. KOEHLER:  Your Honor, this is talking about the

19   designated foreign terrorist organization being engaged in

20   terrorist activity and ISIL is engaged in terrorist activity

21   overseas.

22             THE COURT:  Thank you.  Hold on.  Let me go back to

23   the element.

24             Oh.  Thank you.  I see what the problem is here.

25             So we've had a lot of evidence about the terrorist

1    activity of ISIL.  Did any of it involve the highjacking or

2    sabotage of any conveyance, including an aircraft, vessel, or

3    vehicle?

4            MR. KOEHLER:  Although ISIL has claimed to have

5    downed a Russian airliner, I don't believe we have presented

6    that in our case.

7            THE COURT:  So we're going to take that one out.

8            Is there any evidence of the seizing, detaining, et

9    cetera, to compel a third person to do something?

10           MR. KOEHLER:  Holding hostages and threatening to

11   behead them, yes, and we presented --

12           THE COURT:  No.  No.  You did present evidence of

13   holding hostages and threatening and, in fact, killing them.

14   But this requires that it's in order to compel a third person

15   to do or abstain from doing any act as an explicit or implicit

16   condition for the release of the person seized or detained.

17           I'm looking at the second part of that.

18           MR. KOEHLER:  Yes, I understand, Your Honor.  And

19   Agent Whitson testified about the *Message in Blood* videos, and

20   specifically, the *Message in Blood to the Kurdish Alliance* in

21   which they beheaded the one soldier and threatened to behead

22   the rest of them if Barzani did not pull away and stop the

23   activities in partnership with the United States.

24           THE COURT:  The violent attack upon an

25   internationally protected person as defined in Section 1116(b)

1    (4) of Title 18.  We don't have that.

2              MR. KOEHLER:  Agreed.

3              THE COURT:  I don't know exactly what is meant by "an

4    assassination," but if it's broadly construed, it's killing

5    anybody.

6              Do we have a biological agent, chemical agent, or

7    nuclear weapon or device?

8              MR. KOEHLER:  That's another one that we know has

9    occurred but we did not introduce any evidence.

10             THE COURT:  Okay.

11             MR. KOEHLER:  And that, of course, would result in

12   condensing that paragraph E to read:

13             The use of any explosive, firearm, or other weapon

14   with intent to endanger directly or indirectly --

15             THE COURT:  Correct.  But it's just going to be one

16   sentence.

17             MR. KOEHLER:  Correct.

18             THE COURT:  And lastly, why should I instruct on what

19   you don't have to prove as opposed to what you do have to

20   prove?

21             MR. KOEHLER:  I think that's one of those things to

22   make clear where the lines are, because sometimes in a charge

23   that's as complicated as this, having the jury understand

24   where the line is, where the required proof ends, is something

25   that makes sense.

1          THE COURT:  Mr. Maynard?

2          MR. MAYNARD:  I think we stipulated about ISIS but I

3    don't have a position one way or the other.

4          THE COURT:  On the last paragraph?

5          MR. MAYNARD:  We stipulated to it.

6          THE COURT:  Okay.  So you agree -- all right.  I'll

7    leave it as is.

8          The next instruction is the "aiding and abetting

9    conspiracy" which I'm going to combine with Count 1.  That's

10   page 19 of the Government's Proposed Instructions.

11         Page 21 is the Pinkerton instruction which, again,

12   I'm going to combine so that I only have to read it once.

13         So with respect to the defendant's instructions --

14   was there something else, Mr. Koehler?

15         MR. KOEHLER:  The only thing we want to flag for the

16   Court, Your Honor, is that the government is not limited to

17   the overt acts that are alleged in Count 1 of the Indictment.

18         I believe the law is that the overt acts are there to

19   give notice, but that the jury need not find one of those

20   overt acts.  Specifically, they could find a different overt

21   act.

22         THE COURT:  And I -- but I think that what's

23   important is that the jury be reminded of what the ones are

24   and then you can certainly argue about another one.

25         But after we told the jury that they have to agree on

1   what the overt act is, without reminding them of the four that

2   you had asserted, and perhaps you're going to argue -- and I

3   have no idea.  You may not be going to argue all four, you may

4   be arguing some of them.

5          But if you're going to be arguing a fifth, sixth,

6   seventh or eighth, the jury should at least know what the four

7   were that they were told about at the beginning of the case.

8          MR. KOEHLER:  Okay.  Okay.

9          THE COURT:  So I think looking -- starting on page 9

10  of the Defendant's Proposed Instructions --

11         Well, maybe I can just address them this way,

12  Mr. Maynard.  Is there anything in here that we haven't

13  covered?

14         MR. MAYNARD:  I don't believe there is, Judge.

15         THE COURT:  Okay.

16         MR. MAYNARD:  I put in a couple on "special

17  circumstances" and "impeachment," but I don't think we need

18  anything.

19         THE COURT:  I know.  I was just getting to those

20  witness instructions and I don't think we had any evidence of

21  special circumstances.

22         Okay.  So what I want to do is get these instructions

23  in a package in an order, send them to you, and then I need

24  for you to read them first for just any errors that, you know,

25  that we missed.

1          Just errors.  I said it was going to say this, but it

2    says that.

