1  Daniel D. Maynard, No. 009211
   dmaynard@mmcec.com
2  **MAYNARD CRONIN ERICKSON**
   **CURRAN & REITER, P.L.C.**
3  3200 North Central Avenue, Suite 1800
   Phoenix, Arizona 85012
4  (602) 279-8500

5  Attorneys for Defendant

6              **UNITED STATES DISTRICT COURT**

7                 **DISTRICT OF ARIZONA**

8  United States of America,        No.  CR 15-00707-PHX-SRB

9                    Plaintiff,     **SENTENCING MEMORANDUM AND**
                                    **MOTION FOR DOWNWARD VARIANCE**
10 v.                               **AND/OR DEPARTURE PURSUANT TO 18**
                                    **U.S.C. § 3553(a) AND 5K2.0 OF THE**
11 Abdul Malik Abdul Kareem,        **SENTENCING GUIDELINES**

12                   Defendant.

13        Defendant, Abdul Malik Abdul Kareem ("Abdul Kareem"), through his undersigning

14 counsel, files the following Sentencing Memoranda and Motion for Downward Variance and/or

15 Departure pursuant to Title 18 U.S.C. § 3553(a) and 5K2.0 of the United States Sentencing

16 Guidelines ("Guidelines"),  and clarified by the United States Supreme Court's decisions.  He

17 respectfully requests that this Court impose a sentence of no more than seventy (70) months.

18 In support of this motion, Abdul Kareem submits the following memorandum of points and

19 authorities.

20         **MEMORANDUM OF POINTS AND AUTHORITIES**

21 **I.    BACKGROUND**

22        Abdul Kareem was found guilty of Conspiracy to Transport Firearms and Ammunition

23 in Interstate Commerce with the Intent to Commit a Felony, Aiding and Abetting the

24 Transportation of Firearms and Ammunition in Interstate Commerce with the Intent to Commit

25 a Felony, Making False Statements to the Federal Bureau of Investigations, Felon in Possession

26 of a Firearm, and Conspiracy to Provide Material Support or Resources of a Designated Foreign

Terrorist Organization, after a five week trial.

Abdul Kareem is a 45 year old man with virtually no criminal history.  He has never been convicted of a violent crime, rather his only convictions are for disorderly conduct and driving under the influence.  Further, Abdul Kareem's last conviction was twelve years ago, in 2004.  Since that time, Abdul Kareem has been a productive member of society.  He has been steadily employed since he was 16 years old.  He has started and operated 3 small businesses and provided employment to many people in need.  Not only has he provided employment, but he has also provided housing and food to numerous people.

Abdul Kareem has maintained a very close relationship with his large extended family of siblings and half-siblings and prior to his incarceration, spoke with his mother and his brother, James Sampson, nearly every day.  In fact, prior to Abdul Kareem's arrest in the instant case, his mother was planning on moving from Philadelphia to Phoenix to live with Abdul Kareem.  Abdul Kareem has taken in two of his nephews and allowed them to live with him when they needed a place to live and provided them with jobs.  At the time of his arrest, one of his nephews was working for him and living with him.

While he was raised in a Baptist household, Abdul Kareem converted to Islam in 2011. He was drawn to Islam because he believes it to be a peaceful religion and he was drawn to the sense of community that it provides.  Prior to the time period of the instant charges, Abdul Kareem had never been accused of radical or violent thinking by anyone much less acts of violence.  Those who are close to Abdul Kareem report that his view of Islam was that it is a peaceful, inclusive, and loving religion.

## II. MOTION FOR DOWNWARD DEPARTURE AND OR VARIANCE AND ARGUMENT FOR BEING SENTENCED AT LOW END OF THE GUIDELINE RANGE

### A. The Guideline Sentence Conflicts with 18 U.S.C. § 3553(a)'s Directive to Impose a Sentence "Sufficient but no Greater Than Necessary"

