Daniel D. Maynard, No. 009211
dmaynard@mmcec.com
**MAYNARD CRONIN ERICKSON
CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Abdul Malik Abdul Kareem,<br><br>　　　　　　　Defendant. | No. CR 15-00707-PHX-SRB<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR NEW TRIAL BASED ON PROSECUTORIAL MISCONDUCT** |

The Defendant, Abdul Malik Abdul Kareem ("Mr. Abdul Kareem"), by and through his undersigned counsel, files this supplemental brief in support of his Motion for New Trial. This motion is supported by the attached memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.　　FACTUAL BACKGROUND

On March 31, 2016, Mr. Abdul Kareem filed a Motion for New Trial Based on Prosecutorial Misconduct (the "Motion"). The Motion was fully briefed by May 24, 2016. Prior to oral argument on the motion, the Government sent Mr. Abdul Kareem's counsel a copy of an Affidavit in Support of an Application for a Criminal Complaint and Arrest Warrant ("the Affidavit")(Ex. 1) prepared by a Special Agent with the Federal Bureau of Investigation ("FBI") involving the arrest of Erick Jamal Hendricks ("Hendricks") who is alleged to have conspired to provide material support to a foreign terrorist organization, the Islamic State of

Iraq and the Levant ("ISIL").[1] The Affidavit outlined the FBI's investigation into Hendricks and brought to light that an undercover agent of the FBI ("Undercover Agent") had been in communications with Hendricks through social media, "Twitter," as had a paid confidential informant of the FBI and that the Undercover Agent had been put in contact with Elton Simpson ("Simpson") by Hendricks and there had been discussions about attacking the Draw Muhammad Contest to be held in May 2015 in at the Culwell Center in Garland, Texas ("the Draw Muhammad Contest"). The Affidavit outlined much of the communications between Hendricks and the Undercover Agent and the Undercover Agent and Simpson. It even disclosed that the Undercover Agent traveled to Garland, Texas and was at the Draw Muhammad Contest before and at the time of the attack and that the Undercover Agent was communicating with Hendricks about the security, the number of people, the building, the number of police media and snipers that could be seen at the Drawing contest. (Ex. 1, pp. 25-30)

On September 15, 2016, the Government provided Mr. Abdul Kareem's counsel with approximately 850 pages of additional documents compromised of screen shots of Twitter communications between the Undercover Agent and Hendricks and the Undercover Agent and Simpson (Ex. 2) only relevant portions of the Twitter communications are being provided and a declaration from the Undercover Agent (Ex. 3)("the Declaration"). In the Declaration, the Undercover Agent states that he traveled to Garland, Texas on May 3, 2015 and that his trip to the Draw Muhammad Contest was coordinated with law enforcement in Garland, Texas. (Ex. 2) He claims to have had no "specific knowledge" or expectation that Hendricks or Simpson planned to attack the contest but he does not mention what his general knowledge was. (Ex. 2)

---

[1] Undersigned counsel misspoke in open court on October 25, 2016 when he told the Court the Government had not provided the Affidavit.

These documents, this information and the identity of the Undercover Agent should have been provided to Mr. Abdul Kareem prior to his trial. The Affidavit clearly demonstrates that the FBI was aware that there was going to be an incident in Garland, Texas on May 3, 2015 and that one of its agents had been communicating with Simpson about the event and in fact had encouraged him to take action against those who were putting on the Draw Muhammad Contest. (Ex. 2, p. 28) The following is a recitation of what those new documents demonstrate.

