IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Abdul Malik Abdul Kareem,<br><br>Defendant. | No. CR-15-00707-001-PHX-SRB<br><br>**AMENDED ORDER** |

At issue are Defendant's Motion for Judgment of Acquittal Pursuant to Rule 29 ("MJA") (Doc. 302) and Defendant's Motion for New Trial Based on Prosecutorial Misconduct ("MNT") (Doc. 303). The Court heard oral argument on the Motions on July 22, 2016. (Doc. 378, Minute Entry.) The Court took the Motions under advisement pending Defendant's supplemental briefing. (*Id.*; *see* Docs. 384, 410, 423.) The supplemental briefing was completed on December 16, 2016. (*See* Doc. 432, Suppl. Br. in Supp. of MNT ("Supp. MNT"); Doc. 441, Resp. to Supp. MNT; Doc. 452, Reply Supp. MNT.)

**I.    BACKGROUND**

Plaintiff was indicted on five counts: knowingly and intentionally conspiring to transport firearms and ammunition in interstate commerce with the intent to commit crimes punishable by imprisonment exceeding one year in violation of 18 U.S.C. § 924(b) with overt acts in furtherance thereof, in violation of 18 U.S.C. § 371 (Count 1); knowingly and intentionally transporting firearms and ammunition in interstate

commerce with the intent to commit crimes punishable by imprisonment exceeding one year, in violation of 18 U.S.C. § 924(b) (Count 2); knowingly and willfully making false, fraudulent, and fictitious material statements and representations to the Federal Bureau of Investigation ("FBI"), in violation of 18 U.S.C. § 1001(a)(2) (Count 3); having been convicted of a crime punishable by imprisonment for a term exceeding a year, knowingly possessing, in and affecting interstate commerce, firearms, in violation of 18 U.S.C. § 922(g)(1) (Count 4); and knowingly and intentionally conspiring to provide "material support or resources" to a foreign terrorist organization (Count 5). (Doc. 158, Second Superseding Indictment.) Defendant's charges arose from his alleged aid of Elton Simpson and Nadir Soofi in their planning and preparation for the Garland, Texas attack.[1] A jury trial began on February 16, 2016 and concluded on March 17, 2016. (Docs. 209 & 276, Minute Entries.) The jury returned verdicts of guilty on all five counts. (Doc. 285, Jury Verdict.) On March 31, 2016, Defendant moved for acquittal and a new trial based on prosecutorial misconduct. (*See generally* MNT and MJA.) On July 22, 2016, the Court heard oral argument on the Motions and took the matters under advisement because Defendant argued that he would need to supplement his briefs pending additional disclosures by the Government. (Doc. 378, Minute Entry; Doc. 383, Mot. to Delay Ruling on MNT and on Sentencing.) The Court now considers the Defendant's Motions.

## II. LEGAL STANDARD AND ANALYSIS

Pursuant to the Supreme Court's holding in *Brady v. Maryland,* 373 U.S. 83, 87, (1963), prosecutors are constitutionally obligated to disclose evidence favorable to an accused that is material either to guilt or to punishment. *Kyles v. Whitley,* 514 U.S. 419, 432 (1995); *Jones v. Ryan,* 733 F.3d 825, 837 (9th Cir.2013).

> To establish a *Brady* violation, a defendant must show that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the government, regardless of whether the suppression was willful or

---

[1] The Garland Texas attack ("Garland attack") was an attempted attack on a Prophet Muhammad drawing contest held in Garland, Texas on May 3, 2015, wherein Simpson and Soofi were shot and killed before entering the center where the contest was being held.

inadvertent; and (3) the evidence is material to the guilt or innocence of the defendant.

