DANIEL R DRAKE
DRAKE LAW, PLC
4340 East Indian School Road
Suite 21-113
Phoenix, Arizona 85018
drakelawplc@gmail.com
Arizona State Bar No. 003781
Telephone (602) 881-5341
Attorney for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | 2:15-cr-00707-SRB |
|---|---|
| Plaintiff, | |
| v. | **Motion to Compel Disclosure** |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

Defendant Abdul Malik Abdul Kareem moves the Court to compel production by the government of items requested by the defense by letter of September 6, 2018, as that information is relevant and material to the defense and its Supplemental Motion for New Trial, Doc. 505.

The motion is supported and explained by the attached memorandum.

Excludable delay under 18 U.S.C. § 3161(h) will not occur as a result of this notice or an order based thereon.

Respectfully Submitted this 24th day of January 2019.

                                                DRAKE LAW, PLC

                                                *s/Daniel R. Drake*
                                                DANIEL R. DRAKE

1

MEMORANDUM

The government has not responded to the defense September 6, 2018 request for supplemental disclosures, although it indicated its desire to do so on September 10, 2018. As a result of unsuccessful efforts to resolve this issue the defense seeks intervention by the Court to address the issue and compel production.

A Brief but Instructive History

A brief recounting of the history of this case is in order. The offense was complete on May 3, 2015, when Elton Simpson and Nadir Soofi were killed during an attack on a Draw the Prophet Mohammad Contest in Garland, Texas (the "Garland attack"). The FBI investigated the offense and, on June 10, 2015, obtained an indictment against Mr. Abdul Kareem. Doc. 1. After some litigation, a superseding indictment was returned on September 1, 2015 (Doc. 57), and a second superseding indictment on December 22, 2015. Doc. 158. These superseding indictments added an additional charge related to providing material support to a foreign terrorist organization, a violation of 18 U.S.C. § 2339B(a)(1).

On February 8, 2016, the government gave notice that it had filed *ex parte* a sealed document under 18 U.S.C. App. 3. Doc. 193.

Trial began eight days later on February 16, 2015, and concluded after 19 days with guilty verdicts on March 17, 2016. Doc. 285.

Prior to trial the government filed an exhibit list identifying 350 exhibits. Doc. 197. During trial it marked an additional 164 exhibits (351-499, 600-616). Doc. 292.

On March 31, 2016, the defense filed a motion for new trial based on failure to timely provide discovery. Doc. 303. The government responded May 15, 2016 arguing, in part, as it had done at trial, that the "indictment alleged, and the prosecution argued at trial, that the conspiracy was not limited to Simpson, Soofi, and Kareem—the conspiracy involved others." Doc. 324, p. 2. The fact others were involved, it argued,

did nothing to dispel claims that Mr. Abdul Kareem was not involved. *Id*.

After the new trial motion was fully briefed and prior to oral argument on the motion, the government gave defense counsel an affidavit prepared by the FBI regarding events leading up to the arrest of Erick Jamal Hendricks ("Hendricks") in August 2016. Doc. 432, p.1, Exhibit 1 (filed under seal). This disclosed for the first time that the FBI had been in contact with Elton Simpson prior to the Garland attack, and that an undercover agent was in a car immediately behind Simpson and Soofi when they got out and started shooting. Doc. 432 p. 2. The affidavit had been prepared and filed August 3, 2016, in case 1:16-cr-00265-JRA, a proceeding in the Northern District of Ohio.

Oral argument on the motion for new trial was continued and, on September 15, 2016, the government provided defense counsel approximately 850 pages of additional documents showing communications between the FBI undercover agent and Hendricks and Simpson in the run-up to the Garland attack. Doc. 432, p.2.

Everything disclosed by the government in September 2016 had been in the "Government's" possession since May 3, 2015.

