United States v. Abdul Malik Abdul Kareem

2:15-cr-00707-SRB

# EXHIBIT 1

# Drake Law, PLC

4340 E. Indian School Rd., Ste. 21-113
Phoenix, AZ  85018
drakelawplc@gmail.com

September 6, 2018

Joseph E. Koehler, AUSA

    RE:    USA v. Abdul Malik Abdul Kareem
             2:15-cr-00707-SRB

    This is a follow-up to our conversations about requests for additional governmental disclosure based upon revelations from the trial of Erick Jamal Hendricks. It has taken Dan and me a bit to put this request together, but we wanted to make the request in a fashion that makes it easier to understand what we want and why we think it should be produced.

    The evidence and government assertions at the Hendricks trial, as well as the government's July 26, 2018, supplemental disclosures (## 867-898), which I understand to be Jenckes Act disclosures related to undercover FBI agent "Stephen Jane," reveal facts that would put the defense and the entire case in a new light.  We believe this evidence should have been produced prior to trial as it was "with the government's possession, custody or control" and is "material to preparing the defense" under Rule 16(a)(1)(E). *See United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013).  As the court explained there, evidence is material if it supports a defense or encourages the defense to abandon a particular strategy.

    At the latest this information should have been produced during trial as exculpatory or impeaching information to comport with the government's obligation under Brady v. Maryland, 373 US. 83, 87 (1963) and its progeny, including Kyles v. Whitley, 514 U.S. 419, 433 (1995).

    The documents produced on July 26, 2018, are heavily redacted.  As I understand from our conversations, those redactions were done in connection with the Hendricks trial.  And, from what I understand, you have not seen the information that was redacted or blacked out.  In other words, you do not know what is concealed nor how it might impact the defense.

    It appears that through no fault of your own, you are in no position to discharge your obligation to ensure that all material information favorable to the defense has been disclosed.  Some of this information was classified but it is

Letter to Joseph E. Koehler, AUSA  Page 2                                               September 6, 2018

unclear by whom or why.  When you found out about the screenshots made by undercover FBI agent Stephen Jane, you alerted Dan Maynard there was information he probably wanted and, when the information was declassified, you disclosed it.  However, fault or the purposeful intent to suppress is immaterial.  The impact to the defense is the same regardless of the government's good or bad intent, purposeful or negligent suppression.  Nor should it matter that the information was classified; it was in the government's possession and control.

The defense at trial included a claim that Mr. Abdul Kareem was targeted as a defendant because the FBI was embarrassed by its failure to detect and disrupt the plan to attack the contest in Garland, Texas.  It wanted to bring a prosecution of someone, the defense argued, and Mr. Abdul Kareem was selected as that person.  Further, the defense argued that: He was not part of the planning/preparation for the attack; Mr. Abdul Kareem lacked the hallmarks of a jihadi, unlike Simpson; Simpson was communicating with others, like Hendricks, for his guidance on actions to attack the contest, not conspiring with Kareem; the US had information that (should have) put it on notice about Simpson; the US failed to appreciate the risk posed by Simpson until it was too late: the FBI could have foiled the attack given the information it possessed.[1]

1. The FBI must have been tracking Elton Simpson's ("Simpson's") tweets or had the capacity to do so to some degree or it could not have associated the various monikers or handles to Simpson.  (#891.)  Those monikers include: 1) Tawaakul, 2) juba1911, 3) The Sword & The Tongue, and Surespot user names such as juba8021 and juba2.  Please disclose all electronic communications by Simpson under all those monikers, and any other monikers the FBI deemed associated to Simpson.  This information may reveal Simpson's plans, and the absence of any reference to Mr. Abdul Kareem tends to support his contention he was not involved in the planning of the attack.  This could support the defense and lead to impeachment of Intelligence analyst Amy Vaughn or other government witnesses, including Evan Kohlman.

