Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON**
**CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500
dmaynard@mmcec.com

Daniel R. Drake, No.003781
**DRAKE LAW, PLC**
4340 East Indian School Road, Suite 21-113
Phoenix, Arizona 85018
(602) 881-5341
drakelawplc@gmail.com

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| United States of America, | 2:15-cr-00707-SRB |
|---|---|
| Plaintiff/Respondent, | **ABDUL MALIK ABDUL KAREEM'S ADDENDUM TO SUPPLEMENTAL MOTION FOR A NEW TRIAL – NEWLY DISCLOSED EVIDENCE -- GOVERNMENTAL MISCONDUCT** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant/Movant. | |
| | **(Oral Argument Requested)** |

Defendant, Abdul Malik Abdul Kareem ("Kareem"), by and through his undersigned counsel, files this supplement in support of his Supplemental Motion for a New Trial – Newly Discovered Evidence – Governmental Misconduct.

That new information consists of;

1. The Government's assertion in the March 2018 trial of Eric Jamal Hendricks that Hendricks was inextricably entwined in the Garland, Texas attack;

1

2. The testimony the FBI undercover agent Stephen Jane ("UCA" or "Jane") at Hendricks trial regarding his contacts with and assessment of Elton Simpson;

3. The July 26, 2018 disclosures of email communications between Jane and other government employees in which Jane expressed his concerns about Simpson and the Draw Mohammad Contest in Garland;

4. The March 15, 2019 disclosures of the existence of a pole camera and the video footage it captured between May 1 and May 4, 2015, at the apartment of Simpson and Soofi;

5. The March 15, 2019 disclosures of the contents of Saabir Nurse's ("Nurse") passport and his interactions with government employees at Houston International Airport in May and September 2015;

6. The March 15, 2019 disclosures of the contents of Nurse's iPhone captured by government employees at Houston International Airport in September 2015.

All this information was known to the FBI more than four months prior to the January 2016 trial, but only recently disclosed by the government attorneys. The June 2018 Supplemental Motion for New Trial, Doc. 505, dealt with the first two items above, and by inference, item three. This addendum will address the most recent disclosures.

On March 15, 2019, the Government provided new evidence including disclosure of a pole camera that the FBI placed outside of Elton Simpson ("Simpson") and Nadir Soofi's ("Soofi") apartment at least as of May 1, 2015 that discloses their

comings and goings on May 1, 2015 along with those of Ali Soofi and a copy of Sabir Nurse's ("Nurse") passport and a download of his cellphone that contains text messages, phone call data and contact information that would have been used by the defense had it been timely disclosed. (Attachment A, Declaration of Daniel D. Maynard, ¶ 2, Ex. 1) The Government states in its disclosure letter that it does not believe these newly disclosed items to be relevant and material (Att. A, Ex. 1) but can anyone doubt that if the pole camera video showed Kareem with Simpson and Soofi on the day they left to go to Garland, Texas whether the video and the existence of the pole camera would have been disclosed by the Government and shown to the jury. The video shows that Kareem, who the Government argued was the bank roller, trainer and motivator, was not present when Simpson and Soofi prepared to leave on their trip to Garland, Texas. Additionally, the information disclosed concerning Nurse would have affected the defense's strategy had it been disclosed prior to trial since the defense would certainly have called Nurse as a witness and it provided contact information for Yayah, an individual that Kareem believed Skyped with Simpson and a radical Jamaican Cleric, Sheikh Faisal. All of this new information leads to the inevitable conclusion that the Government withheld information vital to Kareem's defense that was in its possession before trial and continues to withhold material information. For these reasons, this Court should grant Kareem's motion for a new trial. This motion is supported by the attached memorandum of points and authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

