UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

Abdul Malik Abdul Kareem,

      Defendant,

v.                           CR 15-00707-PHX-SRB

UNITED STATES OF AMERICA,

      Plaintiff.

_____/

    The Defendant, Abdul Malik Abdul Kareem, comes Pro Se to reply to appointed counsel's opposition pursuant to Rule 44.

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _CIVLR 54 7.(a)(1)_
          (Rule Number/Section)

TABLE OF CASES

Supreme Court:
Morris v. Slappy, 461, U.S. 75 L.Ed.2d 610, 103 S.Ct. (1983)
Strickland v. Washington, 466 U.S. 668,  687, 104 S.Ct. 2052(1984)

Ninth (9th) Circuit Cases:
Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970)
Frazer v. United States, 18 F.3d 778, 783 (9th Cir. 1994)
Garcia v. Bunell, 33 F.3d 1193, 1195, (9th Cir. 1994)
United States v. D'Amore 56 F.3d 1202, (9th Cir. 1995)
United States v. Musa 220 F.3d 1096 (9th Cir. 2000)
United States v. Mclendon 782 F.2d 785, 789 (9th Cir. 1986)
United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir. 1992)
Morris v. California, 966 F.2d 448, 455 (9th Cir. 1991)
United States v. Torres-Rodriguez 930 F.2d 1375, 1380 N.2 (9th Cir. 1991)
United States v. Wadsworth, 830 F.2d 1500 (9th Cir. 1987) (1500, 1509)
United States v. Williams, 594 F.2d 1258, 1260 (9th Cir. 1979)

Exhibits:
(A) Handwritten Affidavit (Feb. 19, 2019 visit)
(B) March 19, 2019 (Formal written omissions)
(C) Affidavit

STATEMENT OF CAUSE

A motion to be appointed counsel and withdraw appointed attorneys (was filed) pursuant to Rule 44 on the basis of irreconcilable differences, conflict and a breakdown in communication, and inexcusable inattentiveness beset by failed communications. Malik requests an inquiry into his claims. Serious breach of trust and a significant breakdown in communication that has substantially interfered with the Attorney-Client relationship with legitimate reason, Malik has completely lost trust in his attorney(s). During a phone conference concerning withdrawal, and ceasing and desisting, counsel replied qoute "I won't go quietly", Further, Attorney Maynard would go on to qoute say "It'll be six to twelve months before you receive new counsel." Importantly, his again written omissions and position to oppose the Rule 44 motion was voiced and formally written in an outline letter of his deficiencies. There are compelling reasons to examine and delve into Malik's relationship with counsel. The record here complete, developed can be viewed with reasonable certainty.

I. CONFLICT OF INTEREST

Malik asserts that an actual conflict of interest exist which adversely affect's appointed counsel's performance. Conflict of Interest on the part of counsel counsel is a mixed question of law and fact. See Garcia v. Bunnell, 33 F.3d 1193, 1195, 1195, (9th Cir. 1994). Malik has a right to conflict free counsel and representation under the Six Amendment. See id. Malik must prove actual conflict, "through a factual showing on the record." See Morris v. California, 966 F.2d 448, 445 (9th Cir. 1991). Upon showing of actual conflict, Malik need demonstrate only "That some effect on counsel's handling of particular aspects were likely adverse. See United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir. 1992). Prejudice is presumed. If however, there is only a possibility of conflict, Malike must meet the "Performance and prejudice" standard of Strickland v. Washington, 446 U.S. 668, 687, 104 S.Ct. 2052 (1984). See Miskinis, 966 F.2d at 1268. Two, 2017

request for new counsel citing conflicts as well as January 2019, and March
2019 where again written omissions (See Exhibit A and B) where outlined February
19 visit and again recently March 2019 in a formal letter. Malik's previous
motion to substitute counsel with handwritten omissions supports Strickland's
performance and prejudice prongs respectfully.

## II. ADEQUACY OF INQUIRY

The Court of Appeals have consistently applied three factors when dealing
with motion to substitute counsel: (1) the adequacy of the district court's
inquiry, (2) the extent of any conflict, (3) timeliness of the motion. Although
Malik's not entitled to a particular lawyer with whome he can, in his view, have
a "meaningful Attorney-Client relationship". See Morris v. Slappy, 461, U.S. 1,
3-475 L.Ed.2d 610, 103 S.Ct. (1983). If the relationship between lawyer and
client completely collaspes, refusal to substitute new counsel violates Malik's
Six Amendment right to effective assistance of counsel. See Brown v. Craven,
424 F.2d 1166, 1170 (9th Cir. 1970). Examination of the two articles (Exhibit
A and B) can and will indicate that there is a breakdown and an inability to
defend Malik. The Court should be encouraged to inquire and examine and review
these claims. The courts inquiry into the irreconcilable differences between
Malik and appointed counsel are warranted giving on four occassions. Malike
formally and informally raised the issues before the court(s).

