MICHAEL BAILEY
United States Attorney
District of Arizona

KRISTEN BROOK
Arizona State Bar No. 023121
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: kristen.brook@usdoj.gov
Email: joe.koehler@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-15-00707-01-PHX-SRB |
| Plaintiff, | |
| v. | **RESPONSE TO MOTION TO DISMISS** |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

The United States, through undersigned counsel, respectfully requests the Court deny Kareem's Motion to Dismiss. The motion is untimely and the Court lacks jurisdiction to consider it. Alternatively, the Court should deny the motion because it is without merit. The instant motion is Kareem's third attempt to make something out of nothing – he raises the same arguments, some of which this Court already rejected, and raises two re-formulated arguments about the same information addressed in his original Motion for New Trial and his supplemental brief in support of that motion, as well as in his Supplemental Motion for New Trial.

**The Motion is Untimely**

The instant motion, filed more than three years post-trial, is untimely, and therefore this Court lacks jurisdiction to consider it. The only procedural mechanism for Kareem to present the instant motion is as a request for relief within the context of a motion for new trial under Federal Rule of Criminal Procedure 33. *See United States v. Ross*, 372 F.3d 1097, 1105-07 (9th Cir. 2004) (discussing district court's jurisdiction under Rule 33 and finding a court may consider dismissal remedy within the context of a Rule 33 motion). Rule 33 authorizes the filing of a motion for new trial based on newly-discovered evidence, but only if the motion is filed within "3 years after the verdict or finding of guilty." The time limits in Rule 33 are jurisdictional. *United States v. Smith*, 331 U.S. 469, 472-74 (1947); *United States v. Walgren*, 885 F.2d 1417, 1426 (9th Cir. 1989). Therefore, this Court lacks jurisdiction over an untimely Rule 33 motion.

The jury in this case returned its guilty verdict on March 17, 2016. Kareem filed the instant motion on August 16, 2019, more than three years after the verdict. Kareem could have included dismissal among the remedies he sought in his Supplemental Motion for New Trial but did not. Therefore, the motion is untimely under Rule 33 and the Court lacks jurisdiction to consider it. The only procedural mechanism available to Kareem to assert his dismissal arguments is a motion under 28 U.S.C. § 2255 after the conclusion of appellate proceedings in this case.

Even if the motion were timely, the Court should deny it for lack of merit.

**Background**

In his motion, Kareem seeks dismissal based on his claim that the government "suppressed" favorable and material evidence.

Kareem again lists categories of information related to the prosecution of Erick Jamal Hendricks in the Northern District of Ohio.[1] Kareem again claims that

---

[1] Kareem again lists the following: "Communications between an undercover agent (UCA) and Elton Simpson"; "The communication between the UCA and Simpson in which the UCA

these items were "suppressed," despite the Court's ruling on these specific claims that the Hendricks-related "disclosure is not exculpatory or material to his defense," and therefore "does not rise to the level of *Brady* or other constitutional violations." (CR. 469 at 9-10.)

Next, Kareem claims the government "suppressed" evidence related to a separate prosecution of Abdul Khabir Wahid. Specifically, Kareem claims Saabir Nurse's cell phone and travel records were exculpatory and material to Kareem's defense. (CR 570 at 9-12.)

Kareem next asserts the government "suppressed" video footage from a pole camera in the vicinity of the Simpson/Soofi apartment, as well as internal FBI communications and reports that were disclosed to address issues raised in his previous post-trial filings. (CR 570 at 12; CR 570-3.)

Kareem incorporates his previous briefing on this subject of the government's post-trial disclosures (CR 303, 345, 432, 452, 505, 559). The government likewise incorporates its previous briefing on the subject (CR 324, 441, 550, 577).

None of the foregoing information falls within the government's discovery obligations in this case under Rule 16, the Jencks Act, *Brady*, or *Giglio*. Kareem's claims regarding the information presently are pending before the Court in his previous filings, CR 542, 543, 544, and 559, responded to by the government in CR 550 and 577.