3          And then, of course, look at them substantively.  So

4    that if there are any objections or proposed revisions because

5    you think it came out wrong, we can resolve that later today.

6          So what I'm going to suggest, it's 10:40.  I'm going

7    to suggest that we meet again at 1:30.  By then we will have

8    e-mailed you the instructions.  Do you want to meet at 2:00?

9          Well, I don't know when we'll get them to you.  It

10   probably won't be for at least an hour.  So maybe we should

11   meet at 2:00 and then we can go over whether there are any

12   objections or corrections.

13         If you have just typos or things that just didn't

14   come out the way we said they were, just e-mail Debbie.  I

15   don't think we have to consider that an ex parte communication

16   if it's just "you misspelled this word."

17         MR. KOEHLER:  If we're in agreement on everything,

18   should we notify the Court and perhaps each other and not come

19   back at two o'clock?

20         THE COURT:  Yes.  But I just want to be sure that I

21   have given you a full opportunity to make a record of any

22   objections you have to the giving or refusal of any

23   instruction in the form that it's in because there will be no

24   opportunity to do that tomorrow.

25         I'm going to repeat that.

1          There will be no opportunity tomorrow to object to

2    the giving or refusal of any instruction or to revise any

3    instruction that you think didn't come out as we discussed it.

4          Because at nine o'clock tomorrow morning, the

5    instructions will be copied and be on the chairs of the jurors

6    for when they come in.  And it can't be any other way.

7          So I suppose if, in fact, there are no objections

8    when you see the package of instructions that we're going to

9    send you, what I would then say we could do, if there are

10   none, is we could do this -- if it was agreeable to

11   Mr. Kareem, I could get the lawyers on the phone on the record

12   to say there are no objections.

13         But if there are objections, then I need to be in a

14   position to see whether or not that objection can be satisfied

15   by a revision.  And so I don't want to have you just on the

16   phone suddenly objecting and we're composing a new

17   instruction.

18         So that's how we're going to have to do it.  And it

19   would have to be with Mr. Kareem's consent to do that, because

20   then he wouldn't be present for that conversation.  So that's

21   my proposal.

22         Okay.  Maureen, reminds me of two things.

23         Exhibit 523 are the records from the chiropractor, I

24   believe, and there were supposed to be some pages removed.

25         MR. MAYNARD:  Yes.  Exhibit 523, Judge, I believe

1   that the government agreed to the admission except for those

2   three pages.

3           THE COURT:  Correct.

4           MR. MAYNARD:  I have looked at those now.  There

5   is -- I would agree that part of this is the thing that

6   somebody would do for litigation.

7           However, there is a portion of this on page 10 of

8   these records which is the second page of the three that deals

9   with the treatment that he's received.

10          THE COURT:  Tell me what those three pages are again.

11  Is it a letter from the doctor to a lawyer?

12          MR. MAYNARD:  No.  It's actually the Patient Release

13  Statement.  It starts off with the history, then does the

14  diagnosis, injury severity.

15          THE COURT:  And Ms. Brook was saying this was a

16  document prepared for the lawyer?

17          MR. MAYNARD:  It doesn't say that.  It says:

18  Prognosis, Personal Consequences, and Discharge Statement.

19  It's part of the records that are in there in the normal

20  course.

21          THE COURT:  So you want to leave it all in?

22          MR. MAYNARD:  I do.

23          THE COURT:  Could I see it, Maureen?

24          MS. BROOK:  Your Honor, it's --

25          THE COURT:  Before you start, let me look at it.

1          Ms. Brook?

2          MS. BROOK:  Your Honor, so it's a three-page letter

3     drafted on June 16, 2015, after he had discharged his service.

4     Obviously, at that point, he was already in custody.

5          The purpose of the letter is best characterized in

6     the last paragraph -- or second to the last paragraph -- where

7     it talks about the billing statement for the services and the

8     justification for the billing statement that's contained

9     therein in the letter.

10          The records include an attorney lien, so obviously,

11     payment was one that was being secured through the attorney.

12     And therefore, the letter itself, is a justification for

13     services and in it justifying services based upon conclusions

14     made about treatment.

15          Any actual evaluation of treatment would already

16     be -- would be cumulative as it's already encompassed within

17     the Progress Notes and notes contained in the rest of the 81

18     pages of medical records.

19          MR. MAYNARD:  Your Honor, this is, again, a record

20     that's kept in the normal course.  It's a concise statement

21     that the jury can look at to determine whether or not he

22     received treatment and whether or not it was reasonable.

23          What the government has contended all along is that

24     somehow or another --

25          THE COURT:  Okay.  The objection is overruled.  523

1   is admitted.

2           MS. BROOK:  Your Honor, and if I may briefly, just

3   one more point on this.

4           It does appear to be used in anticipation of a civil

5   litigation as well as a letter which would go to the heart of

6   whether or not he had a claim in his civil litigation, which

7   goes beyond just what the purpose of medical records would be

8   and would require somebody to attest to and be cross-examined

9   about the nature of any sort of medical conclusions that they

10  had that were made and put forward in a document in

11  anticipation of civil litigation.

12          THE COURT:  Your record has been made, Ms. Brook.

13          And we have 310, which, I believe, is the only other.

14  This is the substituted Exhibit 310 which is an alteration of

15  the previous photo.