In *Kimbrough v. United States*, 552 U.S. 85 (2007), the Supreme Court reasserted its

holding set forth in *United States v. Booker*, 543 U.S. 220 (2005) and *Rita v. United States*, 551 U.S. 338 (2007), that the United States Sentencing Guidelines are only one of several 18 U.S.C. § 3553(a) factors to be considered by the sentencing court in its effort to impose a "just and reasonable" sentence. The district courts must treat the Guidelines as the "starting point and the initial benchmark" when sentencing a defendant. 552 U.S. at 108. In fact, the Guidelines are not only no longer mandatory, they are also not presumed reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009). The Supreme Court found that a sentencing court has the discretion, after considering relevant sentencing factors, to disagree with the Guidelines' "rough approximation" and impose a sentence that is "sufficient but not greater than necessary, to comply with the purposes" of sentencing. *Rita*, 551 U.S. at 351. *See also United States v. Davenport*, 445 F.3d 366,370 (4th Cir. 2006)(quoting *United States v. Foreman,* 436 F.3d 638, 644 n.l (6th Cir. 2006). The Supreme Court recognizes that the sentencing judge has greater familiarity with the individual case and the individual defendant before him and is in a superior position to find facts and judge their import under 18 U.S.C. § 3553(a) in each particular case. *Kimbrough*, 552 U.S. at 109. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 98 (1996).

When *Booker* made the Guidelines only one of a number of factors to be considered at sentencing by the district court, the door was opened to consider mitigating factors previously discouraged or prohibited from consideration by the Guidelines. *See*, *e.g.*, *Rita*, 551 U.S. at 351; *United States v. Chase*, 560 F.3d 828 (8th Cir. 2009)(holding that "departure precedent does not bind the district courts with respect to variance decisions..."). 18 U.S.C. § 3553(a) directs that the sentencing court consider the "nature and circumstances of the offense and the history and characteristics of the defendant in order to impose the appropriate sentence. 18 U.S.C. § 3553(a). The sentence should be "sufficient, but not greater than necessary to comply

with the purposes set forth... [therein]." *Id*.

Abdul Kareem offers the following in the way of 18 U.S.C. § 3553(a) factors that support his request for a downward variance from the applicable Guidelines range as determined by this court to arrive at his requested sentence of no more than seventy (70) months.

### B.   The History and Circumstances of the Defendant Warrant a Downward Departure or Variance.

#### 1.   Family Support

Congress found that prisoners cite family support as the most important factor in helping them stay out of prison.  (42 U.S.C. § 17501(b)(7)).  Abdul Kareem has a loving family that support him.  He is extremely close to his mother and before he was arrested, he was in contact with her numerous times a week and she continues to support him and love him.  She lives in Philadelphia but has visited Phoenix to see him while he is awaiting sentencing and has called his attorney and him numerous times to check on him and his condition.  Abdul Kareem's mother's letter states in simple prose the unconditional love and support she has for her son. (Ex. 1)  Several of his siblings wrote letters of support that express their love for Abdul Kareem.  (Exs. 2-6) The letters of support from his friends and family members speak of a kind, good hearted human who helped those in need and fed people when they were hungry and provided them with jobs.

His family continues to support him and believe in him based upon their history with him.  Certainly, the differences in the conditions of his upbringing and where he was raised and his continued family support should be taken into consideration in sentencing pursuant 18 U.S.C. § 3553 and to 5K2.0(a)(2)(A) and (B).

#### 2.   Aberrant Behavior

While Abdul Kareem does not admit participation in the charged crimes, Abdul Kareem requests a downward variance because the crimes for which he was convicted constitute

1  aberrant behavior.  The behavior that the jury found he participated in is completely contrary
2  to his character and history.

3        Section 5K2.20 of the Federal Sentencing Guidelines state that a downward departure
4  is appropriate for aberrant behavior where the crime was "(1) committed without significant
5  planning, (2) was of limited duration and (3) represents a marked deviation by the defendant
6  from an otherwise law abiding life."  While Abdul Kareem may not be eligible for this
7  departure under the Guidelines due to his very old felony convictions, this is a factor that should
8  certainly be taken into consideration under 18 U.S.C. § 3553.