The 35 page affidavit is in support of an application for a criminal complaint and arrest warrant that was filed in Cleveland, Ohio in August 2016. The FBI was conducting an investigation of Hendricks from March 1, 2015 through on or about May 31, 2015. (Ex. 1, p. 2) During the course of that investigation, the Government had the Undercover Agent communicating with Hendricks through various social media sites (primarily Twitter). On May 2, 2015, Hendricks met with a paid informant who worked for the FBI for four years. (Ex. 1, p. 22) During this in-person meeting, Hendricks mentioned that future targets would include military members whose information had been released by ISIL and the woman who organized the Draw Muhammad Contest. (Ex. 1, p. 22) Hendricks told the confidential informant that he was currently communicating with an Iman in Arizona who Hendricks wanted to bring into the group as their spiritual guide. Hendricks also claimed to know a member of ISIL overseas. (Ex. 1, p. 23)

On or about April 23, 2015, there was a link posted to the Draw Muhammad Contest in an account @tawaakul which was later identified by the FBI as Simpson. On this same date, Hendricks contacted Simpson via social media and requested Simpson's social media account. The FBI has confirmed that Simpson was in contact with Hendricks via social media prior to the events in Garland, Texas. (Ex. 1, p. 25)

On or about May 3, 2015, Simpson and Nadir Hamid Soofi ("Soofi") who were inspired by ISIL, arrived together at the Draw Muhammad Contest in Garland, Texas for the purpose of conducting a terrorist attack. The organizer of the Draw Muhammad Contest was scheduled

- 3 -

to deliver a speech to those in attendance. Simpson and Soofi drove their vehicle up the Center hosting the Draw Muhammad Context, exited and began shooting. A security guard, Bruce Joiner ("Mr. Joiner") suffered minor injuries and a Garland police officer returned fire and killed both Simpson and Soofi.

Mr. Joiner has now claimed that the FBI knew the attack was coming and that an undercover FBI agent was following Simpson and Soofi in another vehicle. (*See* Ex. 4) In the moment prior to the attack, Simpson posted on social media a message that read "#TexasAttack: 'May Ali accept us Mujahiden.'" In his message, Simpson also stated that he and Soofi had pledged their allegiance to Amirul Mumineen which is the alias for the ISIL leader Abu Bakr al-Baghdadi. In the days following the attack, members of ISIL claimed responsibility for the attempted attack.

On May 4, 2015, a federal search was executed at the Phoenix residence of Simpson and Soofi. During the search, a cell phone was collected and subsequently examined. A phone number for the phone was linked to Simpson. There were messages between Social Media Application #3 account Juba8021, attributed to Simpson, including Social Media Application #3 account Ummahone believed by the FBI to be used by Hendricks. (Ex. 1, p. 25).

On April 23, 2015, Hendricks using social media directed the Undercover Agent to contact "a good brother" because he wanted them to be introduced to each other. Hendricks added "I vouch for this brother, he is good and clean . . . just validate who I am and what we have been connecting brothers . . . ." Hendricks gave further instructions to the Undercover Agent "don't ask him about details though." Hendricks provided the Undercover Agent with social media application account Juba1911 for him to contact this "brother" [Simpson]. While still communicating with Hendricks on social media, the Undercover Agent sent an invite on social media to Juba1911. Hendricks told the Undercover Agent that Juba was simultaneously contacting him (Hendricks) to verify the Undercover Agent account. (Ex. 3, pp. 446-454)

1       Later in the day on April 23, 2015, the Undercover Agent contacted Juba1911 [which
2 was owned and operated by Simpson]. During the conversation, Simpson claimed to have
3 recently met Hendricks online, to have communicated with him a few times, and he disclosed
4 that he had been a Muslim for 11 years while the Undercover Agent responded that he had been
5 a Muslim for 2 years. (Ex. 1, pp. 26-27; Ex. 3, pp. 791-801) Simpson and the Undercover
6 Agent communicated for a brief period on April 23, 2015 and then the Undercover Agent told
7 him that he had to leave.