*United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013). Evidence is "favorable to the accused" for *Brady* purposes if it is either exculpatory or impeaching. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "If information would be 'advantageous' to the defendant or 'would tend to call the government's case into doubt,' it is favorable." *Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004) and *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013)) (internal citations omitted). The suppression of favorable evidence is prejudicial if that evidence was "material" for *Brady* purposes. *Strickler*, 527 U.S. at 282. Evidence is "material" if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 290 (citing *Kyles*, 514 U.S. at 435). To establish materiality, a defendant need not demonstrate "that disclosure of the suppressed evidence would have resulted ultimately in [his] acquittal." *Kyles*, 514 U.S. at 434. Rather, the defendant need only establish "a 'reasonable probability' of a different result." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). A "reasonable probability" exists if "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678); *see also United States v. Sedaghaty,* 728 F.3d 885, 900 (9th Cir. 2013) ("In evaluating materiality, we focus on whether the withholding of the evidence undermines our trust in the fairness of the trial and the resulting verdict.").

Defendant argues that the Government violated *Brady* by failing to provide timely discovery necessary for his defense. (MNT at 1.)[2] Defendant alleges that the Government's disclosure of numerous exhibits during trial and post-trial disclosure about an undercover agent who had been in contact with Mr. Simpson, one of the participants

---

[2] Defendant's Motion for Judgment of Acquittal is premised on insufficiency of the evidence and the Government's alleged misconduct. (MJA at 1.) For purposes of the Motion, Defendant incorporates the factual allegations and legal arguments of the Motion for New Trial. (*Id*.) The Court denies Defendant's Motion for Judgment of Acquittal for the same reasons it denies Defendant's Motion for New Trial.

- 3 -

in the Garland attack, violated Defendant's due process and Sixth Amendment Rights. (*Id.* at 1-2; Supp. MNT at 1.) The Government argues that Defendant is not entitled to a new trial because its disclosures after October 12, 2015 did not violate *Brady*. (Doc. 324, Gov't's Consol. Resp. Def.'s MNT and MJA ("Resp.") at 4.) The Government further argues that even if Defendant was prejudiced by the late disclosure, the appropriate remedy was seeking a continuance. (Resp. at 5-6.)

### A. Discovery Abuses

Defendant argues that the Government deprived him of due process and a fair trial by making disclosures between November 2015 and February 15, 2015 and during trial. (MNT at 2-6.) The Government argues that the pre-trial disclosures in November 2015 and after were not material and were provided in enough time for Defendant to use them at trial. (Resp. at 7.) The Government also argues that the disclosures during trial were largely about witnesses Defendants already had knowledge of and documents which it already disclosed but provided in a different format during trial. (Resp. at 7-8.) A defendant alleging a Brady violation based on the late disclosure of evidence also must show he was prejudiced by the delay. *Humphries*, 786 F.3d at 708. Thus, if a defendant is able to make effective use of exculpatory or impeachment information that is disclosed mid-trial, no Brady claim will lie. *United States v. Browne*, 829 F.2d 760, 765-66 (9th Cir. 1987).

#### 1. Pre-trial Disclosures

While Defendant complains about a number of exhibits disclosed after the October 12, 2015 deadline but before trial, Defendant has failed to allege how he was prejudiced by the disclosures. The disclosures were made before trial and defense counsel used some of the disclosed exhibits during cross-examination. *See Browne*, 839 F.2d at 765-66. Therefore, the Court does not grant a new trial on this ground.

#### 2. Trial Disclosures

Defendant contests a number of trial disclosures. The Court considers them in turn.

### a. February 18, 2016

On February 18, 2016, the Government disclosed a number of exhibits and Form 302 reports[3] for James Bell, Abdullah Mubarak and Amy Vaughn, who were called as witnesses the next day. (MNT at 3.) On February 19, 2016, the Court ordered the Government to disclose their witnesses 24 hours in advance. Mr. Bell was not on the Government's final witness list and did not testify at trial. Mr. Mubarak's interview was not conducted until February 3, 2016 and Defendant received a hard copy of the Form 302 on February 15, 2016 and an emailed copy on February 18, 2016. Amy Vaughn was not disclosed until the night prior to her first day of testimony, but Defendant conducted an extensive cross-examination on her second day of testimony, February 23, 2016. While Defendant complains about the magnitude of the disclosures, he does not allege, with any specificity, how he was prejudiced by the late disclosures. Defendant used the exhibits during his cross-examination of Ms. Vaughn. *See Browne*, 839 F.2d at 765-66. The Court does not grant a new trial on this ground.