The Hendricks Trial Disclosures

In March 2018 Hendricks was tried in the Northern District of Ohio. The Department of Justice prosecutor told the jury in opening statements that Hendricks was "unequivocally tied to this attack," referring to the Garland attack. See Supplemental Motion for New Trial, Doc. 505, p.3. The prosecutor continued that Hendricks "took credit for the attack in Garland . . .[and] threatened future attacks in the United States." *Id*., p. 4.

Amanda Amaro testified that, following the attack, Hendricks asked her to post a flyer – a flyer believed to claim the attack was committed by ISIS – and to send it to those believed to be involved with ISIS. Exhibit 4, Hendricks Trial Transcript, 3/13/18

3

RT 1378-88.  The document, a trial exhibit in the Hendricks case, has not been shared with the defense in this case.  It may be the very document the government relied upon, in part, at Mr. Abdul Kareem's trial to claim the attack was "material support" for ISIS.

Based on statements of government counsel and the testimony of the witnesses at Hendricks trial, the defense filed on June 11, 2018 a supplemental motion for new trial.  Doc. 505.  It argued the information made public in Hendricks' trial would have been material to the defense in this case and would have supported defense arguments.

Then, on July 26, 2018, the government released still more documents, approximately 30 pages of additional information which had been created prior to May 3, 2015, save for an FBI internal review of the May 3, 2015, Garland attack.  It indicated that information had been Jencks Act disclosures in the Hendricks trial.

2018 Request for Supplemental Disclosures

On September 6, 2018, the defense sent the government a six-page letter requesting additional disclosures.  Exhibit 1.  The letter identified 15 different points on which disclosure was sought and explained how the requested information would be helpful to the defense.

On September 10, 2018, the government responded via email.  Exhibit 2.  AUSA Kristen Brook said the government intended to respond and "provide additional information . . . where appropriate."  She anticipated a "substantive and complete" response, which might take "a few weeks to complete…."

Since the motion for new trial filed June 11, 2018, government counsel repeatedly indicated they are working to respond to the motion for new trial.  See Doc 507, 509, 514.  Following the September 6, 2018 request for additional disclosures, the government advised it was working with the FBI to address and resolve disclosure issues.  See Doc. 517, p2-3; Doc. 520, p. 3.

Finally, on January 3, 2018, nearly 120 days after its September 6, 2018 request,

4

1 the defense asked the government to provide a written response to the disclosure
2 requests. Exhibit 3. The government offered a voice mail and email update, indicating
3 it was still working on the issue.
4     Defense counsel brings this motion now because the current stay of briefing will
5 expire February 25, 2019, and the defense wants adequate time to incorporate any
6 disclosures into its motion for a new trial or to seek further disclosures if warranted.
7
8 <u>The Nature of the Request and the Pattern of Government Conduct Warrants
9 Compelling the Requested Disclosures</u>
10     When this history of belated disclosures is coupled with the trial experience of
11 late disclosures, a troubling pattern emerges that warrants court intervention to compel
12 the requested disclosures. The Court will recall the government's frequent new
13 disclosures and the addition of 164 new exhibits during trial. No prosecutor wants to
14 start a trial where their case in chief changes so dramatically during trial. That suggests
15 the government attorneys were not the ones selecting trial exhibits, rather they were
16 responding to suggestions from the investigating agents. Add to that the facts now
17 known regarding the Hendricks investigation and trial. Even though that information
18 might have been helpful, or at least avoided a *Brady* claim in this case, the attorneys
19 here could not disclose information until it was declassified there. In other words, the
20 investigative agency in both cases controlled disclosure of evidence, not the
21 prosecutors.
22     As much as this seemed to keep the Arizona prosecutors at a disadvantage,
23 consider the plight of Arizona defense counsel. No defense attorney wants to prepare a
24 defense for a planned trial, only to find once the trial begins that he is wrapped up in a
25 trial with different evidence, evidence he had no reason to suspect the government
26 would use when the trial started because the evidence was not listed as an exhibit, nor
27 have to deal with 164 new exhibits disclosed during trial.
28

The trial experience here was disruptive and troublesome, leading the Court to rule that the government could not use an exhibit until the day after it had been disclosed.  The Court frequently deferred cross-examination of a witness to the following day in order to give defense counsel time to deal with the new disclosures, although the time was brief and inadequate.  Imagine an attorney's reaction after learning about information that he could have used before trial to prepare a defense or discard a defense previously chosen.