2. Undercover agent "Stephen Jane" ("Jane") indicated in an email communication on or about April 29, 2015, to a number of individuals that he thought "Juba1911," aka Simpson, "should be of concern."  (#888.)  Please disclose to whom (name, position of responsibility, and office assignment) he communicated this and what, if anything, those receiving

---

[1] Numerical references, e.g., #884, are to the page numbers assigned to the government's supplemental disclosure of July 26, 2018. The symbol "XX" refers to something that has been redacted.  "Jane" refers to undercover agent Stephen Jane; "contest" refers to the drawing contest held in Garland, Texas at the Curtis Culwell Center on May 3, 2015.

his message did about that concern, such as place Simpson under surveillance, open an investigation of Simpson, or any other action based on Jane's concern.  Any such information, or the failure to take any action, tends to support Mr. Abdul Kareem's defense.  The identity, position, and office assignment of these individuals could lead to discovery of their communications on the subject, or any materials evidencing their participation in actions, or inaction.  That information could confirm the defense claim or cause it to reevaluate use of that argument and could have been used to impeach Agent Whitson or other government witnesses concerning what the government learned about why Simpson should be of concern and what law enforcement did about it.

3. In an email on or about April 29, 2015, Andrea D. Theobald wrote that she had time to do additional research and, as a result, she believes the person using the name "The Sword & The Tongue" is Elton Simpson and that Simpson uses Surespot user names such as juba8021 and juba2." (#891.) She further believed that "@tawaakul is associated with Simpson."  Please disclose any research, documents, or reports that evidence or support her beliefs and associations.  Such documents, or the lack of such documents as to Mr. Abdul Kareem, tend to support his defense or lead to impeachment of government witnesses.

4. "Jane" wrote in an email on or about April 29, 2015 that "This morning, I gave my thoughts about juba1911 to Justin and why I think that juba1911 should be of concern." (#888.) Please disclose any research, documents, or reports that evidence or support the stated belief that "juba1911 should be of concern," including any emails, notes, or electronic communications, other than as produced in ## 1-866.  Such documents, or the lack of such documents as to Mr. Abdul Kareem, tend to support his defense and could be used to impeach government witnesses.

5. "Jane" indicated in an email communication on or about May 3, 2015, that the trip to Dallas should be "a one-night trip assuming that a PX subject does not try to meet me." (#883.) Please disclose to whom (name, position of responsibility, and office assignment) did he communicate this and what, if anything, did any of those receiving his message do upon its receipt?  Please disclose any evidence, other than the supplemental disclosure, (##867-898), supports or undercuts Jane's thought that the "PX" subject might try to meet him in Texas?  Additionally, if Jane thought the Phoenix subject might try to meet him in Texas, what, if anything did he do about it? Any such materials indicating action or inaction would be material to the defense.

6. "Jane" indicated in an email communication on or about May 3, 2015, that the "XX subject wants me to meet and go forth with the plan with the PX subject." (#883.) Please disclose to whom (name, position of responsibility, and office assignment) did he communicate this and what, if anything, did any of those receiving his message do in response upon its receipt?  Please disclose any documents or information evidence these communications (other than #883) and describe "the plan" as referenced in the email, or evidence of any response to or action taken following this email?  Showing that "a plan" existed in the mind of "XX" involving the PX subject may support the defense claim that Mr. Abdul Kareem was not involved in planning the attack, others were.

7. "Jane" wrote in an email on or about May 3, 2015, "With PX's permission I could attempt to contact their subject and simply inquiry is he is at the event.  Please advise if you want me to do so." (#884.)  Please identify who (name, position, assigned office) he contacted with this message, and what was the response?  Please disclose any documents or information evidence the response and any actions taken as a result of the message.  The fact that Phoenix FBI failed or refused to grant permission as requested by "Jane" could further support the defense and aided in the cross-examination and impeachment of Agent Whitson and other government witnesses.

8. In an FBI report regarding the Garland Shooting Incident Review, a reference is made to JUBA1911 urging XX to "'go it alone during an act of worship' (likely alluding to conducting an attack)." (#895.)  Please disclose when was this comment allegedly made by JUBA1911, and any documents, investigative reports, or statements evidence this alleged statement by JUBA1911.