## A.     Newly Disclosed Evidence that the Government had Before Kareem's Trial

### 1.     Pole Camera and Video

At trial, the Government argued that Kareem was the bank roller, trainer and motivator for the attack at Garland, Texas.  Ali Soofi testified that Kareem was at Simpson and Soofi's apartment three to four times a week and that he would sleep over at the apartment three times a week or more near the time prior to the Garland attack. (Att. A, ¶ 11)  One would think that Kareem would have been at Simpson and Soofi's apartment while they packed for their trip to Garland, Texas but the video that was disclosed by the Government for the first time on March 15, 2019, three years after the trial's conclusion, shows conclusively that Kareem was not there.  (Att. A, ¶ 10) Additionally, the video shows Ali Soofi making numerous trips out of the apartment carrying numerous bags at a time different from what he testified to at trial and not consistent with his trial testimony.  The video would have been used to impeach Ali Soofi's testimony.  (Att. A, ¶ 9)  The Government obviously decided that Simpson and/or Soofi were worthy of being surveillanced from a pole camera that was put in place at least as of May 1, 2015, the day Simpson and Soofi left to go to Garland, Texas.  Someone at the FBI had to request the camera, have it authorized by the FBI, installed, and presumably monitored by the FBI.  We do not know if this stems from the investigation by the UCA, who is dealt with in Kareem's Supplemental Motion.  The video that has now been disclosed shows the camera initially looking at apartment #34, then moves to the parking lot and rooftop of the apartment complex.  At 2:02 p.m. on

May 1, 2015, it moves to the sidewalk entry of Simpson and Soofi's apartment. (Att. A, ¶ 4) It appears that it was being controlled remotely by the FBI but that information has not been disclosed nor do we know if anyone was monitoring the pole camera.

The Government never disclosed the existence of the pole camera until three years after the trial's conclusion. It shows the comings and goings of Simpson, Soofi and Ali Soofi and it makes clear that Kareem is not there. (Att. A, ¶ 4) This is consistent with Kareem's trial testimony. If he was the bank roller, trainer, and motivator, one would think he would have been there to help them load their car and been at the apartment to give them financial and moral support. Also, Soofi testified about Kareem's numerous comings and goings from Simpson and Soofi's apartment, up to three or four times a week and spending the night there during those times, (Att. A, ¶ 11) yet he was not there when they made arrangements to leave to go to Garland. Certainly this video showing the lack of Kareem's presence is material evidence.

The video does show Ali Soofi making several trips in and out of the apartment. He testified that he knew the "exact time" he was at the apartment between 7:30 and 8:30 (Att. A, ¶ 4, Ex. 2D, 2E, and 2F) but the video shows he arrived before 6:00 p.m. and left at 7:04 p.m. At trial, Ali Soofi testified he moved out a punching bag, weight bench and all of his weights. (Att. A, ¶ 9) But, the video shows him moving out suitcases, duffle bags, and what appears to be a garbage bag but never a weight bench or a punching bag. (Att. A, ¶ 9) Based on the newly produced video, one can make the argument that Ali was helping his brother load his car or because he knew his brother was not coming back he is taking all of his personal items. I would have used the video

to impeach Ali Soofi's testimony on the timing and what he was moving. And I would have shown it to the jury to show that Kareem was not present. (Att. A, ¶ 11)

Certainly, if Kareem had been in the video, it would have been produced and the Government would have shown it to the jury and argued that Kareem was helping Simpson and Soofi get ready for the attack.

### 2. **Sabir Nurse's Materials**

Prior to trial, the Government disclosed a FD 302 on November 11, 2015 documenting a letter written in and torn out of a notebook discovered in Simpson and Soofi's apartment to an unknown individual that stated in pertinent part, "The money that I had for you was being used for what was needed for the initial plan but that changed . . . I will leave you with the title of my car to do as you please with it." (*See* Att. A, ¶ 18) On January 29, 2016, the Government disclosed a FD 302 report documenting an interview with Dunston Simpson, Sr., Simpson's father, on November 3, 2015 that disclosed that Nurse had the title to Simpson's car and gave the title to Simpson's father after the attack. (Att. A, ¶ 21)  This was well past the *Brady* deadline and on January 29, 2016, the Government disclosed, for the first time, documentation of FBI interviews of Nurse from May 4, 2016 and May 26, 2016.  During trial, case Agent Whitson testified that after receiving the information about the letter referenced in Trial Exhibits 553 and 554, and the car title, he called a meeting with various other agents "handling different aspects of the branching investigations . . . and asked if it meant anything to them and then collected information in that sense." (Att. A, ¶ 20)

6

What Kareem's defense team did not receive that the Government had at that time was information that would have influenced and effected the defense's preparation for trial and the witnesses it would have called. (Att. A, ¶ 23) It did not receive a copy of Nurse's passport and the download from his iPhone which the Government had obtained on September 2015 when Nurse was returning to the United States from a trip to Trinidad and Tobago to visit his father. With this new information, the defense would have called Nurse, Sabari and possibly Bell as trial witnesses.