## III. IRRECONCILABLE DIFFERENCES

Reasons herein inquire a deeper probe into the nature of Malik's relation-
ship with the appointed counsel. A contentious relationship has culminated into
argumentive, combatant stances, among the parties. Counsel's comments are
questionable and call into question these parties moving forward amicably.
Threats to oppose Malik's wishes, and relaying outcomes i.e.: six to twelve
(delays) months speaking in part, on the court is something better left deter-
mine by the court. Counsel's continual attempts to mend a fractured relationship

pre-visit followed by motion to remain as counsel in good faith counsel's tactics
are opposite of counsel's prescribed duties ("Appointed counsel, and not his
client is in charge of the choice of trial tactics and theory of defense.") To
appear being transparent with Malik and clearly pursuing other methods not shared
with Malik. Motions done then counsultation, disavowing defendant's complaints,
irrevocable conflicts presents irreconcilable differences with appointed cousel.
See United States v. Torres-Rodriguez, 930 F.2d 1375, 1380 N.2 (9th Cir. 1991).
Defendant (cannot) be denied his choice of retained counsel just because the
request comes late, i.e.: post-conviction on the court thinks current counsel
is doing an adequate job. See D'Amore, 56 F.3d at 1206 ("Even if a defendant's
counsel is competent, a serious breakdown in communication can result in an
inadequate defense. See Musa, 22 F.3d at 1102. In good faith if acknowledged
by appointed counsel the Attorney-Client relationshiop is not salvageable and
stuanch differences by both parties will not be reconciled.

## IV. EXTENT OF CONFLICT

It is evident there is a serious breakdown of trust, Malik recounts the
languange including statement(s) when attorney Maynard would qoute "won't go
quietly" loss of trust is certainly a factor in assessing good cause, a defendant
seeking substitution of assigned counsel must nevertheless afford the court
with legitimate reasons for the lack of confidence, counsel's conduct, oral
admissions and written omission clearly conveys this. The extent of conflict
can also be inferred from appointed counsel's responses and conduct. See United
States v. Williams, 594 F.2d 1258 at 1260 ("Defendant's claims of a bad relation-
ship lack of communication "were not only refuted by counsel", by the response
of counsel tended to confirm the course of the client-attorney relationship.)
The conduct, language and notice to openly oppose the motion to substitute
counsel are duly noted. "All advice, assistance, and guidance provided after
these instances would be fatally suspect, as would the willingness of a defendant

to follow attorney's lead." Id. (emapasis original) See Frazer v. United States, 12 F.3d 778, 783 (9th Cir. 1994). Although the relationship between Abdul Malik and appointed counsel was not marked by racial acrimony, appointed counsel's, omissions and remarks and opposition to substitute counsel, had a similar consequence. In regards with opposing motion to substitute counsel, and remarks of a six to twelve month wait, Malik stated he would wait and welcome new appointed counsel. To address attorney Maynards assertion a different analysis is called for when substitution does not threaten any delay in the proceedings. In such cases, "there is no reason" to deny substitution whether or not the defendant has complaints, against or an irrevocable conflict, with his appointed cousel. Appointed counsel is not acting in Malik's interest and voiced his opposition to substitute counsel. Malik has been left to make this motion by himself, while appointed counsel took an adversay and an antagonistic stance. The court has encountered similar situations in Wadsworth, where a defendant's attorney expressed betterness about his client's lack of confidence in him and took an adversary and antagonistic position to client's motion to substitute counsel. See Wadsworth, 830 F.2d at 1510-11 counsel's open opposition leaves Malik effectively unrepresented in all aspects concerning counsel. Again the written omissions and conduct surely illustrate a breakdown in communications between Malik and his attorney(s). It clearly shows the relationship becoming antagonistic, lacking in trust, and at times contentious and quarralsome. See Williams, 592 F.2d at 1260 (sufficient conflict where defendant chose to proceed pro se because the "Attorney-Client relationship had been a stormy one with quarrels, bad language, threats, and counter threats"), Brown 424 F.2d at 1169 (sufficient conflict where defendant "was forced into trial with a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, in any matter whatsoever, communicate"). Here as well there is an irreconcilable conflict between Malik and appointed

counsel to the extent stands to substantially interfere with appointed counsel's ability to provide adequate representation. An irrconcilable conflicts exist between Malik  and appointed counsel Daniel Maynard and Daniel Drake, that rises to the level of breakdown described in <u>Brown</u>, 424 F.2d at 1169 and <u>Williams</u>, 594 F.2d at 1260. The extent of the conflict(s) have truly irreparably harmed the attorney-client relationship.

IV. CONCLUSION

The conflicts and the conduct here warrants the court's intervention and dissolving of a truly fractured relationship between attorney(s) and client pursuant to Rule 44(A) appointment of new counsel is appropriate relief and in the interest of justice.