Kareem next asserts the government "suppressed" information showing "Nurse's loan to Simpson was significant and warranted further investigation. It did

---

responded to a comment by Simpson with the famous 'Tear up Texas' line"; "The May 2, 2015 communication from Hendricks to the UCA encouraging him to connect with Bro Juda and 'see what you and Bro Juda can do'"; "Communications between the undercover agent (UCA) and other FBI personnel regarding the UCA's assessment that Simpson was 'of concern' regarding the Garland"; Communications indicating that the UCA thought about reaching out to Simpson to see where he was after their communications stopped, but he did not have authorization to do so." (CR 570 at 8-9.)

so through the testimony of FBI case agent Stewart Whitson to the effect that the note and loan were of no particular importance." (CR 570 at 12.) This assertion is entirely new and untimely. Further, it does not state a claim of post-trial disclosure of information. The information upon which Kareem bases his claim was disclosed prior to trial, and the testimony of SA Whitson occurred during trial.

Kareem inquired into further investigation of Nurse during cross-examination of SA Whitson. As the government pointed out in its previous filings on this issue, SA Whitson did not have personal knowledge of the Nurse investigation at the time of his testimony. Importantly, Kareem misrepresents SA Whitson's testimony. In that testimony, SA Whitson did not assign a degree of importance to the information. (RT 3/2/16 117-19.)

Moreover, Kareem's knowledge of this information is evident from his closing argument at trial.

> And Simpson says to him: Give this envelope to Saabir Nurse. Who is Saabir Nurse? He's a man that Simpson has worked with. Implication would be Saabir Nurse is the one who gave him the money. Then what happens? AK says: I give the envelope to Saabir Nurse. I give him the key to the car. Then what happens? Dunston Simpson says after my son died, Saabir Nurse gave me the title to my sons car and the key. Did the government put in any of that evidence? No. Because they don't want to know what the truth is. They want a conviction.

(RT 3/11/16 2830-31.)

> Who do I think provided him the money? Somebody by the name of Saabir Nurse. It seems pretty clear to me. But we're not getting to that answer because the FBI didn't follow up on it because they're not sure. Who got that registration to the car? I asked a lot of questions of Agent Whitson in this case because of my concern about the rush to judgment by the government.
>
> * * * *
>
> I want to show you Exhibits 55, 56, and 57. These were letters that were found in Soofi's and Simpson's apartment. Again, these were put in by the defense. They weren't put in by the government, although the government is the one that found them. These were letters written from an individual by the name of Abu Jihad who is a convicted terrorist who is in prison down in Florida and he clearly wrote this to Simpson. And for some reason, Simpson happened to have copies of letters from Abu Jihad to Saabir Nurse. He has two of them. The same Saabir Nurse. And we have his address that apparently got the registration to the car.

> That, apparently, is the one who loaned the money to Simpson or gave him the money for whatever he was going to do. And we've heard some testimony about were they going to go to a Marine base? I don't know where a Marine base is. I don't know if Saabir Nurse gave them money to buy the weapons or to go somewhere else, but it would appear that they decided to use that money to go to Texas and carry out this attack.

(RT 3/11/16 2843-46.)

Kareem finally proffers a speculative theory that the government timed the charges in his case and others to manipulate disclosure. This argument is baseless. It ignores the overwhelming evidence of guilt and the government's unwavering position that Kareem posed an immediate, grave threat to the community. (CR 14 at 15-16.)

None of the information to which Kareem points, either above or in any of his other post-trial filings, qualifies as Rule 16, Jencks Act, *Brady*, or *Giglio* material in this case. In addition, much of the information to which Kareem points was available through other sources that were included in the government's 3,236 Bates-numbered items of pretrial disclosure[2] in this case.