16          MR. MAYNARD:  The defense continues to object.  One

17  is, I think it's cumulative.  We've got enough --

18          THE COURT:  Remind me of the source of 310.  Was

19  it -- where was it found?

20          MR. KOEHLER:  Desktop tower computer, Your Honor,

21  from the Soofi apartment.

22          THE COURT:  In the Soofi apartment?

23          The objection is sustained as cumulative; more

24  prejudicial than probative.  There are numerous, numerous

25  photographs that have been admitted from Mr. -- from the

1    computers that were located during the search of the

2    Simpson/Soofi apartment.

3              And this adds nothing more except the potential, in

4    the Court's view, for prejudice because it appears to be an

5    execution of individuals who are ordered to lay facedown on

6    the ground.

7              And even the fuzzing doesn't really obscure.  I don't

8    really see that the fuzzing changed much at all.  It simply

9    still shows this execution of this line of people laying

10   facedown in the desert in front of a ditch.

11             Okay.  Verdict forms.  Is there anything special

12   anybody thinks there should be in the verdict forms?  Because

13   the verdict forms we're going to prepare will just be "guilty"

14   or "not guilty," five of them.

15             MR. MAYNARD:  I think the only thing -- I would have

16   to look at them again, but I was thinking on the --

17             THE COURT:  Were there verdict forms proposed?

18             MR. MAYNARD:  I believe there were.

19             MR. KOEHLER:  We drafted and circulated between

20   ourselves.  I'm not sure we ever actually filed them, Your

21   Honor.

22             THE COURT:  I don't think -- Maureen, I don't think

23   we've seen any verdict forms, have we, proposed verdict forms?

24             No.  We have not.

25             MR. MAYNARD:  I was going to say because I think on

1    the one for the false statement they --

2          THE COURT:  Well, I don't want to talk about them.

3          MR. MAYNARD:  Okay.

4          THE COURT:  I want you, if you have agreed-upon

5    verdict forms, to send them to me rather than having a

6    discussion about what they should say.

7          And I'm going to order that you provide them to us by

8    1:30.  So that if we speak at 2:00, we can also speak about

9    the verdict forms.  Okay?

10          MR. KOEHLER:  Yes.  We did not have an agreed-upon

11    verdict form in advance of the trial.  I do know that.

12          THE COURT:  Well, then submit what you propose and

13    we'll figure out what the verdict forms should look like.

14          That's not as urgent as the instructions because the

15    jury doesn't see them or have me describe them until after

16    closing arguments, but I do want to make sure you've done them

17    today.

18          So right now, what are your thoughts about two

19    o'clock, Mr. Maynard?  As I said, your client -- I'm going to

20    have everybody come.  If Mr. Kareem wants to be here, even in

21    the event of -- if we don't have any objection -- he's still

22    going to be here, because until I know that you're not coming,

23    he's not going to be returned to the jail.

24          But then, again, it might be just similar

25    accommodations or even better here.

1          MR. MAYNARD:  I would just like to assume we're
2    coming down at two o'clock.
3          THE COURT:  Okay.
4          MR. MAYNARD:  Because I want to -- I thought we had
5    agreed on jury verdict forms, so I apologize.  We did exchange
6    them and I don't know what happened.
7          THE COURT:  Okay.
8          MR. MAYNARD:  And I apologize.
9          THE COURT:  Then I will see you all at 2:00.
10         Court is in recess.
11      (Recess taken at 10:49 a.m.; resumed at 2:02 p.m.)
12      (Open court, no jury present.)
13         THE COURT:  Good afternoon.  Please sit down.  The
14   record will show the presence of counsel and the defendant.
15   The jury is not present.
16         Around 12:15 or so I sent you a .pdf copy of the
17   instructions as I put them together based on our discussion
18   this morning and also placed them in the order in which I
19   propose they be given.
20         First, do either of you have any just plain old
21   corrections because they didn't come out exactly the way you
22   thought they were supposed to?
23         MR. MAYNARD:  Yes.  I think --
24         THE COURT:  They're not numbered because we don't
25   number the pages until we're sure they're in the order and the

1    full set so we don't have to do it again.

2            MR. MAYNARD:  It's the fifth page.

3            THE COURT:  How does it start?

4            MR. MAYNARD:  It starts:  "In reaching your verdict

5    you may consider..."

6            THE COURT:  Yes.

7            MR. MAYNARD:  I think it should probably say:

8            "In reaching your verdict you may consider only the

9    testimony and exhibits received in evidence and the facts

10    stipulated to."

11            THE COURT:  Well, it says that on the previous page.

12            MR. MAYNARD:  Okay.  I see it there.  I just --

13            THE COURT:  Or I could just take out that sentence

14    and say "the following things are not evidence."

15            Why don't we do that?

16            MR. KOEHLER:  I think it's important to tell them

17    that they can only consider the testimony and exhibits

18    received.  I think that's an important --

19            THE COURT:  It's on the previous page.  That's the

20    instruction:

21            The evidence you are to consider in deciding what the

22    facts are are one, two, three.

23            Then the next one is telling them what's not

24    evidence.