9        Abdul Kareem is a 45 year old man with no history of violent crime.  His only criminal
10  convictions have been for the non violent crimes of driving under the influence and disorderly
11  conduct and his most recent conviction is 12 years old.  Aside from these relatively minor
12  crimes committed in his 20's and early 30's, Abdul Kareem has led a law abiding life.  Any
13  involvement he had with Simpson and Soofi constitute aberrant behavior from an individual
14  who, up to this point, has led what many might consider an exemplary life.  The evidence at
15  trial supports a finding that Abdul Kareem has done much to help others by providing them
16  jobs, housing, clothing, and food.  He has taken in the homeless and their children when they
17  were in need.

18        Abdul Kareem's father was a police officer and one of Abdul Kareem's brothers
19  followed in his father's footsteps to also become a police officer.  Although Abdul Kareem's
20  father passed away when he was 14 years old, Abdul Kareem's mother continued to raise Abdul
21  Kareem in a strict manner to ensure he became a productive citizen.  Abdul Kareem carried that
22  upbringing into his adult life.  He has been steadily employed since he was  16 years old.  He
23  started and operated three small businesses during which time he provided employment for
24  many people in need.  Not only did he provide employment for many people, but he also opened
25  his home to anyone needing housing and food, despite how little he had.

26

Abdul Kareem converted to Islam in 2011 when he was 40 years old.  He converted because it was a peaceful religion and he was drawn to the sense of community it provided.  At no time, prior to the time period of these allegations, had Kareem exhibited support for an extreme religious ideology or violent ideations associated with radical Islam.  It is instructive that the F.B.I. had an open investigation into Abdul Kareem since 2012 and did not uncover any evidence of Abdul Kareem engaging in any radical behavior prior to the instant charges.  This is in stark contrast to Simpson, who had been espousing radical views and attempting to commit violence on the behalf of such views since at least 2009.  By any account, those close to Abdul Kareem state that he had a peaceful view of his religion and certainly had not expressed any desire for violence.  Unlike Simpson and Soofi, he did not collect and hoard radical materials.  Further, Kareem was extremely close to many non-Muslim friends and family and did not exhibit of the hatred for non-Muslims that is so inherent in extremist philosophy.

For all of these reasons, the Court should look at Abdul Kareem's behavior as found by the jury to be aberrant.

### 3.   Low Risk of Recidivism

In sentencing the Court is required to impose a sufficient sentence but no greater than necessary to "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C). Abdul Kareem's low risk for recidivism weighs in favor of the Court exercising its discretion in applying a downward variance or departure.  The U.S. Supreme Court described "the likelihood that [the defendant] will engage in future criminal conduct" as "a central factor that sentencing courts must consider." *Pepper v. U.S.*, 562 U.S. 476, 478 (2011).

Empirical data has established age at sentencing and criminal history category are significant factors in predicting whether an individual will reoffend.  *See* United States Sentencing Commission, *Measuring Recidivism: Criminal History Computation of the Federal Sentencing Guidelines* (2004), Ex. 7.  The data has demonstrated that the older an offender is at sentencing and the lower their criminal history category is, the likelihood that they reoffend

dramatically decreases. *Id.*  Given that Abdul Kareem is 45 years old and his Criminal History level is one or two, he is amongst the least likely to reoffend.  It is unsurprising that Abdul Kareem falls into a category of offenders least likely to reoffend given how aberrant the behavior for which he was convicted is compared to the rest of his life.   Prior to these allegations, Abdul Kareem lived for 45 years with no history of exhibiting radical or terrorist ideology nor was he ever convicted for a violent crime.  The crime for which he was convicted is in stark contrast to the life he has led, therefore is highly unlikely to occur again.

Further, while Abdul Kareem disputes the evidence, the crime for which Abdul Kareem was convicted occurred within a set of circumstances that have ceased to exist.  Abdul Kareem lived his entire life without an accusation against him until he associated with Simpson.  It is clear from the evidence that Simpson was the instigator of this crime with a long history of radical thinking and attempts to do violence on behalf of that radical thinking.  Simpson and Soofi were clearly the primary actors in this crime where the evidence presented, at best, established Abdul Kareem as an minimal participant.  Given that Simpson and Soofi are deceased, any influence they allegedly had no longer exists and it is highly likely Abdul Kareem will continue to live a law abiding life.