8       The next day, on or about April 24, 2015, the Undercover Agent contacted Simpson
9 again. Simpson made multiple references to the presence of spies on line and the need to be
10 careful with communicating with others. Simpson shared some limited details about his
11 criminal history, about having been arrested, and made references to the upcoming "drawing
12 contest in Garland, Texas" asking the Undercover Agent "did you see the link I posted? About
13 Texas? Prob not." (Ex. 1, p. 28; Ex. 3, pp. 836) In response, the Undercover Agent stated that
14 he did not have Juba1911's social media account number. Therefore, Simpson posted a link
15 to the Draw Prophet contest in Garland, Texas. In response to this, the Undercover Agent made
16 the statement "<u>Tear up Texas</u>." (Emphasis added)(Ex. 1, p. 28; Ex. 3, pp. 837-838) In
17 response, Simpson warned "Bro, you don't have to say that . . . you know what happened in
18 Paris," which probably referred to the Charlie Ebdo newspaper attack in Paris on or about
19 January 7 2015. The Undercover Agent replied "Right." After which Simpson stated "so that
20 goes without saying . . . no need to be direct." (Ex. 1, p. 28; Ex. 3, pp. 838-839)

21       On or about May 1, 2015, Hendricks, while using social media account communicated
22 with the Undercover Agent regarding the upcoming Draw Muhammad Contest in Garland,
23 Texas and the Undercover Agent reminded Hendricks that "Juba" (Simpson) had told the
24 Undercover Agent about it. (Ex. 1, p. 29; Ex. 3, pp. 638-643) After further discussion about
25 the event and "Juba" (Simpson), Hendricks referenced Simpson as "the AZ [Arizona] brother?"
26 (Ex. 1, p. 29; Ex. 3, pp. 638-643) Undercover Agent replied "he told me that he tweeted an

article about the drawing contest and then you hit him about it." Hendricks responded "the one who called me a spy?" At the time Simpson was residing in Arizona, Hendricks claimed to have just learned about the drawing contest that evening. After the Undercover Agent commented that he could have linked up with Juba, Hendricks replied "you can link with him brother, that's your call." (Ex. 1, p. 29; Ex. 3, pp. 638-644)

The next day, on or about May 2, 2015, Hendricks again communicated with the Undercover Agent about the contest in Garland, Texas writing "I wish someone would go to Texas and harass them during the night; a good solid protest; and unique one man protest." Hendricks told the Undercover Agent why he [Hendricks] could not go to Texas, "too much driving and I don't fly." (Ex. 1, p. 29; Ex. 3, pp. 659-668) At the time, Hendricks was in Baltimore and had just met with another agent of the FBI. (Ex. 1, p. 29) The Undercover Agent responded "Ok, just me or any other brothers?" Hendricks responded "see what you and Bro Juda [FBI believed he meant to write Juba, meaning Simpson] can do and at least be heard." (Ex. 1, p. 29) The Undercover Agent asked if Hendricks was still in contact with Juba [Simpson]. Hendricks told him he has another brother he knows and stated that he was not in contact with him; however, Hendricks then provided social media account "tawaakul" to the Undercover Agent to use to contact "Juba." [Simpson] Subsequent investigation determined that social media account "@atawaakul" and "@tawaakul" were used by Simpson and thus it would appear that Simpson and Hendricks were in communication. (Ex. 1, p. 30)

The Undercover Agent then traveled to Garland, Texas and was present on or about May 3, 2015 at the event which was coordinated with the law enforcement in Garland, Texas. (Ex. 2). The Undercover Agent notified Hendricks that he was in the vicinity of the "Draw Prophet Contest" event in Garland, Texas and Hendricks stated "if you see that pig [meaning the organizer of the event] make your "voice" heard against her. Hendricks asked the Undercover Agent a series of questions relating to the security posture to include "how is security; how big is gathering; how many police; how many police/agent; how big is building; is it wood; do you

see feds there; do you see snipers; and how many media." After the Undercover Agent provided Hendricks with a series of general observations, Hendricks asked "whatcha got with?" Agent responded "tools of the trade and not a small hand tool." Hendricks responded "LOL" and "the people doing the drawing and hosting and observing and the ones that are needed to protest against." (Ex. 1, pp. 30-31; Ex. 3, pp. 673-700) Just prior to the attack by Simpson, Hendricks stated to the agent "you may see her to get into her car to go to airport or catch a flight, etc." [referring to the organizer of the event.] Shortly thereafter, Simpson and Soofi committed the attack on the cartoon drawing contest.