### b. February 23, 2016

On February 23, 2016, the Government made a disclosure of 23 CDs and 22 new exhibits, some of which were used that day with Ms. Vaughn. (MNT at 3-4.) Defendant argues that he was prejudiced because he was not able to consult his own computer forensic expert prior to cross-examination. (MNT at 4.)[4] The Government argues that its February 23, 2013 disclosures were repeat disclosures and/or the person disclosed was

---

[3] FBI Form 302 is a form used by agents to provide summaries of witness interviews and other investigation actions, for example, execution of a search warrant.

[4] Defendant also argues that the Government inappropriately used excerpts of Defendant's post arrest interview because the specific excerpts had not been disclosed. (MNT at 5.) Defendant, however, had a copy of the entire interview and the Government apparently provided Defendant with a list of start and stop times from the interview excerpts. (*See* Resp. at 11; Doc. 324-1, Discovery Matrix at 18.) Therefore, this is not a valid basis for a new trial. Defendant further argues that the Government's disclosure of "Carlos and Juan's" redacted 302 was in error, but provides no other information regarding why this was material or prejudicial. Defendant apparently received unedited copies of the video recording of Juan and Carlos's interviews which included their telephone numbers. (Discovery Matrix at 18-19); *United States v. Agurs*, 427 U.S. 97, 103 (1976) (noting that *Brady* applies only to information "unknown to the defense."). Therefore, the Court does not grant a new trial on this ground.

1  not called as a witness. (Resp. at 9-11.) The evidence shows that the disclosed exhibits
2  had been previously disclosed on February 17, 2016 or September 2, 2015. (*See* Doc.
3  324-1, Discovery Matrix at 9, 13.) Because Defendant had access to the exhibits prior to
4  the date Defendant alleges, the Court does not grant a new trial on this ground. *United*
5  *States v. Agurs*, 427 U.S. 97, 103 (1976) (noting that *Brady* applies only to information
6  "unknown to the defense.").

### c.   February 24, 2016

On February 24, 2016, the Government disclosed three documents prepared by Jeffrey Evans, who testified the next day; an exhibit for a finger print expert; and six other exhibits that were admitted the next day. (MNT at 5.) The Government points out that Mr. Evans' report was drafted on February 24, 2016 and disclosed the same day. (Resp. at 12.) The Court also granted Defendant an extension until February 26, 2016 to cross-examine Mr. Evans because of the timing of the disclosure. (Resp. at 13.) The exhibit for the finger print expert was demonstrative and the underlying reports had been disclosed in hard copy on February 18, 2016 and February 23, 2016. (*Id.*) Defendant has not demonstrated that he was prejudiced by these disclosures, therefore the Court does not grant a new trial on this ground.

### d.   February 25, 2016

On February 25, 2016, the Government disclosed two reports relating to Defendant's laptop. (MNT at 5.) The Government notes that the browsing history data had been previously disclosed in conjunction with an image of the entire laptop but were supplied separately from the laptop image as a courtesy to Defendant. (Resp. at 14.) The Court does not grant a new trial on this ground as the image was previously disclosed.

### e.   February 29, 2016

On February 29, 2016, the Government disclosed nine new exhibits related to Defendant's computer, Simpson's cell phone, and pictures in Simpson's apartment. (MNT at 6.) The Government argues that the information was not disclosed until February 29, 2016 because it did not become relevant until it became aware that the

1  Defendant's trial strategy was to disavow himself of communication with Simpson and
2  knowledge of the Garland attack. (Resp. at 15-16.) Additionally, various exhibits from
3  Defendant's laptop, Simpson's cell phone, and pictures in Simpson's apartment had been
4  disclosed throughout discovery and trial prior to their disclosure on February 29, 2016.
5  (*Id.* at 16-17.) The Court does not grant a new trial on this ground.