Legal Analysis

The requested information is material to the preparation of the defense and was so prior to the February 2016 trial.  It should have been produced then and should be produced now.

Cases make clear that documents or other objects within the possession of the government are discoverable prior to trial under Fed. R. Crim. P. 16(a)(1)(E).[1] *See United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir. 1977) (finding prosecutor's duty to disclose under Rule 16 extends to material within custody or possession of "investigative agency" when government has ready access to materials requested); *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (finding United States Attorney's Office had knowledge of, and access to, inmate files held by the Bureau of Prisons); *United States v. Wood*, 57 F.3d 733, 735 (9th Cir. 1995) (finding a *Brady* violation when the prosecution failed to turn over certain reports of the FDA bearing on the safety of the drugs the defendant unlawfully dispensed because, "for *Brady*

---

[1] Fed. R. Crim. P. (a)(1)(E) *Documents and Objects*. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
    (i) the item is material to preparing the defense;
    (ii) the government intends to use the item in its case-in-chief at trial; or
    (iii) the item was obtained from or belongs to the defendant.

purposes, the FDA and the prosecutor were one"); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) (holding Rule 16 includes out-of-district documents in the possession, custody, or control of any federal agency participating in the investigation of the defendant which prosecutor had knowledge of and to which prosecutor had access). In *United States v. Clegg*, 846 F.2d 1221, 1224 (9th Cir. 1988), the court allowed discovery of classified documents because they were relevant to a mistake of law defense.

While a specific or detailed request is helpful, a defendant cannot make such a request where he has little or no information regarding the precise nature or existence of documents or tangible objects. *See* Fed. R. Crim. P. 16 advisory committee's note (1974 amendments) ("It may be difficult for a defendant to make this showing [of materiality] if he does not know what the evidence is.")

When there is room for doubt regarding whether evidence in the government's possession is exculpatory, the defendant may argue that it is improper for the prosecutor to decide what constitutes exculpatory evidence. *See*, e.g., *Dennis v. United States*, 384 U.S. 855, 875 (1966) (holding determination of what may be useful to the defense can properly and effectively be made only by an advocate).

There is a separate and independent basis for disclosure. Disclosure of information is also required under the Fifth Amendment. *Brady v.Maryland*, 373 U.S. 83, 87 (1963). The prosecutor in a criminal case must disclose to the defendant all exculpatory material, that is, all evidence that is favorable to the accused. *Id*. The evidence must be "material" for *Brady* purposes. In *United States v. Bagley*, 473 U.S.667 (1985) the Supreme Court explained that evidence is material

> "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*Bagley*, 473 U.S. at 682.

In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court clarified that:

> "*Bagley's* touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the [suppressed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Kyles*, 514 U.S. at 434.

A review of the items requested in Exhibit 1 demonstrates they are specific and seek disclosure of information that would have been useful in preparing a defense or could have led to disclosure of such information.

Conclusion

The information requested is material to the defense and was so prior to trial. It should have been disclosed then, just as the government should have disclosed prior to trial the roughly 900 pages of information it has disclosed since the jury returned guilty verdicts.

|  |  |
|---|---|
| | Respectfully Submitted, |
| MAYNARD CRONIN ERICKSON CURAN & REITER, P.L.C. | DRAKE LAW, PLC |
| s/Daniel D. Maynard | s/Daniel R. Drake |
| DANIEL D. MAYNARD | DANIEL R. DRAKE |

Certificate of Service

    I hereby certify that on January 24th, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrants:

    AUSA Joseph E. Koehler
    AUSA Kristen Brook

s/Daniel R. Drake