9. In an FBI report regarding the Garland Shooting Incident Review, a reference is made that "On or about 04/23/15, an XX IA assessed JUBA1911 was a moniker for XX Elton Simpson." (#895.)  Please disclose any research, documents, or reports that evidence or support such statement.  Such documents, or the lack of such documents as to Mr. Abdul Kareem, tend to support his defense.  The date may be a typographical error, but it also may be that the FBI had associated Simpson with the juba1911 moniker 10 days before the attack in Garland, Texas, giving further support to the defense.

10. Please disclose any documents, information, investigative reports, or research, other than as contained in the supplemental disclosures ##1-898, that led the FBI to conclude it was possible that Elton Simpson might travel to Garland, Texas in connection with the contest.  Such information

is material to and supports the defense and could have been used to impeach Agent Whitson and other government witnesses.

11. Please disclose any documents, information, or records evidencing an FBI alert to authorities, including the FBI, in the Dallas area to "be on the lookout" for Simpson.  This document, including information about which FBI office and which FBI employee(s) authored or sent the warning could lead to discovery of what the FBI knew and why it feared Simpson and others might attack or demonstrate at the Garland, Texas, contest.  Such evidence would tend to support the defense at trial.

12. "Stephen Jane" ("Jane") sent numerous emails to others believed to be FBI employees, according to emails you produced.  Much of the information concerning the persons who received the emails is redacted.  Please disclose the names and locator information of the individual or individuals in the Phoenix Field Office of the FBI (Phoenix FBI) who were copied on any of the communications, and we want to know who received which emails.  Knowing who was involved would allow us to contact the individual or individuals and request records, reports, or communications.  Those documents could be reviewed to determine what, if anything, that individual(s) did in response to the communications, especially once Elton Simpson was suspected of communicating about the Garland, Texas contest or was marked as being of concern, as noted in "Stephen Jane's" emails.

13. "Jane" traveled to Garland, Texas.  Presumably, he obtained authorization to do so.  Please disclose any copies of any documents or information that reflect statements made by "Stephen Jane" in seeking authorization to travel to Garland, Texas, in connection with the Garland, Texas contest. This would include his request, and any authorization or approval of the request, as those would be based on the justification in the request.  These records might reflect "Jane's" purpose or justification for the travel, consistent or inconsistent with his testimony, and document what the FBI knew about Simpsons desire to attack or protest the contest.

14. "Jane" testified during the Hendricks trial that he did not have authorization to communicate with Simpson and one of his emails (#884) seems to indicate he believed he needed permission of the Phoenix FBI to contact the "PX subj," believed to be Simpson.  Please disclose copies of any documents or communications authorizing or approving "Stephen Jane's" communication with Elton Simpson or any individual using a moniker associated with Elton Simpson, as well as any documents or communications terminating "Jane's" authorization to communicate with

    Simpson. This might have come from the Phoenix Field Office of FBI, or some other office.

15. "Jane" testified that the FBI was in charge of the law enforcement security at the contest in Garland, Texas.  Please disclose copies of any and all briefing notes and materials used in coordinating and informing law enforcement security for the event, including any photos, physical descriptions, maps or diagrams.  These records may disclose what the FBI knew about threats to the contest and individuals associated with the threats.

    Please let me know in writing if you intend to respond to our request and disclose any additional information, or whether you intend not to disclose the requested information.  If it is that latter as to some or all of the requests, I ask that you respond promptly so I may raise the issue with the court.  Please let me know if you want a further description of the material and how it could fit in our defense of the charges, and I will try to oblige.  I trust that, with regard to much of this material, you can appreciate its significance without further discussion.

    Thank you for your courtesy and professionalism in this matter.


                      Respectfully,


                       Daniel R Drake, Esq.
                       DRAKE LAW, PLC

Encls.
cc. Dan Maynard