**(a).   Nurse's Passport**

Nurse's passport is material for several reasons. It shows that Nurse had made two trips to Saudi Arabia for the Haj and he made numerous trips out of the country. (Att. A, ¶ 15, Ex. 6) First, the fact of several trips for the Haj demonstrates how devoted Nurse was and thus more likely to be a radical Muslim than Kareem who admitted he routinely drank alcohol and used drugs. Second, it shows that Nurse had access to money that permitted him to travel internationally as compared to Kareem who was barely getting by. Thus, it was far more likely that Nurse bank rolled Simpson and Soofi then Kareem. This information supports the defense's theory that Nurse was the bank roller and the person Soofi told Ali about who was the funding source.

**(b).   Nurse's Telephone Records**

On May 28, 2015, Customs and Border Patrol ("CBP") conducted an outbound inspection of Nurse at George Bush International Airport ("IAH") in Houston, Texas. (Att. A, ¶ 13, Ex. 4) On September 26, 2015, CBP at IAH downloaded Nurse's iPhone and obtained iPhone reports, call logs, contacts, images, etc. as he was returning to the

United States from a trip to Trinidad and Tobago. (Att. A, ¶ 14, Ex. 5) The FBI knew of this information as of September 29, 2015 since it appears upon an FBI report. (Att. A, ¶ 14, Ex. 5) Much of this information taken from Nurse's iPhone was material to Kareem's defense and would have been a bases for calling Nurse as a trial witness. It shows that Nurse called Simpson numerous times in April 2015 leading up to the Garland attack while the only phone contacts between Nurse and Kareem were on May 7 and May 9 around the time of Simpson's funeral. Simpson was closer to Nurse, lending credence to the argument Nurse might have been the mastermind of the conspiracy, not Kareem. Also, the information discloses numerous calls by Nurse to Bell Yayah and we now know that Yayah is John Sabari ("Sabari"). In Nurse's contact information were the numbers of James Bell who the Government interviewed on May 4 and 5, 2015 but did not disclose to Kareem until February 11, 2016 and contact information for Yayah who Kareem's defense team now knows is Sabari. Bell and Sabari had initially been listed as Government witnesses but were removed. The Government has never provided a single disclosure guarding Sabari and Kareem knew nothing about him. Certainly, the Government has additional information about Sabari or it never would have listed him as a witness. Kareem, in his first interview with the FBI, told Agent Whitson that he believed Simpson Skyped with a Jamaican Salafi Cleric Sheikh Faisal, with someone in Scottsdale known as Yayah. Kareem's defense had no idea who Yayah was nor did it know how to contact him. The information in Nurse's phone would have given Kareem's defense team its first contact information on Yayah or Sabari. Also, it connected Yayah, Bell and Nurse to Simpson and Nurse had

numerous contacts with Yayah and Bell following Simpson's death but not with Kareem. This phone information was material to Kareem's defense.

Kareem did not call Nurse as a witness because we did not know what Nurse was going to testify to concerning receiving the title to Simpson's car after Simpson's death and concerning the money he apparently gave to Simpson. Nurse refused before trial to talk with Kareem's investigator. (Att. A, ¶ 17)

After receiving this additional information that was in the Government's possession before trial, Kareem's defense team would have taken different actions at trial. It would have called Nurse and shown that he had numerous contacts with Simpson leading up to the attack, that he had the financial ability to fund Simpson and Soofi, that Nurse made trips to Saudi Arabia for the Haj and that he had access to funds that permitted him to freely travel out of the country, and that Nurse was in contact with Bell and Sabari. (Att. A, ¶ 15, Ex. 6) Nurse contacted Bell on May 3, 2015, the night of the Garland attack and had numerous contacts with Sabari after Simpson's death. Thus, Kareem would have called Nurse at the trial and had him testify about his relationship with Simpson and their network of Muslim friends including Sabari. This new information would have given Kareem the ability to contact Sabari who we believe facilitated Simpson's contact with the Jamaican Salafi Cleric, Sheikh Faisal. Kareem never Skyped with Sheikh Faisal nor attended any of Simpson's meetings hosted by Sabari.