Respectfully Submitted,


Abdul Malik Abdul Kareem

ATTACHMENT
A

When I represented Abdul Kareem I told him not to plead guilty to all of the charges in the second superceding indictment and I advised him to go to trial as soon as possible. There were numerous decisions I made in defending the case that I will set forth in a letter to Abdul Kareem in the next week that he may want to use if he loses his appeal in a habeas corpus petition.

Dan Maynard
2-19-19

ATTACHMENT
B

MAYNARD
CRONIN
ERICKSON
CURRAN
& REITER
PLC, ATTORNEYS AT LAW

March 19, 2019

DANIEL D. MAYNARD

**LEGAL MAIL**
**TO BE OPENED IN THE PRESENCE OF INMATE**
Abdul Malik Abdul Kareem
#44126408
FCI FLORENCE
Federal Correctional Institution
PO Box 6000
Florence, CO  81226

3200 NORTH

CENTRAL AVENUE

SUITE 1800          Re:    *United States v. Abdul Kareem*; No. CR15-707-PHX-SRB

PHOENIX ARIZONA

85012-2438     Dear Abdul Malik:

TELE 602 279 8500

DIRECT 602 279 8519          I did a first draft of this letter several weeks ago after Dan Drake and I got back
FAX 602 263 8185     from visiting you and before you filed the most recent motion to have us removed as
EMAIL DMaynard@mmcec.com     your lawyers.

          It was nice to see you although I hated the circumstances under which we had
to meet again.  As I have advised you all along, I think that your being convicted in this
case on anything other than the gun charges was a travesty and I will do whatever I can
through the rest of my career to try to get that decision overturned.  Unfortunately I think
the jury believed Ali Soofi and in my opinion he was a consummate liar as his story kept
changing from the very beginning to the end.  Each time he contended that your
involvement with Simpson and his brother became more and more, which from what I
uncovered was the opposite.  I am sorry that I was not able to present your position in
a better fashion to convince the jury that he was lying.

          As I discussed with you, there were certainly decisions that I made and
encouraged you to follow.

          I believed that the Government's case was weak against you, therefore, I
recommended and moved to go to trial sooner than later.  Clearly we could have asked
for continuances and I believe the Court would have granted them but I thought that
based upon the evidence that we received when you were first indicted and what we
continued to receive up until trial indicated that you were not guilty and that it was in

March 19, 2019
Page 2

your best interest to go to trial quickly. I believe that the FBI withheld evidence from the AUSA who was handling the case and I continue to believe that today. I still think that there is more evidence out there that the FBI has not provided to us concerning Simpson, Nurse, and others that Simpson associated with.

In the event that you do not win a new trial from the district court or from the appellate court, you can always file a Petition for Habeas Corpus and allege ineffective assistance of counsel against me. There were certainly decisions that I made while putting on the case that may constitute ineffective assistance of counsel. It might have been to your benefit for me to have asked for the continuance since we were being inundated with new exhibits during the trial since it was difficult, if not almost impossible, to go through those exhibits on a daily basis (160 new ones) and synthesize them into our defense strategy. Keep in mind I had a private investigator and one associate, whereas the Government had over 200 FBI agents, 2 AUSA's at trial, and a number of AUSA's in the background that were working behind the scenes doing legal research and helping them prepare the case. Clearly the cards were stacked against you.

Dan Drake and I are doing everything we can to try to get you a new trial. I know that you blame me to a great degree for your current circumstances and if there is any time that you want to talk, please feel free to give me a call.

I asked Drake to help me on this case because he had been an Assistant U.S. Attorney and has a better understanding of how the FBI works and he has a better relationship with the U.S. Attorneys' Office than I do. My belief is that he will be more effective at getting documents from the FBI and the U.S. Attorneys' Office than I am.

I know you are frustrated with us and the process but we are doing all we can to get you a new trial. We are both committed to getting you a new trial and both believe in your innocence. I am filing an opposition to your motion to remove us for those reasons. I do not think anyone else will work as hard for you as we have and will. I am sorry that you are so frustrated.