In all of his post-trial filings over the past three and one-half years, Kareem has yet to point to a single piece of evidence or witness statement that exonerates him in any way. Nor does Kareem point to actual favorable evidence to which the government's post-trial disclosures would have led him. Instead, he seeks to paint the investigation itself in a poor light, arguing that the perceived flaws in the conduct of the investigation would have led to a different result at trial. Although Kareem claims certain information would have exculpated him or undermined government witnesses' testimony, his arguments on these points are logically flawed and the government rebutted them in its previous responses to his post-trial filings.

---

[2] The disclosure was significantly more voluminous than the Bates numbering suggests. Among the disclosure were multiple terabyte-sized hard drives, CDs with audio interviews and forensic reports, and other similarly-voluminous items that received a single Bates stamp.

### The Evidence Against Kareem was Strong

As explained in further detail in the government's responses to Kareem's various post-trial filings, the government presented strong proof at trial to establish his guilt of the charges in the Second Superseding Indictment in this case. The evidence included testimony from multiple witnesses who knew Kareem and had regular interaction with him. Those witnesses established Kareem's support for violence against American soldiers and civilians, his watching of ISIS propaganda videos, his knowledge of and desire to attack the Garland contest, and his assistance to Simpson and Soofi in acquiring firearms and learning how to maintain them and shoot with them as they prepared to conduct an attack in the United States in support of ISIS. The government presented physical and electronic evidence at trial that corroborated those witnesses and that demonstrated Kareem lied when he testified in the trial.

### The Post-Trial Disclosures do not Undermine the Verdict

None of the information turned over to the defense post-trial serves to undermine the proof of Kareem's guilt. First, the information brought forth against Erick Jamal Hendricks did not show Hendricks was involved in the Garland attack. The evidence showed Hendricks encouraged an FBI undercover employee (UCE) to attack the contest. Separately, the evidence showed Hendricks communicated with Simpson approximately 10 days prior to the attack, and had the UCE communicate with Simpson on his behalf. Hendricks may have wanted to be involved in an attack on the Garland contest, but none of the evidence in this case or in Hendricks's case showed actual involvement in the Garland attack. Moreoever, even if Hendricks were somehow involved, such involvement would have occurred <u>after</u> Kareem engaged in the acts the government proved at trial in this case. This hypothetical conduct would not have absolved Kareem of his involvement in the conspiracy or otherwise have been relevant to Kareem's defense.

Second, the information from Saabir Nurse's phone records and travel records would not have benefitted Kareem in any way had it been disclosed prior to trial. Nothing in the records points to any involvement by Nurse in the Garland attack, directly or otherwise. The records do not add context to the indented letter ostensibly from Simpson to Nurse, or to any other evidence introduced in the trial in this case. They do not conflict with any witnesses' testimony or suggest the existence of other evidence favorable to Kareem. To date, Kareem has not shown how the records would have been useful.[3] He has not pointed to actual evidence or witness statements he would have discovered or introduced at trial. Instead, Kareem merely repeats his offensive speculation, arguing that making the Hajj pilgrimage would make a Muslim more likely to engage in violence. He also speculates that Nurse's access to money made it more likely that Nurse would have provided financial support to Simpson and Soofi to commit the Garland attack.

Kareem's claims about Nurse's apparent loan to Simpson and the government's further investigation of Nurse are mere speculation. Kareem has not offered any evidence to show the purpose of the loan. Likewise, Kareem has not offered any evidence to support his claim that the government "intended to open an investigation of Nurse as soon as Mr. Abdul Kareem's trial was over." Speculation is not newly-discovered evidence, and is not a proper ground for any post-trial remedy, especially dismissal.