25            MR. KOEHLER:  Okay.

1              MR. MAYNARD:  Yes.

2              THE COURT:  Another correction?

3              MR. MAYNARD:  Well, and again, I'm not sure if it's a

4    correction per se, Judge, but it really went to that --

5              THE COURT:  How does it start?

6              MR. MAYNARD:  "The term 'material support or

7    resources' means..."

8              THE COURT:  Let me get there.  That's on Count 5?

9              MR. MAYNARD:  Yes.

10             THE COURT:  Okay.

11             MR. MAYNARD:  I went back and read the statute.  I

12   think what the statute says is that "material support or

13   resources" means -- I'm trying to think -- things that are

14   tangible or intangible in services.

15             THE COURT:  Well, no, it says property.

16             MR. MAYNARD:  Property.

17             THE COURT:  Tangible or intangible.

18             MR. MAYNARD:  And services.  And then I think it --

19             THE COURT:  Well, wait.  Let me get the statute so

20   we're not relying exclusively on your memory.

21             It's 18 U.S.C. 2339A, subsection (b) is the

22   definition.

23             So, "The term 'material support or resources' means

24   any service, including currency or monetary instruments or

25   financial securities."  Then "financial services, lodging,

1    training," et cetera.

2              MR. MAYNARD:  The way I read it it says:

3              Any property, tangible or intangible, or service --

4    and then it goes through and lists those things that are

5    property, tangible or intangible, or services.

6              THE COURT:  So how do you want me to say the

7    definition?

8              MR. MAYNARD:  I just think it should say:

9              The term "material support or resources" means

10   property, tangible or intangible, and any service including --

11   and then list what we have.

12             THE COURT:  Okay.  So here is the proposal, I think.

13             "The term 'material support or resources' means any

14   property, tangible or intangible, or any service" -- I'm

15   taking out the parentheses -- "including currency or monetary

16   instruments, training, facilities, weapons, personnel" --

17   parenthesis -- "one or more individuals who may be or include

18   oneself" and include "transportation."

19             MR. MAYNARD:  That's what I think it is.

20             THE COURT:  Is that agreeable?

21             MR. KOEHLER:  We don't have any objection except we

22   didn't include "or allege property" and so that's why we

23   thought we took it out earlier.

24             THE COURT:  Well, I think that Mr. Maynard is right.

25             Property -- what would "property" mean "tangible or

1    intangible" if also it doesn't mean "weapons" -- I mean,

2    weapons are property.

3            And then there's a bunch of the other ones that we

4    left out.  That it's all -- that all of this refers to

5    "property or services" and then gives examples of different

6    items of property or services.

7            Remember, one of them is safe houses.  That's a

8    property.  So I'm persuaded that that's what it means.

9    "Property or services" and here are examples of what's

10   included.

11           MR. MAYNARD:  That's the way I read it.

12           Then two pages farther on, Your Honor, at the top it

13   says "(a) the seizing or detaining."

14           THE COURT:  Yes.

15           MR. MAYNARD:  The last paragraph where it says "the

16   government does not have to prove" -- I think that should be

17   excluded.

18           THE COURT:  Well, interestingly, I tried to persuade

19   you of that this morning and you disagreed with me.

20           MR. MAYNARD:  I was -- and I have been chastised

21   appropriately over lunch by Ms. Plomin -- but I was focused on

22   that "property" thing, and so I don't think you put in what

23   the government doesn't have to prove.  I think you only put in

24   what the government has to prove.

25           MR. KOEHLER:  Your Honor, that's something that's

1    actually in the statute.

2            THE COURT:  Well, the fact that it's in the statute

3    doesn't make it a jury instruction.  Tell me where it is so I

4    can see the context since we don't have a pattern instruction.

5            While Mr. Koehler is looking, were there any other

6    corrections?

7            MR. MAYNARD:  No, ma'am.

8            THE COURT:  Ms. Brook, do you have any typos,

9    anything like that?

10           MS. BROOK:  No, we do not.

11           THE COURT:  The instruction that nobody saw before --

12           Well, you saw how I put 1 and 5 together, I mean,

13   serially one right after the other.  And then after we

14   finished with the definitions in 5 that we were just

15   discussing, I put in the agreed-upon standard "conspiracy is a

16   kind of criminal partnership."

17           I don't think that's -- that's not the one I need you

18   to look at very closely because we knew that was coming in

19   there.

20           And then what I did was turned the "aiding and

21   abetting a conspiracy" into a generic one to cover both

22   conspiracies.  And so, hopefully, you've had a chance to read

23   through that and agree that that's accurate.

24           MR. MAYNARD:  The defense has and I agree.

25           MS. BROOK:  And so does the government.

1              THE COURT:  Thank you.

2         And then the other one that was previously two

3    instructions, and considering that the Pinkerton instruction

4    is my least favor of all instructions, the idea of reading it

5    twice was particularly difficult for me to agree to.

6         Immediately after Count 2 I did a Pinkerton

7    instruction that essentially says:  If somebody committed

8    Count 2, defendant can be found guilty of Count 2.

9         If he was in the same conspiracy with the guy that

10   did Count 2, either the conspiracy charged in Count 1 or the

11   conspiracy charged in Count 5.