### 4.   Solitary Confinement

18 U.S.C. § 3553 requires that the "court shall impose a sentence sufficient, but not greater than necessary" to achieve its purposes.  Amongst these purposes is to provide just punishment for the offense, afford adequate deterrence, protect the public, and provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.*  The conditions under which Abdul Kareem has been and will be incarcerated warrant a downward variance to avoid a sentence that is greater than necessary to achieve the objectives of 18 U.S.C § 3553.

Abdul Kareem was arrested on June 10, 2015.  From that day on, he spent nine months awaiting trial in solitary confinement in unimaginable conditions.  He was confined to a small

windowless cell for 23 hours a day.  The cell was equipped with only a twin size bed with a thin threadbare mattress, a shower, toilet and sink.  His only means of determining if it was day or night was by the timing of the meals he was given.  He was never permitted to go outside, and was allowed only one hour a day to go into a second windowless room.  His only human contact was with guards giving him meals and his attorneys.  He was allowed no visits and was only permitted to make phone calls during his allotted one hour a day.  The inability to see outside his cell enhanced his sense of isolation and he had no access to television, radio, newspapers, or magazines.  When he asked for a Quran, he was initially given a Bible by the guards.

While in prison, it is likely Abdul Kareem will be placed in a special housing unit if he is designated an Islamic terrorist who supports ISIS just as he was placed in solitary confinement from his arrest before and through trial.  He has been publicly humiliated, disgraced, has lost his business and his ability to make a living wage.  Further, the F.B.I. has alleged that Abdul Kareem has ties to the Black Panther Party despite the fact that not a shred of evidence to this effect was produced in discovery or introduced at trial and he was designated as a member of the Black Panther Party while at CCA Florence which limited his movements and activities.  This designation has recently been removed.

Because of the conditions of his incarceration, Abdul Kareem's punishment is more severe than the average offender.  A lengthy period of incarceration under these severe conditions is greater than necessary to achieve the objectives of 18 U.S.C. 3553.

**C.**   **The Nature and Circumstances of the Offense Warrant a Downward Departure or Variance.**

While Simpson and Soofi committed a very serious crime, this Court should consider the minimal role Abdul Kareem played in aiding and abetting a conspiracy.  While Abdul Kareem continues to deny any involvement in the conspiracy, the evidence at trial supported that Abdul Kareem was minimally involved and withdrew from the conspiracy.

Under 18 U.S.C. § 3553(a), the Court may consider factors not ordinarily deemed relevant by the Sentencing Guidelines. *Gall v. United States*, 552 U.S. 38. In *Gall*, the Court upheld a downward variance based in large part on withdrawal from the conspiracy even though withdrawal from conspiracy is not a factor ordinarily considered under the Guidelines. *Id*.

The single most important and uncontroverted fact established at trial was that Abdul Kareem did not travel to Garland, Texas nor did he participate in the attack. While the attack was occurring, Abdul Kareem was 1,000 miles away working for his moving business. While witnesses testified that Abdul Kareem had possible knowledge of Simpson and Soofi's desire to do harm at the Draw Muhammad Contest, there was no evidence that Abdul Kareem knew any details of the plan or took any steps to go to Texas to participate in the attack. The testimony at trial supports the conclusion that he was shocked and surprised by the attack. There were no texts on communication from Simpson or Soofi in the days before the attack. Abdul Kareem requests this Court consider this along with his minimal participation in the conspiracy as outlined below, in support of a downward variance in his sentence.

**D.    The Nature of the Offense Falls Outside the Heartland of Cases to Which the Federal Guideline Range Describes Therefore a Downward Departure is Warranted.**

Abdul Kareem moves for a downward departure pursuant to 5K2.0(a)(2)A) and (B), which provide that the Court can depart downward if there is a factor not adequately taken into consideration by the Sentencing Commission or in exceptional cases in which there is present a circumstance that the Sentencing Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence. Alternatively, he argues for being sentenced to the low end of the guideline range.

Chapter 1, Part A(b) of the Federal Sentencing Guidelines Manual states that sentencing courts are to treat each guideline as carving out a "heartland" which is a set of typical cases embodying the conduct that the guideline describes. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs

from the norm, the court may consider whether a departure is warranted." Section 5K2.0(a)(4) states "a departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of an offense."