On May 5, 2015, Hendricks communicated with the Undercover Agent using a code they had previously arranged. The Undercover Agent and Hendricks then discussed the Garland, Texas attack and the Undercover Agent claimed to have been the "eyes" of Hendricks, to have seen Simpson and Soofi be killed and stated that "cops almost shot me." (Ex. 1, p. 33)

On September 19, 2016, the Government provided documents bate stamped 851-863 that are primarily 302s by the Undercover Agent concerning his communications with Hendricks from March 24 - May 17, 2015. The Undercover Agent states that on May 3, 2015 he was in Garland, Texas in an undercover capacity and at approximately 6:50 p.m. central standard time as he

> approached the western edge of the parking lot for the Curtis Culwell Convention Center, [he] was driving behind a dark colored sedan. When that vehicle drove to the wester access point to the southern parking lot of the Convention Center [the Undercover Agent] observed this vehicle sop on Naaman Forest Boulevard and two occupants exited the vehicle. As [the Undercover Agent] was passing the stopped vehicle in the right lane, with the vehicle to the immediate right [the Undercover Agent] observed th driver holding an assault riffle and raising it up . . . . At this point, [the Undercover Agent] heard many shots fired. As [the Undercover Agent] drove forward . . . he looked over his right shoulder and observed a police officer shooting in the direction of the stopped vehicle. The [Undercover Agent] quickly drove away eastbound and continued to hear shots fired until he was stopped by police officers on Naaman Forest Boulevard. (*See* Ex. 5)

The Undercover Agent tells us nothing about how long he was in Garland, how he ended up right behind Simpson and Soofi's car, what happened to him after he was stopped, nothing about his communications with Hendricks on May 3, 2015. Certainly Mr. Abdul Kareem would have wanted to know the existence add the involvement of the Undercover Agent at the time of his trial so he could have been questioned.

Also, it has recently come to light that Mr. Joiner, a security guard that was wounded at the Culwell Center, believes that the FBI was involved or knew about the attack prior to its happening. Mr. Joiner has told the press in an on air interview that three Garland police officers told him that an undercover FBI agent was following the terrorists [Simpson and Soofi] in another vehicle. According to Mr. Joiner, "I know there was a third person. I know he had his life saved by claiming he was an FBI agent." Mr. Joiner said Garland officers had guns pointed at the man dressed in middle eastern attire and he was quickly taken away by federal agents, that the individual was detained in the back of a squad car, they put a bag over his head and took him away to another location. The FBI and the Garland police have refused to confirm or deny the account. (Ex. 4) Mr. Joiner's statements are consistent with the Undercover Agent's statements in his 302 that he was behind Simpson and Soofi's car.

The Undercover Agent communicated with Simpson and Hendricks via Twitter and coordinated his travel to Garland, Texas on May 3, 2015 with law enforcement in Garland, Texas. (Ex. 2) However, he communicates with Hendricks on May 5, 2015 but we have no 302 nor do we know what happened after he was stopped by police officers.

## II. FEDERAL RULE OF CRIMINAL PROCEDURE RULE 16

Rule 16 requires certain disclosures by the Government. The Defendant may inspect, copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places within the possession, custody or control of the Government if those items are: 1) material to the defendant's case; 2) intended for use by the Government in its case-in-chief; or 3) owned by or obtained from the defendant. In the *United States v. Armstrong*, the Supreme

Court indicated that the phrase "material to the preparation of the defendant's defense" may be limited to discovery of evidence to rebut the Government's case-in-chief rather than discovery of evidence to support any affirmative defense. 517 U.S. 456, 462 (1996). Here, the Undercover Agent was communicating with Simpson about the Drawing Muhammad Contest before it occurred. He encouraged Simpson to "tear up Texas" and he was following Simpson and Soofi when the attack occurred. An eye-witness to a terrorist attack and in direct communication with the attacker, however, neither he nor his communications were ever disclosed.