### B.   *Brady* Violations

7  Defendant argues that the Government failed to provide material exculpatory
8  evidence including texts from Ali Baiz and Christian Leon; statements from Saabir
9  Nurse, James Bradley Bell, and John Sabari; and an investigation by a FBI undercover
10 agent. (MNT at 7-12; Supp. MNT at 1-8.) Evidence is material if there is a reasonable
11 probability that, had the evidence been disclosed to the defense, the result of the
12 proceeding would have been different. *United States v. Kohring*, 637 F.3d 895, 903 (9th
13 Cir. 2011). "There is a 'reasonable probability' of prejudice when suppression of the
14 evidence 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Kyles*, 514
15 U.S. at 434). The mere possibility that an item of undisclosed information might have
16 helped the defense or might have affected the outcome of the trial does not establish
17 "materiality" in the constitutional sense. *Agurs*, 427 U.S. at 109-110. Further, the rule of
18 *Brady* applies only to information "unknown to the defense." *Id.* at 103.

### 1.   Ali Baiz and Christian Leon

20 Defendant objects to the disclosure of Baiz and Leon's[5] interviews the week
21 before trial when they were interviewed in May 2015. (MNT at 7-8.) Defendant argues
22 that he was unable to contact them and "believe[s] the Government ha[s] additional
23 information it failed to disclose." (MNT at 8.) The Government argues that Baiz and
24 Leon's reports do not contain exculpatory evidence, specifically arguing that the firearms
25 Baiz and Leon sold Soofi were not used in the Garland attack. (Resp. at 18.) The
26 Government additionally argues that Defendant had Baiz and Leon's phone numbers as
27 disclosed in September 2015 and used some of the text messages regarding their sale of

---

[5] Baiz and Leon communicated with Nadir Soofi regarding the sale of firearms.

- 7 -

firearms in his cross-examination. (Resp. at 18.) The Court concludes that there was no *Brady* violation because Defendant had access to Baiz and Leon's reports and phone numbers before trial and used the information therein during trial. *Browne*, 839 F.2d at 765-66. Furthermore, the evidence is not exculpatory as the firearms they sold were not present at the scene of the Garland attack. Therefore, the Court does not grant a new trial on this ground.

### 2. Saabir Nurse, James Bradley Bell and John Sabari

Defendant argues that the Government has information obtained from Mr. Nurse's text messages that were never disclosed and that Form 302's related thereto were disclosed late. (MNT at 8-10.) The Government argues that while Mr. Nurse was listed on Defendant's witness list, he was not called at trial and that Mr. Nurse's phone was never subject to a search warrant, so there is no additional information to disclose. (Resp. at 19.) Defendant has not met his burden of showing that the late disclosure of the documents was material to his defense.

Defendant argues that any information the FBI has regarding an investigation of Mr. Sabari should have been disclosed because he believes Mr. Sabari had communication with a Jamaican Cleric with whom Simpson also spoke. (MNT at 10.) The Government argues that Defendant never requested information on Mr. Sabari and that the three reports it has since disclosed do not contained exculpatory material. (Resp. at 21.) The Government also argues that Defendant knew of Mr. Sabari and chose not to mention his involvement with Simpson during trial. (Resp. at 21); *United States v. Shelton*, 588 F.2d 1242, 1249 (9th Cir. 1978) (denying motion for new trial when witness was not "unknown" to Defendant). Because there can only be a *Brady* violation for information that was unknown to Defendant before trial, the Court denies a new trial on this ground.