These facts would have distanced Kareem from Simpson and the radical Muslims that Simpson associated with and supported Kareem's defense that he was not

9

a radical Muslim and did not bank roll or provide financial support to Simpson and/or Soofi.

Also, the Government provided additional information concerning the UCA who was in contact with Simpson about the Draw Mohammed Contest prior to the Garland attack. The defense would have called the UCA to discuss his contacts with Simpson, his travel to Garland, Texas, his witnessing the Garland attack, and what reports he prepared prior to and after the Garland attack. (Att. A, ¶ 26)

Kareem's defense was that he did not know about the Mohammad Drawing contest before the attack nor did he know Simpson and Soofi planned to go to Garland, Texas to commit the attack. The defense argued that the FBI withheld evidence and rushed to find a scapegoat because it failed to stop the attack. The disclosure of the UCA, his contacts with Simpson and his presence at the attack support that theory as does the presence of the pole camera and the comings and goings on the video f May 1, 2015 of Simpson and Soofi's apartment. How can anyone argue that the video from the pole camera is not relevant and material.

### 3. Legal Analysis

A violation of *Brady v. Maryland*, 373 U.S. 83 (1963) may occur when the Government fails to turn over impeachment evidence. *See United States v. Bagley*, 472 U.S. 667, 676 (1985). The prosecutor in charge of trying the case "has a duty to learn of any favorable evidence known to others acting on the Government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court set forth the three essential

components of a *Brady* prosecutorial misconduct claim: "The evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id*. at 281-82.  For prejudice to exist, the suppressed, favorable evidence must be material. *Brady*, 373 U.S. at 87.  Under *Brady*, the accused is entitled to a new trial "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433-34.  The Supreme Court in *Kyles* explained that "a reasonable probability of a different result" does not require a defendant to prove "that disclosure of the suppressed evidence would have resulted ultimately in the Defendant's acquittal." *Id*. at 434.  The defendant's burden is that he must show that because of the absence of the favorable evidence, the verdict at trial is not "worthy of confidence." *Id*. If the favorable evidence suppressed by the government was material, then it is by definition prejudicial. The prejudicial effect of the suppressed evidence is "considered collectively, not item by item." *Id*. at 435.  The Supreme Court indicated that this "collective" standard should encourage prosecutors to resolve close questions about the materiality of evidence in is possession in favor of disclosure. *Id*. at 439.  The policy favoring disclosures underscores the prosecutor's role as a seeker of truth and justice rather than a competitor intent on winning at all costs. *Id*. at 439-40.

      The FBI installed a pole camera to monitor the movements of Simpson and Soofi on May 1, 2015.  On that day, Simpson and Soofi packed Soofi's car and headed to Garland, Texas to initiate a terrorist attack.  At the same time, Ali moves his remaining

items out of their apartment. This activity was caught on the FBI's pole camera. Can anyone doubt that if Kareem had been there with Simpson and Soofi that the Government would have turned over the footage, disclosed the presence of the pole camera shown the video to the jury and argued that it showed Kareem's participation in the preparation of the terrorist attack? This failure to disclose was blatant. The evidence is exculpatory to Kareem because it shows that he was not participating in the planning of the attack at the crucial time when Simpson and Soofi are getting ready to leave. It is clear the Government believed it was favorable to the defense because it did not use the evidence at trial. Although it had listed Nurse as a potential witness, it did not call him at trial because it believed he was unhelpful to the prosecution, put otherwise, helpful to the defense. No further showing of materiality is required. *U.S. v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984).