Very truly yours,

Daniel D. Maynard

DDM/sm
c:    Dan Drake
F:\CLIENTS\FPD.002\KAREEM.71\LTRS\Client 29.wpd

# ATTACHMENT

# C

TO BE ADAPTED PURSUANT TO
28 U.S.C. §1746 (Affidavit)

I, Abdul Malik Abdul Kareem, attest to the following:

RE: Affidavit

STATEMENT OF FACTS

February 19, 2019, Attorney Daniel Maynard and Attorney Daniel Drake came
to Florence FCI for an Attorney-Client visit. Upon arrival, talks were formal
concerning the case. A mention of retaining counsel was discussed in which a
motion made by Attorney(s) with no formal notice save discussed in the confer-
ence. I sternly made all my complaints, requests, know to the attorney(s). Of
particular, the slow progression and counsel's further inability to effectively
proceed further. Upon the conference ending, Attorney Daniel Maynard said he
would write a handwritten affidavit attesting to his handling of me and my case,
and send a formal affidavit to me. No such affidavit arrived and counsel knew
very well and was made aware (my) of request and wishes and how I meant to pro-
ceed. The option was to appeal to the court(s) and seek withdrawal of the at-
torney(s) as I've previously tried to no avail. I formally prepared a motion
to substitute counsel and filed with the court(s) promptly. March 19, 2019, a
letter arrived and again Attorney (Maynard) revealed his decision making, hand-
ling of matters, and his inability to represent me further and yet offering
apologies for all prior handling of my case. April 3, 2019, during a conference
call, Attorney Maynard and I spoke in which he asserted he'd be opposing my
motion and quote "I won't go quietly." After being told to cease and desist
acting on my behalf, he and attorney Drake would go on to say quote "If you're
to receive new counsel, expect a six to twelve month wait." In which I was pre-
pared to do if it meant them withdrawing and being appointed new counsel. Con-
cerning release of case materials to a journalist, I would be told it's public
information though I never gave attorney(s) permission to release my information
through counsel. I, Abdul Malik Abdul Kareem, have stated truthfully my state-
ments here and attest to them as truth and fact.

Under the penalty of perjury, I, Abdul Malik Abdul Kareem, all submitted
is the truth concerning all stated herein.

Executed this date _29_ of _April_, 20_19_.

/s/ _Abdul malik Abdul Karun_

TRULINCS  44126408 - ABDUL KAREEM, ABDUL MALIK - Unit: FLF-M-B

---------------------------------------------------------------------------------------------

FROM: Patino, Luis
TO: 44126408
SUBJECT: Found something
DATE: 03/23/2019 02:04:18 PM

Asalaam Alaikum,

Hello brother, I found something. So Drake finally sent me out the whole trial. So I have 19 days worth of stuff to go through and I really want to go through everything. I dont want to skip anything because I fear I may miss something. So I'm on day 2, sorry but theres hundreds of pages to go through. And I found some interesting things. Give me a call when you can.. Anytime in the morning. I'll be at work during the evening and at night. I dont want to use all of your minutes but I think this is worth it.

From: **Luis Patino** lcp.patino@gmail.com
Subject: My information
Date: February 4, 2019 at 12:52 PM
To: drakelawplc@gmail.com



Dear Mr. Drake,

I spoke to you earlier today about the appeal case of Abdul Malik. Again I just want to reiterate my appreciation to hear me out today. I'm not here to waste your time and whatever I can do to help Abdul Malik out, I'll be here for him.

I remember meeting Abdul Malik, back in maybe 2013 or 2014. The last time I saw him was at his trial. He saw me and smiled. I'm pretty sure he remembers me. I met him a few times. And every time I saw him it was a pleasure to be in his presence. He always treated me with respect and was always willing to offer a hot meal whenever he could. It was very upsetting to see what happened at his trail. I really feel that his religion was used against him to make him look guilty. I don't feel the evidence they had against him was sufficient enough for a guilty verdict. I guess the jury felt differently about it.

Now I hear he is looking for a new trial because of new evidence that has been revealed. Nothing could make me happier than to help him get out of prison. I'm a journalist and I've written a few articles for the Muslim Voice. It's a newspaper that deal with Islamic issues in the community. I want to help in any way I can. Like I said, if you need help around the office and I mean with anything, I'll be there. But most of all I think I can help with getting the Islamic community involved and bring attention to his case. I would really like to talk to you because you're the professionals and I think you can steer me in the right direction, on what I should focus on. I work for T-Mobile part time and I'm usually working the afternoons from Saturday through Tuesday. Anytime between I'm available.

I think about him a lot and at times it's very difficult to sleep. I know I can be doing more to help him but I haven't. And I'm sorry for that. And if you see Abdul Malik, send my apologies to him.

Thank you for your time

Luis Patino
LCP.patino@gmail.com
602-909-1275

CERTIFICATE OF SERVICE

This certifies that a true and complete copy was mailed to the United States District Court, District of Arizona.


Executed this _29_ day of _April_, 20_19_.

/s/ _Abdul Malik Abdul Kareem_



Abdul Malik Abdul Kareem
Reg. No. 44126408
CI Florence. Federal correctional Institution
       P.O. Box 6000
Florence, CO 81226



**RECEIVED**

MAY 07 2019

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Clerk UNITED STATES DISTRICT CoURT
SANDRA DAY O'CoNNoR U.S. CourTHouse SUITE 130
901 W. WASHINGTON ST. SPC-1
PHOENIX, AZ 85003-2118

# LEGAL MAIL