**Kareem's Discovery and Exhibit Marking Argument is Improper and Fails**

Kareem complains about the timing of discovery and marking of trial exhibits in the case (CR 570 at 19) while blithely ignoring the fact that he pressed an expedited trial schedule in spite of warnings from government counsel that analysis of evidence was incomplete and additional reports were still being prepared. The Garland attack occurred on May 3, 2015, and trial in this case commenced February

---

[3] Notably, Kareem no longer seems to be pursuing his previous argument that Nurse's records would have led to his identifying John Sabari as Yahya after the government pointed to other disclosure in the case that provided the same information.

16, 2016 – approximately nine months and two weeks after the attack. During that time, agents interviewed hundreds of people and examined thousands of pieces of evidence and electronic devices from multiple search locations. The government expeditiously disclosed interview recordings, search warrant results, electronic device contents, reports, and various other documents during this time. As the government noted in its response to Kareem's original Motion for New Trial, a continuance would have been the proper remedy for late disclosure, either of *Brady* material or of the exhibits about which he also complains. *See United States v. Gamez*, 235 F.3d 453, 461-62 (9th Cir. 2000). Even with the knowledge that additional reports were forthcoming, Kareem pressed forward and did not file a motion to continue. He made a tactical choice not to seek a continuance, instead hoping for an acquittal, and then demanded a new trial when that decision failed to yield the desired outcome.

Kareem similarly ignores the fact that exhibits marked during the trial came from previously-disclosed material, and the reports disclosed during trial were recently-completed analyses of previously-disclosed material (CR 324; 324-1). The Court already ruled on this claim when it denied Kareem's original Motion for New Trial (CR 469 at 6, 11), and it is one of the subjects of Kareem's appeal. Raising the claim anew in this procedural posture is improper, as well as being well beyond the 14-day deadline for motions for new trial based on a claim other than newly-discovered evidence. Fed. R. Crim. P. 33(b)(2). For this reason, the government respectfully moves to strike this portion of Kareem's motion (CR 570 at 19, lines 6-12).

### Dismissal is not an Appropriate Remedy

"If the government's investigatory or prosecutorial conduct is reprehensible, but not quite a violation of due process, the district court may nonetheless dismiss an indictment under its supervisory powers." *United States v. King*, 200 F.3d 1207, 1214 (9th Cir. 1999). Thus, courts may dismiss an indictment under their inherent

supervisory powers (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct. *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010). "The defendant must demonstrate prejudice before the court may exercise its supervisory powers to dismiss an indictment." *Id*. at 1074-75.  Moreover, "a finding that the government has broken the law in the past is a necessary predicate to dismissal on the basis of deterrence of illegal government conduct." *Id*. at 1077.

Because "'[d]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority,' this sanction may be permitted only 'in cases of flagrant prosecutorial misconduct.'" *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (quoting *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991)). Accidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior. *Chapman*, 524 F.3d at 1085 (citing *United States v. Kearns*, 5 F.3d 1251, 1255 (9th Cir. 1993) (holding that even though the government's conduct "may have been negligent, or even grossly negligent," it did not rise to the level of flagrant misconduct)). This remedy is distinguishable from the new trial remedy in this regard – in the context of a new trial motion based on *Brady*, *Giglio*, or Rule 16, government counsel are charged with knowledge of information that is possessed by agencies tied to the prosecution team. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 435-442 (1995). Thus, "these supervisory powers remain a harsh, ultimate sanction [which] are more often referred to than invoked." *King*, 200 F.3d at 1214 (quoting *United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978)).

The nature of the defense claims and the post-trial disclosures in this case are strikingly different from those at issue in *Chapman*. In *Chapman*, the court summarized the relevant findings about the prosecutor's errors:

> The government egregiously failed to meet its constitutional obligations under *Brady* and *Giglio*. It failed to even make inquiry as to conviction records, plea bargains, and other discoverable materials concerning key witnesses until after trial began. It repeatedly misrepresented to the district court that all such documents had been disclosed prior to trial. The government did not admit to the court that it failed to disclose *Brady*/*Giglio* material until after many of the key witnesses had testified and been released. Even then, it failed to turn over some 650 documents until the day the district court declared a mistrial and submitted those documents to the court only after the indictment had been dismissed.