12             MR. MAYNARD:  I saw it.  It's fine.

13             MS. BROOK:  Yes.

14             THE COURT:  Okay.  So everything else is fine except

15   for what Mr. Koehler and I need to discuss?

16         Okay.  Mr. Koehler, what do you want to tell me about

17   what you don't have to prove?

18             MR. KOEHLER:  At this point I'm not finding exactly

19   what it was that I was looking for, but I know that that

20   provision deals with the notion of fund raising for an

21   organization, for ostensibly for political activities in an

22   organization as opposed to as terrorist activities.

23         And that's a big part of why that exists.  So the

24   first sentence might not be that applicable, but the second

25   sentence certainly is applicable; and that is, that the

1  conspiracy need not come to full fruition in order for the
2  person to be found guilty, because the second sentence is
3  important.
4      THE COURT:  So you're agreeable to deleting the first
5  sentence?
6      MR. KOEHLER:  Yes.
7      THE COURT:  In my view, I told them what a conspiracy
8  is.  And all you have to do is have an agreement to do that,
9  intend to help accomplish it.  It doesn't say you have to do
10 anything else.  This is the absence of an overt act, so I
11 don't -- I'm going to delete the entire paragraph.
12     So with the set of instructions that I provided to
13 you at 12:15 by e-mail and that you have in front of you, we
14 have -- I have made the following modifications.
15     I have deleted the first sentence of the instruction
16 from the standard instructions entitled "What is Not
17 Evidence."
18     I have modified the definition of "Material Support
19 or Resources" as previously read in the record.
20     And I have deleted the last paragraph of the elements
21 instruction for Count 5.
22     With those modifications, does the government have
23 any objections to the instructions as they will be given?
24     MR. KOEHLER:  I just caught something else, Your
25 Honor.

```
 1              THE COURT:  Okay.  Is it a typo or is it substantive?
 2              MR. KOEHLER:  Substantive.
 3              THE COURT:  Okay.  Where?
 4              MR. KOEHLER:  In the "conspiracy is a kind of
 5    criminal partnership" instruction that follows the two
 6    different conspiracy charges, it refers back only to the Count
 7    1 conspiracy after the middle of the second paragraph of the
 8    instruction.
 9              THE COURT:  Oh.  That is a typo because I used one of
10    the two identical instructions to put this one together.
11              So this one we need to make generic.
12              MR. KOEHLER:  I think the answer would be:  In order
13    to find the defendant guilty of this charge, you must find
14    that there was a --
15              THE COURT:  No.  Guilty of a conspiracy.
16              MR. KOEHLER:  Yes.
17              THE COURT:  You must find that there was a plan --
18              MR. KOEHLER:  -- to commit the object of the
19    conspiracy -- or plan to commit the crime that was the object
20    of the conspiracy.
21              THE COURT:  Yes.  A plan to commit the crime that was
22    the object of the conspiracy.
23              MR. KOEHLER:  And I know the standard Ninth Circuit
24    instruction has a portion that describes the fact that the
25    object need not actually occur, the object crime, but I'm not
```

1    seeing that in the instructions anywhere.  I'm not sure if it

2    got lost.  It's basically the statement --

3              THE COURT:  Let me find it in the book, the

4    conspiracy instruction.

5              MR. KOEHLER:  Okay.

6              THE COURT:  The only one that I find immediately is

7    the -- in the conspiracy with respect to controlled

8    substances.  9.19.  That's where this language, "A conspiracy

9    is a kind of criminal partnership" appears.

10             Oh.  It's at the end of the first paragraph.

11             "It does not matter whether the crime agreed-upon was

12   committed."

13             MR. KOEHLER:  Oh, there it is.  Then we're good on

14   that.  The next page --

15             THE COURT:  Hold on.  I just want to doublecheck the

16   generic language here.

17             The language that is in the instruction, we just

18   said, "In order to find the defendant guilty of a conspiracy,

19   you must find that there was a plan to commit the crime that

20   was the object of the conspiracy."

21             The pattern instruction reads -- it doesn't say "in

22   order to find the defendant guilty."

23             After "acted in similar ways or perhaps helped one

24   another," it says "you must find that there was a plan to

25   commit at least one of the crimes alleged in the indictment as

1    an object or purpose of the conspiracy with all of you

2    agreeing on the particular" -- "as to the particular crime

3    which the conspirators agreed to commit."

4            I think we should stick with what we have, if that's

5    agreeable.

6            MR. KOEHLER:  Agreed.

7            MR. MAYNARD:  That's fine.

8            THE COURT:  Okay.  What else, Mr. Koehler?

9            MR. KOEHLER:  On the next page, the "aiding and

10   abetting" instruction.

11           THE COURT:  Yes.

12           MR. KOEHLER:  Four lines up from the bottom it says

13   "commit the crime conspiracy."  The word "of" should appear

14   before the word "crime" and "conspiracy."

15           THE COURT:  Oh.  Thank you.

16           MR. KOEHLER:  And then I'm unclear where this last

17   sentence came from.  I don't recall that being part of our

18   proposed instruction.

19           "A defendant acts with intent to facilitate the crime

20   when the defendant actively participates in a criminal venture

21   with advance knowledge of the crime and having acquired that

22   knowledge when the defendant still had a realistic opportunity

23   to withdraw from the crime."