The sentencing court may consider disregarding the Guidelines sentence where the case falls outside the "heartland" to which the Commission intends individual Guidelines to apply. *Rita v United States*, 551 U.S. 338, 351 (2007).

Here, the offense for which Abdul Kareem was convicted falls outside the "heartland" of cases applicable to the guideline range. The instant case is extremely unusual, in that Abdul Kareem has no ties to ISIS or any other terrorist organization. There was no evidence submitted or admitted at trial of Abdul Kareem meeting with, texting or communicating with ISIS recruiters or members. In contrast to Simpson, there is no evidence that he communicated with anyone from ISIS nor did he pledge allegiance to ISIS. Unlike Simpson, Abdul Kareem did not attempt to travel to a foreign country to fight on behalf of a terrorist organization. Most importantly, Abdul Kareem did not participate in the attack in Garland, Texas. Given the minimal and attenuated role Abdul Kareem was convicted of playing in the offense, this case falls outside the heartland to which Guidelines apply.

### III.   MOTION FOR DOWNWARD DEPARTURE BASED ON MINIMAL ROLE IN THE OFFENSE.

§ 3B1.2 of the Sentencing Guidelines provides adjustments downward to the offense level based upon Abdul Kareem's role in the offense. §3B1.2(a) provides for a downward decrease in the offense level by 4 levels if the Defendant was a minimal participant in the offense. §3B1.2(a) is intended to "cover defendants who are plainly among the least culpable of those involved in the conduct of the group." *U.S. Sentencing Guidelines Manual § 3B1.2(a),*

*cmt. n. 4 (2013).*  The relevant comparison is between the defendant's conduct and that of his co-participants, not between the defendant's conduct and that of the hypothetical "average participant" in the type of crime charged.  *United States v. Petti*, 973 F.2d 1441 (9th Cir. 1992), *cert. denied*, 123 L. Ed. 2d 480 (1993).

At best, the evidence presented at trial established that Abdul Kareem was a minimal participant in the criminal activity and thus his offense level should be decreased by four levels as was argued in Abdul Kareem's objection to the PSR.  Even though Abdul Kareem was found guilty, he has denied any involvement, the facts that were presented at trial can only lead to the conclusion that he was a minimal participant at worst.

The facts presented at trial demonstrated a stark contrast between the role of Simpson and Soofi and the role that Abdul Kareem played in the Texas event.  By any account, Abdul Kareem was certainly the least culpable of the group.  The evidence presented shows that Simpson and Soofi, not Abdul Kareem, planned, promoted, and executed the attack.  Simpson and Soofi planned for the attack and stockpiled an arsenal of weapons.  They amassed hundreds of photos and documents of extremist ideology and communicated with known terrorists to deepen their resolve.  They then armed themselves with three assault rifles, three handguns, two bullet proof vests, and hundreds of rounds of ammunition and drove over 1,000 miles to Garland, Texas.  They pledged allegiance to the leader of the Islamic State publicly on Simpson's twitter account.

By contrast, while Simpson and Soofi were attempting the attack, Kareem was over 1,000 miles away working for his company doing a moving job.  By every account, he did not arm himself, travel to Texas, pledge allegiance to the Islamic State, or fire a single shot.  There is no evidence that Abdul Kareem planned any part of the attack nor that he led Simpson and Soofi into this kind of extremist thinking.

It seems clear from the evidence at trial that Simpson was the instigator and ideological leader behind the crime. Simpson had been espousing extremist ideology and expressing his desire to commit violence at least six years prior to the Garland event.  He was prosecuted for terrorism related charges in 2010 during which the investigation revealed recorded statements that he made discussing his desire to go fight on behalf of his terrorist views.  He had eight Twitter accounts through which he constantly communicated with known terrorists and publicly announced his intentions regarding the Draw Muhammad Contest in Garland Texas.  By contrast, the investigation into Abdul Kareem revealed nothing of that nature.

The only evidence presented at trial that Abdul Kareem aided and abetted the conspiracy were the allegations that Kareem provided money to buy one of the six firearms and/ or one box of the hundreds of rounds of ammunition that Simpson and Soofi brought with them to Garland, Texas.  This is the greatest extent of Abdul Kareem's involvement that is supported by any evidence.  It is important to note, aside from the one firearm and one box of ammunition attributed to Abdul Kareem, Simpson and Soofi took five other firearms and thousands of other rounds of ammunition to perpetrate the Texas attack.  Thus, even if Abdul Kareem played no role at all and provided nothing to Simpson and Soofi, the attack would have occurred in virtually the same manner.  Abdul Kareem's purported role was completely inconsequential.