The Government has a continuing duty to disclose any newly discovered information that satisfies the Rule 16 request. *See* Federal Rule of Criminal Procedure 16(c).

The Government had communications between Simpson and an Undercover Agent that it never disclosed prior to trial although it is clear it was aware that these communications were material to the defense of Mr. Abdul Kareem. Even now there have been no disclosures of any 302s concerning the Undercover Agent's travel to Garland, what he saw, who he coordinated with or if he was taken away by law enforcement except for Exhibit 5 to this Supplement. Mr. Joiner, now contends that three (3) Garland law enforcement officials are aware that an FBI agent was in a car following Simpson and Soofi. (Ex. 2) We know from FBI director Comey's statement that the FBI in Garland was alerted at least three (3) hours before the attack that Simpson was heading to Garland, Texas. The Government has produced statements taken from over one hundred (100) people at the attack but there are no statements concerning an individual being placed into federal custody and being escorted away from the scene by any individual or law enforcement officials. All of this was material, especially since the Undercover Agent encouraged Simpson to attack the contest when he tweeted to Simpson "tear up Texas." This information could have been used to help prepare an entrapment defense. All of this information was material, known to the Government before Mr. Abdul Kareem's trial and not produced until six months after this trial.

## III. GOVERNMENT'S CONSTITUTIONAL DISCLOSURE DUTIES

The Fifth and Fourteenth Amendments require the Government to disclose specific types of evidence to the defendants. In *Brady v. Maryland*, the Supreme Court held that due process requires that the prosecution to disclose upon request evidence favorable to an accused person when such evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A *Brady* violation occurs when: 1) evidence is favorable to the accused because it is exculpatory or impeaching; 2) evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Favorable evidence is "material" if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding. *United States v. Bagley*, 473 U.S. at 682; *id*. at 685. In *Bagley*, the Government did not disclose that it had promised payment to its two principal witnesses in return for testimony against the defendant. The Court held that the prosecution's disclosure of both exculpatory and impeachment evidence is subject to *Brady's* materiality requirement. *Id*. at 676-77. *See also Smith v. Cain*, 132 S.Ct 627, 630 (2012)(evidence impeaching witnesses material when other evidence is not strong enough to support verdict.); *see also U.S. v. Mahaffy*, 393 F.3d 113, 131-32 (2nd Cir. 2012)(transcripts of testimony before SEC material though inadmissable because contradicted Government's case and might lead to admissible evidence.

## IV. CONCLUSION

This case was close. The jury was out over three days. The defense was that Mr. Abdul Kareem was not aware of the Draw Muhammad Contest, had no idea Simpson and Soofi were going to Garland, Texas and did not participate in the attack since he knew nothing about it. All communications by Simpson about the attack were relevant and material. The Government contended at trial that Mr. Abdul Kareem was the mastermind of this attack yet this late disclosed evidence confirms that Simpson was the one who masterminded the attack and was in contact with others about it. There was no mention of Mr. Abdul Kareem in any of the

newly produced evidence that the Government failed to timely disclose.

RESPECTFULLY SUBMITTED this 9th day of November, 2016.

**MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.**

By /s/Daniel D. Maynard
Daniel D. Maynard
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
Attorney for Defendant

**ORIGINAL** of the foregoing e-filed this 9th day of November, 2016 via ECF with:

Clerk of the Court
United States District Court
401 W. Washington
Phoenix, AZ 85003

**COPY** of the foregoing mailed this 9th day of November, 2016 to:

Kristen Brook
Joseph E. Koehler
US Attorneys Office
2 Renaissance Square
40 N. Central Ave., Ste. 1200
Phoenix, AZ 85004-4408
Attorneys for Plaintiff

By /s/Stacey Tanner