Defendant argues that the disclosures regarding Mr. Bell were late and showed that Agent Whitson lied about who knew about the Muhammad drawing contest before the Garland attack. (MNT at 10-11.) The Government argues that Defendant had time to

- 8 -

subpoena Mr. Bell and use the reports at trial, and that there is no evidence that the disclosure contains exculpatory material. (Resp. at 20-21.) While it appears that Mr. Bell had knowledge of the Muhammad drawing contest, Defendant has not linked that knowledge to evidence that would exculpate Defendant of his involvement. Defendant's theory that the evidence could have been used for impeachment will be discussed below. Because the evidence of Mr. Bell's prior knowledge is not exculpatory, the Court does not grant new trial on this ground.

### 3. Undercover Agent Investigation

Defendant argues that the Government had a duty to disclose an undercover agent's investigation of an unrelated terrorism suspect and corresponding 302s because he could have raised an entrapment defense that was favorable to his case. (Supp. MNT at 8-10.) The Government argues that the newly-disclosed materials are not exculpatory and do not detract from Defendant's participation in the charged conspiracies. (Resp. to Supp. MNT at 1.) The undercover agent conducted an investigation of another man, Hendricks, who had had communications with Simpson. The Government's disclosure revealed that the undercover agent and Simpson communicated through social media only on April 23 and 24, 2015. While they spoke about the Muhammad drawing contest in Garland, Texas, Simpson did not disclose his intent to go to Garland, Texas to attack the contest. Rather than showing any conspiracy between Hendricks and Simpson, Simpson expressed suspicion of Hendricks. The Government's disclosure that the undercover agent was in fact on the scene at the time the attack occurred may be new and surprising but it does not support anything other than the undercover agent's expressed intention to bolster his credibility with Hendricks. It had nothing to do with Simpson. The Government's disclosure does not create any nexus between the undercover agent's investigation and Defendant. The disclosure does not call into question Defendant's involvement: watching videos with Soofi and Simpson, taking Simpson and Soofi shooting, or supplying Simpson and Soofi with firearms. Therefore, the disclosure is not exculpatory or material to his defense.

1
### C. Agent Whitson's Testimony

Defendant argues that FBI Agent Stewart Whitson provided false evidence by stating that only Carlos, Juan, and Mr. Verdugo knew about the Muhammad drawing contest before the Garland attack when he had interviewed Nathaniel Soofi and Bell who also knew about the contest. (MNT at 14.) The Government argues that Agent Whitson did not knowingly present false testimony. (Resp. at 21-22.) The Government specifically argues that Agent Whitson stated that he "did not recall" if anyone else had told him about the contest, Agent Whitson had not conducted Mr. Bell's interview, and the statement was immaterial to the outcome because Defendant impeached Agent Whitson about Nathaniel Soofi. (Resp. at 23-25); *see Browne*, 839 F.2d at 765-66. The Court agrees. Agent Whitson did not know about Mr. Bell's knowledge because he did not conduct Mr. Bell's interview and Defendant had the opportunity and did impeach Agent Whitson regarding Nathaniel Soofi's knowledge. Therefore, the Court does not grant a new trial on this ground.

## III. CONCLUSION

As defense counsel admitted at oral argument, Defendant had a trial strategy of pushing the case to trial in the shortest time period permitted. It is evident to the Court that the speediness of this trial led to the late disclosure of much more information than is generally acceptable. This, however, does not rise to the level of *Brady* or other constitutional violations warranting a new trial. The Court therefore denies Defendant's Motion for a New Trial and Motion for Judgment of Acquittal.

**IT IS ORDERED** denying Defendant's Motion for Judgment of Acquittal Pursuant to Rule 29 (Doc. 302).

///
///
///
///
///

**IT IS FURTHER ORDERED** denying Defendant's Motion for New Trial Based on Prosecutorial Misconduct (Doc. 303).

Dated this 23rd day of January, 2017.

*Susan R. Bolton*
Susan R. Bolton
United States District Judge