The general standard governing motions for a new trial on the grounds of newly discovered evidence has been set out earlier in Kareem's motions and is familiar. The evidence must have been disclosed after trial, must be material to the factual issues at the trial and not merely cumulative and impeaching, and of such a character that it would probably produce a different verdict in the event of a retrial.

What is compelling in this case is that the newly discovered evidence was known to the FBI, the Government investigative agency, at the time of trial, but was not disclosed. This failure to disclose was intentional. If it can be shown that the Government deliberately suppressed the evidence, a new trial is warranted if the evidence is merely material or favorable to the defense. *Giglio v. United States*, 405

U.S. 150, 153-154 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963).  The same rule applies, even in the absence of intentional suppression, if it appears that the high value of the undisclosed evidence could not have escaped the prosecutor's attention.  *United States v. Kahn*, 472 F.2d 272, 287 (2nd Cir. 1973).  The materiality of the evidence to the defendant should be measured by the effect of its suppression upon the defense's preparation for trial, rather than only on its predicted effect on the jury's verdict.  *Kahn* at 287; Note, the Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant, 74 Yale L.J. 136, 145-57 (1964).  This evidence should have been disclosed before trial and the Government's failure to do so render's this verdict unsafe and not worthy of confidence.  *Kyles*, 514 U.S. at 434.

There can be no doubt that the Government intentionally failed to disclose the existence of the pole camera and its tape and the only explanation is because it was and is beneficial to the defense.  Additionally, the Government failed to disclose the material information that it had gathered on Nurse that was clearly material. Nurse was on the Government's initial witness list but was removed before trial as were Bell and Sabari.  Clearly, the Government believed Nurse, Bell and Sabari were helpful to its case against Kareem but removed them when it decided they were not.  It is a reasonable inference or probability that Nurse, Bell and Sabari were removed when it was determined that they would provide evidence favorable to the defense which appears to be after they downloaded Nurse's phone and copied his passport.

**B.  Conclusion**

The Court should consider the Government's continuing failure to make timely disclosures.  First, the Government failed to disclose that one of its agents, UCA, had been in contact with Simpson about the Garland attack before it occurred and based in part on his communications with Simpson, the UCA was at the attack when it occurred and witnessed it.  the UCA was only disclosed when he was needed to testify about the Garland attack in the trial of Erick Jamal Hendricks, in the Northern District of Ohio, Case No. 1:16CR265.

Now, three years after the trial has ended, we learn for the first time that the FBI had a pole camera installed and observed Simpson and Soofi as they prepared for their trip to Garland, Texas on May 1, 2015, yet failed to disclose its existence because it did not help its case and was beneficial to the defense.  Also, we learn three years after the trial that the Government had information about one of its witnesses that it withdrew from its list that would have been helpful to the defense.  This conduct by the Government is a violation of *Brady* and Kareem's right to a fair trial and should not be tolerated.  The cumulative effect of these disclosures being made whenever the Government feels like it is a blatant violation of Kareem's right due process and a fair trial. When actions like this took place is the District Court of Oregon involving white Christian ranchers, the Court dismiss the case.  There can be no confidence in the verdict here and there can be no confidence that the Government is not failing to disclose additional information that is helpful or beneficial to the defense.  For all of these reasons, this Court should grant Kareem a new trial.

RESPECTFULLY SUBMITTED this 26th day of April, 2019.

**MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.**

By  /s/Daniel D. Maynard
    Daniel D. Maynard
    3200 North Central Avenue, Ste. 1800
    Phoenix, Arizona 85012
    Attorneys for Defendant/Appellant

**DRAKE LAW, PLC**

By  /s/Daniel R. Drake
    Daniel R. Drake
    4340 East Indian School Road
    Suite 21-113
    Phoenix, Arizona 85018
    Attorney for Defendant/Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrants:

AUSA Joseph E. Koehler and AUSA Kristen Brook

Additionally, a copy was served upon Mr. Abdul Kareem by first class letter, postage prepaid, at:

    Abdul Malik Abdul Kareem #44126-408
    FCI Florence
    Federal Correctional Institution
    PO Box 6000
    Florence, CO  81226

                              /s/Stacey McClellan
                              Stacey McClellan