*Chapman*, 524 F.3d at 1090.

In contrast, the information at issue here was not *Brady* or *Giglio* information, nor did it fall within the scope of the government's Rule 16 disclosure obligations. Unlike the prosecution in the *Chapman* case, the government in this case maintained a detailed disclosure log, provided discovery letters with descriptions of the items being disclosed with each wave of discovery, and disclosed Jencks Act and impeachment information for each of its trial witnesses. The government disclosed a broad range of materials that were not necessarily within its discovery obligations, in the interest of transparency and providing a full picture of the case. The government continued to do so even after the conclusion of the trial in this case.[4]

Here, in comparison to *Chapman*, the information disclosed after the trial consisted of information that was not relevant to the issues or proof introduced in the trial. As this Court previously held, the government's disclosure of an FBI undercover employee's interactions with Elton Simpson and Erick Jamal Hendricks,

---

[4] As noted in the government's recent Sur-Reply, this voluntary undertaking by the government did not expand its discovery obligations. Federal Rule of Criminal Procedure 16(a)(2) makes plain that the government need not disclose internal reports and memoranda that do not fall within its discovery obligations set forth elsewhere in Rule 16; nor does it impose an obligation to disclose Jencks Act material in a manner different from that provided in the Jencks Act itself:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. §3500.

Fed. R. Crim. P. 16(a)(2).

> does not create any nexus between the undercover agent's investigation and Defendant. The disclosure does not call into question Defendant's involvement: watching videos with Soofi and Simpson, taking Simpson and Soofi shooting, or supplying Simpson and Soofi with firearms. Therefore, the disclosure is not exculpatory or material to his defense.

(CR 469 at 9.)

The same is true of information concerning Saabir Nurse. None of the later-disclosed information (passport and travel records and the content of Nurse's cellular telephone) would serve to call into question Kareem's involvement in the offense; nor would it serve to impeach any of the government's trial witnesses. Kareem offers speculative arguments about what the information would have helped him establish, but points to no actual evidence that he would have been able to offer to support that speculation.

Likewise, the pole camera footage would not have served to call into question Kareem's involvement. The camera was active from May 1-4, 2015, well after the dates covered in the testimony of the government's witnesses who established Kareem's participation in the conspiracies charged in this case. Therefore, the footage would not have contradicted any of the government's witnesses or evidence; nor would it have supported a defense in this case. Similarly, the footage would not have served as evidence to show the FBI investigation was shoddy or biased. Further, the evidence will show SA Whitson did not know of its existence until years after the trial.

In the end, if the Court does not deny the instant motion as untimely, the Court's decision on Kareem's Supplemental Motion for New Trial will govern its decision here in terms of whether the information disclosed post-trial fell within the government's pretrial discovery obligations. That said, even if the information did fall within the government's discovery obligations, the evidence will demonstrate that the government's failure to disclose the information was at most negligent, and certainly not reckless or intentional. Therefore, the exercise of supervisory power to dismiss the indictment would be inappropriate.

**Conclusion**

Based on the foregoing and the previous briefing on this subject (CR 324, 441, 550, & 577), the United States respectfully requests the Court deny Kareem's Motion to Dismiss as untimely, or alternatively on the merits, and declare that it does not raise a substantial issue to warrant a remand of jurisdiction from the Court of Appeals for the Ninth Circuit.

Respectfully submitted this 4th day of September, 2019.

> MICHAEL BAILEY
> United States Attorney
> District of Arizona
>
> *s/ Kristen Brook*
> *s/ Joseph E. Koehler*
> KRISTEN BROOK
> JOSEPH E. KOEHLER
> Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that true and accurate copies have been transmitted electronically to counsel for the defendant via the ECF system.

Daniel Drake & Daniel Maynard, Attorneys for Defendant

By: */s Joseph E. Koehler*