24           Well, I think we got it out of your instructions, but

25   let me just check the "aiding and abetting" instruction.

1           That's 5.1?

2           MR. MAYNARD:  Yes.

3           THE COURT:  I don't know where it came from either

4    but we must have gotten it from you.

5           MR. MAYNARD:  I think it's on 5.1, Your Honor, the

6    next-to-the-last paragraph in the instruction.

7           THE COURT:  Maybe I'm looking at the wrong edition.

8           Are you looking at --

9           MR. KOEHLER:  Oh, that's the bracketed part of 5.1.

10          MR. MAYNARD:  Page 79 of the instructions I thought

11   it was approved as of February of 2015.  I pulled them off the

12   Internet.  Can I approach?

13          THE COURT:  No.  I have Mr. Koehler's "aiding and

14   abetting" instruction right here, the one that was submitted

15   yesterday, page 9.

16          "A defendant acts with intent to facilitate the crime

17   when the defendant actively participates in a criminal venture

18   with advance knowledge of the crime and having acquired that

19   knowledge when the defendant still had a reasonable

20   opportunity to withdraw from the crime."

21          That's what you submitted yesterday and previously.

22          MR. KOEHLER:  We will leave it alone.

23          The "withdraw" language doesn't seem to be applicable

24   here but --

25          THE COURT:  Are there any other corrections?

```
 1            MR. MAYNARD:  Your Honor, I guess the only -- I just

 2    want --

 3            THE COURT:  Wait.  Wait.  Wait.  Mr. Koehler?

 4            MR. MAYNARD:  Oh, I'm sorry.

 5            THE COURT:  Any other?  He has been going through

 6    them.

 7            MR. KOEHLER:  We have not identified any additional

 8    corrections.

 9            THE COURT:  Okay.  This is your last chance.  Okay.

10            MR. MAYNARD:  On the page prior, the "conspiracy"

11    instruction which starts, "A conspiracy is a kind of criminal

12    partnership" --

13            THE COURT:  That page or the page prior to that?

14            MR. MAYNARD:  No.  That page.  I'm sorry.

15            THE COURT:  Yes?

16            MR. MAYNARD:  Where we have "intent to commit crimes

17    punishable by imprisonment exceeding one year."

18            THE COURT:  That's what we took out.

19            So this is the second paragraph.  It now reads:

20            "In order to find the defendant guilty of conspiracy,

21    you must find there was a plan to commit the crime that was

22    the object of the conspiracy."

23            MR. MAYNARD:  That's fine.

24            THE COURT:  Okay.  I'll go back to my last question.

25            Are there any objections from the government to the
```

1    giving or refusal of any instruction?

2              MR. KOEHLER:  No, Your Honor.

3              THE COURT:  Mr. Maynard, are there any objections to

4    the giving or refusal of any instruction?

5              MR. MAYNARD:  No, Your Honor.

6              THE COURT:  Okay.  The government provided us with --

7    I don't know if they're filed, but by e-mail, of two

8    documents; one entitled Government's Proposed Verdict Form and

9    the other one entitled Joint Proposed Verdict Form.

10             And I didn't look at either one of them because it

11   can't be both; so which is it?  Is there a joint agreed-upon

12   verdict form?

13             MR. MAYNARD:  The defense would agree with the Joint

14   Proposed Verdict Form if, on the second page, Count 3-A where

15   we are looking at --

16             THE COURT:  Count 3-A?

17             MR. MAYNARD:  Yes, ma'am.

18             THE COURT:  Okay.

19             MR. MAYNARD:  There are five statements that are

20   listed.  The government has withdrawn the third statement.

21             THE COURT:  You're right.

22             MR. MAYNARD:  If we take that statement out, the

23   defense would agree to the Joint Proposed Verdict Form.

24             THE COURT:  You agree, don't you, Mr. Koehler?

25             MR. KOEHLER:  Actually, well, we agree to withdraw

 1    that statement.  But the Joint Proposed Form was the version

 2    that the defense sent back to us as a proposal to add language

 3    to it and we think the language that's added is unnecessary.

 4            That it should simply --

 5            THE COURT:  I'm sorry.  I don't know about anything

 6    being added.

 7            MR. KOEHLER:  Okay.

 8            THE COURT:  I asked whether the joint proposed --

 9    which of these two, if any, are agreed upon?

10            And Mr. Maynard just said the Joint Proposed Verdict

11    Form he agrees to with the deletion of that third line.

12            MR. KOEHLER:  Correct.  The joint-proposed one that

13    we e-mailed over was a draft that was under consideration.

14            However, we had not agreed to that.

15            THE COURT:  Well, then what are the verdict forms

16    that you have agreed to?

17            MR. KOEHLER:  We haven't agreed to any.

18            THE COURT:  Why not?  I asked you to confer about the

19    verdict forms and try to reach an agreement before two

20    o'clock.

21            Okay.  We are going to take a recess.  You are going

22    to have these verdict forms.  And you're going to tell me what

23    your agreements are and what your disagreements are.

24            You can write on these.  But I don't want to just

25    have, as I mentioned before, a general discussion without a

1    proposed form in front of me.