Based on the evidence presented at trial, Abdul Kareem's role can at worst be seen as a minimal participant in the conspiracy.  Simpson and Nadir Soofi were the perpetrators of the crime and the evidence presented at trial showed that Abdul Kareem's role was substantially less. The evidence presented at trial warrants Abdul Kareem receiving a downward reduction for a minimal role in the crime.

## IV.    THE COURT SHOULD NOT APPLY THE ENHANCEMENT ACCORDING TO U.S.S.G. § 3A1.4.

The sentencing court may deviate from the Guidelines if the court expresses a reasonable policy disagreement with the particular provisions. *United States v. Mitchell*, 624 F.3d 1023,

1030, (9th Cir. 2010).  This Court should not apply the sentencing enhancement according to U.S.S.G. § 3A1.4 because it is draconian and inconsistent with the directives according to 18 U.S.C. § 3553 as applied to this case.

U.S.S.G. § 3A1.4 provides a 12 level increase to the offense level and a increase of the defendant's criminal history category to VI if the offense for which the defendant was convicted "involved, or was intended to promote a federal crime of terrorism."

18 U.S.C. § 3553(a)(1) requires that the sentence reflects the nature and seriousness of the offense.  The sentencing guideline for the crime of which Abdul Kareem was convicted, Providing Material Support to a Foreign Terrorist Organization, already takes into account the fact that this crime is a federal crime of terrorism.  It is unfair to increase his offense level 12 levels and increase his Criminal History Category to VI based on an enhancement for conduct for which he is already being punished.

In order to find  Abdul Kareem guilty of Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization, the jury was instructed that the government must prove 1) there was an agreement between two or more persons to provide material support to a ISIL 2) Abdul Kareem became a member of the conspiracy knowing of its unlawful object and intending to help accomplish it 3) that ISIL was a designated foreign terrorist organization at the time of the conspiracy and 4) Abdul Kareem knew that  either ISIL was a designated foreign terrorist organization or that ISIL has engaged or was engaging in terrorist activity. *See* Case 2:15-cr-00707-SRB Document 287, p. 14 (Ex. 8).  It is, therefore, inherent in the charge that the crime involved or was intended to promote terrorism.   The guideline range for that crime reflects the entirety of the conduct and Abdul Kareem should not be punished twice for the same conduct.  To do so would not fairly reflect the nature and circumstances of the offense.

18 U.S.C. § 3553(a)(1) also requires that court to consider "the history and characteristics of the defendant" in its sentencing determination.  Abdul Kareem's history dictates that he should be in Criminal History Category I or II.  If U.S.S.G. § 3A1.4 were

applied, Abdul Kareem's Criminal History Category would increase to VI, therefore treating him as though he were a career offender.   This completely disregards the history and characteristics of the defendant and applies a 5 level increase in his Criminal History Category based on no evidence whatsoever.   Because the application of § 3A1.4 of the Federal Sentencing Guidelines would be inconsistent with the objectives of 18 U.S.C. § 3553 and fundamental fairness, this Court should not apply the enhancement.

**IV.   <u>UNITED STATES SENTENCING IS TOO HARSH</u>**

The sentencing court must conduct its own independent analysis of all the circumstances involving the individual to be sentenced without placing undue emphasis on the guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007) (The sentencing judge "may not presume that the guidelines range is reasonable.  She must make an individualized assessment based on the facts presented."). This discretion is necessary due to the fact that the advisory sentencing range recommended by the Guidelines is often too harsh and fails to duly consider individual circumstances, thus running a significant risk of calling for a sentence that is greater than necessary to effect the statutory goals of sentencing. *See United States v. Ranum*, 353 F. Supp. 2d. 984, note 1 (E.D. Wisc. 2005) (Citing an article that quotes Justice Anthony Kennedy's statement in his August 9, 2003 address at the American Bar Association's Annual Meeting, that "our punishments [are] too severe, our sentences too long.").