2              So the Court is in recess.  You let us know when you

3    have reached some agreement or that you have agreed on some

4    but not all.

5              MR. MAYNARD:  I don't see any difference in the two

6    other than the title.

7              THE COURT:  Well, I haven't looked at them.  That's

8    what the two of you need to do is figure it out.

9              MR. MAYNARD:  Okay.

10             THE COURT:  Because when I get two that look almost

11   the same and one says it's "joint" and one says it's

12   "proposed," I'm not going to try to figure out which is which.

13             Court is in recess.

14        (Recess taken at 2:36 p.m.; resumed at 2:42 p.m.)

15             THE COURT:  All right.  So I have been provided back

16   a copy of the document entitled Joint Proposed Verdict Forms

17   with a few deletions and I assume that both sides agree with

18   this form?

19             MR. KOEHLER:  Yes.  Correct.

20             MR. MAYNARD:  Yes, Your Honor.

21             THE COURT:  We are actually going to make five

22   verdict forms out of them, but they will be substantially --

23   they might look slightly different, but they will be

24   substantially the same.

25             Two other items before you leave.

1          One, I want on the record to have each of you confirm

2     that you have reviewed the electronically-admitted exhibits on

3     our exhibit display computer and that you approve and confirm

4     that they are the exhibits that have been admitted.

5          MR. KOEHLER:  We have done so, Your Honor.

6          MR. MAYNARD:  The defense agrees.

7          THE COURT:  Thank you.

8          The last item it is -- I just want to get your

9     thoughts on what I should tell the jury with respect to the

10    exhibits that cannot be viewed electronically.

11         There are lots of -- well, there's boxes and carts,

12    putting aside the weapons for the moment.  Thoughts?  It's

13    going to be kind of tight quarters in there.

14         I don't know if I want to wheel in carts and boxes

15    unless the jury wants them.  They obviously have to be

16    available for them.  I don't know what the -- how fussy the

17    FBI is about their custody of the non-electronic exhibits.

18         MR. KOEHLER:  I don't think there is any issue at all

19    with respect to the non-valuables, I guess is the best way to

20    put it, which would include the non-electronics, of course.

21         But the only issues that I'm aware of, Your Honor, in

22    talking to Ms. Brook as well is the firearms and ammunition.

23    Everything else we think is fine.

24         THE COURT:  And can you just leave it here or does

25    somebody from the FBI have to be baby-sitting everything --

1    We'll talk about the weapons in a moment.

2    MR. KOEHLER:  I believe -- and we were just talking

3  about this.  We believe the non-firearm evidence can be left

4  here and that's fine.  The firearms and ammunition, an agent

5  definitely has to maintain custody.  And I know there are

6  court policies on that as well.

7    THE COURT:  Well, here's what I would ask you to do

8  or someone do this for you, maybe Agent Whitson, is separate

9  all of the -- I know the firearms have been separate.

10    I don't know the extent to which the live ammunition

11  is still separate.  There's obviously some spent ammunition.

12  I don't think we have any concern about that.

13    MR. KOEHLER:  No.

14    THE COURT:  So that it's separated out before the

15  jury retires to deliberate so that we can wheel back or carry

16  back any of that other evidence to them and leave it in the

17  jury room or wherever they want it.

18    With respect to then what's left in the courtroom,

19  the firearms and the live ammunition, what I usually tell the

20  jury is that we're not sending back the firearms or the live

21  ammunition but that it is available for their inspection if

22  they wish to have it.

23    And that they need to send a note out and we will

24  then give them those items separately, as in, we will give

25  them all the guns.  And then when they're done looking at

1    those, we will take them away and we'll give them the

2    ammunition.

3         Why they would want to see the ammunition is a

4    mystery to me, but sometimes they just like to.  So that's

5    what I'll tell them, now that I know that all the rest of it

6    can go back to the jury --

7         MR. KOEHLER:  That's perfect.

8         THE COURT:  -- for them to sort through as they wish.

9         MR. KOEHLER:  The agents have been keeping the

10   firearms and ammunition segregated from all other evidence

11   throughout the pendency of the trial, so that's already done

12   and that's not a problem.

13        THE COURT:  Okay.  But somebody needs to be in the

14   courtroom while the jury is deliberating so that if they ask

15   to see any of it, we can send it right in.

16        MR. KOEHLER:  Would it be permissible for our person

17   to be on the third floor with the ammunition and firearms and

18   then bring them up if the jury sends a note?

19        THE COURT:  I think so, as long as I have -- well,

20   not me.  As long as Maureen has their number and can get in

21   touch with them immediately.

22        MR. KOEHLER:  Yes.

23        THE COURT:  Now, I know that I have had trouble not

24   with the FBI but with the ATF where they don't actually think

25   they're allowed to have the firearms out of their sight and I

1    disagree with that.

2         If the jury wants the firearms in the jury room for

3    some period of time, they go in there.  The agent comes back

4    in the courtroom and waits until they let us know that they

5    can take the firearms back.

6         MR. KOEHLER:  We will instruct the agents

7    accordingly.

8         THE COURT:  Okay.  Thank you.

9         Anything else, Mr. Koehler?

10        MR. KOEHLER:  No, Your Honor.

11        THE COURT:  Mr. Maynard?

12        MR. MAYNARD:  Your Honor, I just -- how do you

13   propose that you're going to select the three alternates

14   tomorrow.