Congress has recognized, as have many commentators, that our prison population has been growing at alarming rates and the issues of the cost to the community and recidivism need to be addressed.  The Bureau of Prisons has experienced an almost tenfold increase in its population from 25,000 inmates in 1980 to over 219,000 in 2013 (Ex. 9; pp. 1 and 9; Stemming the Tide: Strategies to Reduce the Growth and Cut the Cost of Federal Prison System).  The simple explanation is that more people are being sentenced to prison and for longer sentences in the United States.

Recently, the American public has picked up on the notion that sentencing in the United States is too harsh.  The United States has less than five percent (5%) of the world's population but we incarcerate 25% of the world's prison population (Ex. 10, p.1).  The United States per capita incarceration rate is six (6) times greater than Canada's, seven (7) times greater than France's, fourteen (14) times greater than Japan's and twenty-four (24) times greater than India's (Ex. 10, p. 2).   We are doing something terribly wrong in how we raise or educate our people to have so many more prisoners than the rest of the world or maybe we are too harsh in our punishment.  Leniency does not describe the criminal justice system in the United States.  When it comes to punishment, maybe we should listen to "the better angels of our nature."  The punishment needs to fit the crime and the person's role in the crime and we need to take into account people as individuals.

A major contributor to the high incarceration rate in the United States is the length of prison sentences.  The fact that the United States keeps its prisoners incarcerated longer causes the incarceration rate to be higher.  Our sentences are frequently two to three times longer than those in Britain and France for the same conduct.  There is little evidence that the length of a sentence as opposed to its certainty, has significant deterrent effects.  United States prisons offer little in the way of rehabilitation or training for life after incarceration.  Should we be surprised by a recidivism rate of 67.5% (Ex. 10, p. 4)?  Courts need to further the cause of justice and not be constrained by mandatory sentencing laws.  We need to reorient our system away from sheer punishment and model it on restoring people to be productive members of society.

Recently, Attorney General Holder ("AG Holder") suggested that judges look at alternatives to incarceration. AG Holder stated that when budgets are tight and federal sequestration has imposed untenable and irresponsible cuts, its imperative that we maximize our resources.  AG Holder stated that the federal prison population has grown by almost 800 percent since 1980 while the United States population has grown by a third since 1980  (Ex.

11).  The cost to house a federal prisoner is approximately $29,000 a year, a burden that must be born by the taxpayers.  The sooner Abdul Kareem gets out, the sooner taxpayers stop paying and the sooner he will begin to contribute to society rather than take from it.

Until approximately 1975, incarceration rates in the United States were relatively low and roughly matched those in Europe today.  We need to change our attitude from the "war on crime" the battle cry of Richard Nixon to a "smart on crime" approach that recognizes the waste of resources, both human and capital, that our current policy perpetuates.

**V.    CONCLUSION**

The event in Garland, Texas had the makings of a horrific event but for the quick and able response of a local police officer.  Recognizing that the Court cannot consider Abdul Kareem protestations of his innocence, it still should consider the facts presented at trial and the fact that he admitted his guilt when it came to being a felon in possession.  Also, the facts produced at trial support that at best he was a minimal participant.  He did not go to Garland, Texas.  He did not pled allegiance to ISIS as was done by Soofi and Simpson.  There was no evidence that he had any communications with ISIS after the event.

RESPECTFULLY SUBMITTED this 22nd day of September , 2016.

**MAYNARD CRONIN ERICKSON**
**CURRAN & REITER, P.L.C.**

By /s/Daniel D. Maynard
    Daniel D. Maynard
    3200 North Central Avenue, Suite 1800
    Phoenix, Arizona 85012
    Attorney for Defendant

**ORIGINAL** of the foregoing e-filed this 22nd day of September , 2016 via ECF with:

Clerk of the Court
United States District Court
401 W. Washington
Phoenix, AZ 85003

1    **COPY** of the foregoing e-delivered this 22nd day of September , 2016 via ECF to:

2    Kristen Brook
Joseph E. Koehler
3    US Attorneys Office
2 Renaissance Square
4    40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4408
5    Attorneys for Plaintiff

6      /s/Stacey Tanner

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26