15        THE COURT:  We already agreed by lot.

16        MR. MAYNARD:  I just didn't know whether you're going

17   to pull a number out of a hat.

18        THE COURT:  I am not going to do it.  And we don't

19   use a hat but we have a box.  And Maureen will have the juror

20   numbers 1 through 16 but without 3 in the box.  She will close

21   her eyes.  Well, first she'll shake the box.

22        MR. MAYNARD:  Okay.

23        THE COURT:  I have seen her do it.

24        She shakes the box.  Then she -- I don't know if she

25   closes her eyes.  She turns her head and she pulls three

1   pieces of paper out.  She opens them up.  And then she writes

2   them down and hands them to me and I tell the juror by number

3   which three have been selected as the alternates.

4         MR. MAYNARD:  I understood we were doing it by lot.

5   I just didn't know your process.

6         THE COURT:  Did you want to pick them?

7         MR. MAYNARD:  No, ma'am.  That's fine.

8         THE COURT:  I could have you pick one, Mr. Koehler

9   pick one, Maureen pick one, but I think she can pick all three

10  of them.

11        MR. MAYNARD:  Maureen is just fine.

12        THE COURT:  Okay.  All right.  Then tomorrow morning

13  at nine o'clock I will read the instructions.  So Mr. Koehler,

14  you said that your closing may -- I think it's going to take

15  me 30 minutes or there -- you know, close to, to read the

16  instructions and then you're going to start your closing.  And

17  you said your closing might go an hour-and-a-half?

18        MR. KOEHLER:  Yes.  It could conceivably go longer.

19        THE COURT:  Well, I'm just talking about we can't

20  go -- we're going to have to take a break.

21        MR. KOEHLER:  Yes.

22        THE COURT:  So I don't want to be the one to break,

23  so I'm going to tell you that whatever time you start, some

24  time between -- I'll give you 10:15 to 10:35 is when we will

25  have to take a break and I will let you pick the moment.

1          MR. KOEHLER:  Okay.

2          THE COURT:  Rather than me interrupting you in the

3    middle of -- we had this case one time where a lawyer was

4    right at the crescendo of his closing argument in a civil case

5    in state court and the fire alarm went off and we had to all

6    leave the building and he never got his momentum back.

7          So I don't want to do that to either side in their

8    closing argument.  So that's how we will leave it.

9          And then when Mr. Koehler finishes, I'm going to

10   leave it up to you, Mr. Maynard, as to whether -- because

11   let's assume he goes until 11:30.  If you want to take a

12   half-hour and then break for lunch so that they don't have a

13   whole bunch of time without hearing anything in response or if

14   you want to take a lunch break, we'll do it.

15         And, again, I'll give you 11:30 or later.  If he

16   finishes before 11:30, then I would want you to start your

17   closing and then I will give you a little window of any time

18   between say ten to 12:00 and ten after 12:00ish to break.

19         So that's kind of the game plan.  So, again, I don't

20   want to be the one to say in the middle of your closing I'm

21   going to cut you off now and come back after lunch, but that's

22   kind of my idea as to how we will structure it.

23         Hopefully, Mr. Koehler doesn't go until like ten to

24   12:00 because, one, that will be way longer than an

25   hour-and-a-half; and two, it would be -- I don't think you

1    could start then unless you had like ten minutes of some real

2    gems to impart and then wanted to come back for the rest of

3    it.

4         MR. MAYNARD:  No gems.

5         THE COURT:  Well, there's a lot of time between now

6    and tomorrow morning.  Okay.  So that's how we will proceed.

7         I'm sorry I didn't mention this yesterday to the

8    jury, but I didn't think of it, so that they could be thinking

9    about it.  But I will give them the option -- although in my

10   experience they don't take it because of their plans that they

11   have already made.

12        I will give them the option of returning on Monday to

13   deliberate since, you know, I will be here anyway.  I doubt

14   that they will accept that because they've probably already

15   made, you know, plans to work or whatever on that day.  But I

16   will give them that option so that I will ask them when they

17   retire to deliberate to also discuss that about coming back on

18   Monday.

19        And if they don't, if that's not convenient, then, of

20   course, they don't have to return until Tuesday.  Okay.  I'll

21   see you home morning at 9:00.

22        (Proceedings adjourned at 2:54 p.m.)

23                         *  *  *

24

25

```
 1
 2                   C E R T I F I C A T E
 3
 4          I, ELIZABETH A. LEMKE, do hereby certify that I am
 5   duly appointed and qualified to act as Official Court Reporter
 6   for the United States District Court for the District of
 7   Arizona.
 8          I FURTHER CERTIFY that the foregoing pages constitute
 9   a full, true, and accurate transcript of all of that portion
10   of the proceedings contained herein, had in the above-entitled
11   cause on the date specified therein, and that said transcript
12   was prepared under my direction and control.
13          DATED at Phoenix, Arizona, this 1st day of August,
14   2016.
15
16
17
18
19                         s/Elizabeth A. Lemke
                           ELIZABETH A. LEMKE, RDR, CRR, CPE
20
21
22
23
24
25
```