Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500
dmaynard@mmcec.com

Daniel R. Drake, No.003781
**DRAKE LAW, PLC**
4340 East Indian School Road, Suite 21-113
Phoenix, Arizona 85018
(602) 881-5341
drakelawplc@gmail.com

Attorneys for Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| United States of America, | 2:15-cr-00707-SRB |
|---|---|
| Plaintiff/Respondent, | **ABDUL MALIK ABDUL KAREEM'S REPLY TO MOTION TO DISMISS** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant/Movant. | |

The government opens its response by complaining that the defense is raising issues previously presented and rejected and is reformulating arguments. Yet as the Supreme Court directs, the materiality of evidence suppressed by the government is considered collectively. *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). Each new disclosure by the government adds to the collective impact of the previous failures to produce favorable information. The government's objection is blinkered and incorrect.

**The Motion to Dismiss is timely and appropriate.**

The government argues the motion to dismiss is untimely. It contends the only procedural mechanism available to Defendant is a motion for new trial, pursuant to Fed. R. Crim. P. 33. As the motion to dismiss was filed more than three years following the verdict, the government argues, it cannot survive as a Rule 33 motion because it is untimely. Thus, it continues, Defendant must await the opportunity to raise this in a motion to vacate pursuant to 28 U.S.C. § 2255.

Aside from the distastefulness of this argument coming after the Court has ordered an evidentiary hearing to explore why the government failed to disclose evidence it had in 2015 until 2019, the government's argument has no merit.

The defense argued that the government conduct in this case violated its obligations under Fed. R. Crim. P. 16(a)(1)(E)(i), the Jencks Act, and *Brady* and *Giglio*. It claimed under Rule 16(a)(1)(E)(i) the government had an obligation to produce documents and objects in its control material to preparing the defense, and failed to do so. Rule 16(d)(2) provides in pertinent part that, if a party fails to comply with the rule, the court may: "enter any other order that is just under the circumstances."

The defense has pleaded facts regarding the right to a new trial as a remedy for the government's *Brady* violations. The usual remedy for a *Brady* violation is a new trial, although the court may order dismissal under certain circumstances. The defense filed Doc. 570 because, as more and more favorable evidence has come trickling out of the government, it has become apparent this is a case where the Court should invoke its power to dismiss, not simply grant a new trial.

Just today it learned that Joshua Ryne Goldberg admitted that he promoted attacking the Garland, Texas, drawing contest, and later claimed credit for inspiring the attack. See Doc. 589, Exhibit 1, p. 19-20. Goldberg admitted that prior to the event he posted maps of the Curtis Culwell Center and urged anyone in the area to attack. Elton Simpson apparently copied Goldberg's post. And, after the attack, the FBI found an online post in which Goldberg claimed credit for inspiring the attack. *Id.* The defense was never made aware of this information in the FBI's hands, nor does it seem the prosecutor knew of it. However, had the defense had this information prior to trial it surely would have used it at trial. The failure to disclose this information is just the most recent Brady violation that could justify dismissal.

**The pattern of post-trial disclosures proves the withholding of information from the prosecutors, and other agents, cannot be negligent or inadvertent**

The prosecutors are chargeable with knowledge of all the evidence in the possession of the agencies assisting in the prosecution. Unfair as it may seem to sanction prosecutors for suppression of evidence they may know nothing about, the prosecutors are in the best position to ensure that they receive all the evidence from the investigating agencies. *Kyles*, 514 U.S. at 438.

As the defense learned August 20, 2019, agents of the government have purposely tried to make defense discovery difficult and thereby reduce their obligations under Rule 16, the Jencks Act, *Brady*, and *Giglio*. The government has structured its investigations to shield agents in one case or investigation from information developed by another agent in another investigation, creating silos of information. This concept of

compartmentalizing evidence cannot be inadvertent, especially given the way the FBI touts the importance of sharing information among law enforcement agencies. Nor can it be proper. *See Carey v. Duckworth*, 738 F.3d 875, 878 (7th Cir. 1984) (citing *Giglio v United State*s, 405 U.S. 150 (1972))

This approach shows a transparent attempt by the government to avoid duties imposed by *Brady*, *Giglio*, and Rule 16. The government explains that a particular agent, denominated the case agent on for one individual, has no personal knowledge of the investigation of another individual involved in the same course of criminal conduct.[1] Thus, because Agent Whitson was not the assigned agent on the investigation of Nurse until March 2016, he had no personal knowledge about that investigation. Doc. 582, p. 4. Nor were the Nurse documents relevant because they pertained to an unrelated investigation. Doc. 577, p. 8.[2]

**Nurse information**

The government argues SA Whitson's testimony that Simpson's note re loan from Nurse of "no particular importance." is not new, as it came up at trial. What is new is the testimony of SA Jensen showing that, to the contrary, the loan was significant. That new testimony puts SA Whitson's testimony in an entirely different light. SA Whitson was trying to minimize or cover up the "importance" of that incident. In contrast to SA

---

1 "However, because SA Whitson was not the case agent for Nurse during or prior to his testimony, he lacked personal knowledge of the details of the Nurse investigation." Doc. 577, p. 12; "Nor did Special Agent Jensen testify that he had any personal knowledge of the details of the Nurse investigation. He testified that he was one of the case agents investigating Wahid, not one of the agents investigating Nurse.

2 It asserts there was no relevance because the charges in Wahid's case were different. Why, then, did it present many of the same witnesses and much of the same evidence at both trials?

4

Whitson's testimony, and consistent with SA Jensen's, the government issued grand jury subpoenas for credit reports from all three reporting agencies regarding Simpson, Soofi, Wahid, and Kareem; subpoenas for bank records and money transfer agencies like Western Union, MoneyGram International, and Net Spend; and subpoenas for insurance policies, all within 30 days or less following the attack.  Bates #436.

The government seeks to justify SA Whitson's response suggesting he "did not have personal knowledge of the Nurse investigation at the time of his testimony." However, once he became the case agent on the Nurse investigation in March 2017, SA Whitson did not disclose to the prosecutors that in September 2015 Nurse's phone had been imaged, his passport copied, and Nurse interviewed.  Once the prosecutors learned these facts from another agent, they disclosed them to the defense.

The government faults the defense for failure to produce record more substantive evidence about Nurse, his finances, and the loan to Simpson.  We have a reasonable belief, based on SA Jensen's testimony and the grand jury subpoenas issued in this case, that the government has such information as to Nurse but has withheld it.

Again, the government argues that information concerning Nurse was not material or persuasive given the strong evidence in this case.  Doc. 582, pp. 4-6, 7.  It uses the wrong standard.  *See Comstock v. Humphries*, 768 F.3d 701, 713 (9th Cir. 2015) (evidence that undermines the prosecution's theory of the charged offenses is plainly material, exculpatory evidence under *Brady*).  The government consistently argues its view of the strength of the evidence, as though that should end the inquiry.  It has it

wrong. As the Court observed in *Kyles*, 514 U.S. at 434-35, the test of materiality is not a sufficiency of the evidence test. The defendant need not demonstrate that, after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough to convict. Yet that is what the government urges. Doc. 582, p. 6.

**Speedy trial and the timing of prosecutions**

The government next argues that the timing of the prosecutions had nothing to do with efforts to manipulate disclosures, because that would ignore overwhelming evidence of guilt and the fact Kareem posed a threat to the community. Doc. 582, pp. 7-8. This misapprehends the defense argument. The argument is not that the FBI should be embarrassed; it is that because the FBI was embarrassed it wanted to bring someone to trial regarding the attack, was biased against Abdul Kareem, and that bias played out in its interactions with witnesses – Ali Soofi's interviews becoming more and more accusatory over time – and the suppression of evidence – the pole camera video, for instance. Even though the government's investigation of Hendricks appeared more complete in mid-2015, the government proceed first as to Abdul Kareem. By doing so, it kept from his trial attorneys information that surfaced in Hendricks's case and later in Wahid's.

The prosecution complains about the speed with which this case proceeded to trial, suggesting all the problems of marking exhibits and handling discovery are the defense's fault. Not so. Defendants have a Sixth Amendment right to a speedy trial, especially where the government confines them in isolation prior to the trial. The Speedy Trial Act, 18 U.S.C. § 3161, et seq, helps ensure that right is respected. The government should

6

have known when it sought the indictment in this case that it might face a trial in 70 days and should have been prepared for that eventuality. It would have seemed more reasonable for the Hendricks case to proceed first, but that is not what the government chose. And that makes one wonder why.

**Legal Discussion**

The Department of Justice policy regarding criminal discovery explains that "it is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all members of the prosecution team." See United States Attorneys' Criminal Resource Manual, Guidance for Prosecutors Regarding Criminal Discovery, § 165 (Jan. 4, 2010), available at https://www.justice.gov/jm/criminal-resource-manual-165-guidance-prosecutors-regarding-criminal-discovery (last visited September 16, 2019). It further clarifies that "members of the prosecution team include federal, state, and local law enforcement officers…participating in the investigation and prosecution of the criminal case against the defendant." *Id*.

It has been settled for decades that "[t]he government has a duty to disclose Brady material even in the absence of a request by the defense." *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (citing *Kyles*, 514 U.S. at 433).

The mixed significance of evidence does not relieve a prosecutor of the obligation to disclose the evidence. Thus, a prosecutor may not "cherry-pick[] isolated references" in a report or statement in order to characterize it as inculpatory and therefore not subject to *Brady* disclosure. *Bailey v. Rae*, 339 F.3d 1107, 1115 (9th Cir. 2003). "To say that evidence is 'exculpatory' does not mean that it benefits the defense in every regard or

that the evidence will result in the defendant's acquittal. Rather, the preliminary inquiry in a *Brady* claim has always been whether the evidence in question is 'favorable' to the accused." *Id*.

The prosecution's duty to reveal favorable, material information extends to information that is not in the possession of the individual prosecutor trying the case. *Kyles*, 514 U.S. at 441–42. Interpreting *Kyles*, the Ninth Circuit has observed that "[b]ecause the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir.1997) (en banc). The duty to disclose this information exists regardless whether the defense made any request of the prosecution; the prosecution is required to provide material, favorable information even "where the defendant does not make a *Brady* request." *United States v. Bagley*, 473 U.S. 667, 680–82 (1985).

This Court may dismiss an indictment with prejudice under two different theories: "[First, a] district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. [Second, i]f the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) (quoting *United States v. Barrera–Moreno,* 951 F.2d 1089, 1091 (9th Cir.1991). Under either theory, however, because "[d]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority," such a sanction is permitted

8

only "in cases of flagrant prosecutorial misconduct." *United States v. Simpson,* 927 F.2d 1088, 1090 (9th Cir.1991).

Under the second theory, a district court may exercise its supervisory power to dismiss an indictment to "implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *Chapman*, 524 F.3d at 1085 (quoting *U.S. v. Simpson,* 927 F.2d 1088, 1090 (9th Cir. 1991)).

In *United States v. W.R. Grace,* 526 F.3d 499, 511 n. 9 (9th Cir. 2008), the Ninth Circuit abrogated *Simpson* as court there read the court's decisions too narrowly; a court's supervisory powers are not limited to these three grounds. *Id*. Courts must consider whether to exercise their supervisory power to dismiss an indictment on a fact-specific, case-by-case basis. *United States v. De Rosa*, 783 F.2d 1401, 1406 (9th Cir. 1986); *United States v. W.R. Grace*, 526 F.3d 499, 511 n. 9 (9th Cir.2008). A court may dismiss an indictment under its supervisory powers only when the defendant suffers "substantial prejudice," and where "no lesser remedial action is available." *Chapman*, 524 F.3d at 1087. Such decisions are reviewed for an abuse of discretion on appeal. *Id*. at 1084–85.

Aside from the authority of *Brady* to dismiss, another ground for dismissing an indictment is to preserve judicial integrity. *Simpson*, 927 F.2d at 1090 (9th Cir. 1991). This ground vindicates a district court's substantial discretion over what happens inside the courtroom. *See id*. at 1091 ("The supervisory power comprehends authority for the

courts to supervise their own affairs, not the affairs of the other branches; rarely, if ever, will judicial integrity be threatened by conduct outside the courtroom that does not violate a federal statute, the Constitution or a procedural rule.").

Yet another ground for dismissing an indictment is to deter future illegal conduct. *Simpson*, 927 F.2d at 1090 (9th Cir. 1991). Dismissal pursuant to this ground is appropriate when a court has determined that the prosecution engaged in illegal conduct and wishes to deter future illegal conduct by dismissal. *United States v. Struckman*, 611 F.3d 560, 576–77 (9th Cir. 2010) ("a finding that the government has broken the law in the past is a necessary predicate to dismissal on the basis of deterrence of illegal government conduct.");

The government argues this case is different factually than *Chapman*, and so it is. Its guidance is sound. There, after 25 witnesses testified 650 pages of *Giglio* material (mostly compromising criminal history) were given to the defense. The district court found timely disclosure would have enabled the defense to use the *Giglio* information as to 3 of the 25 witnesses. *Chapman*, 524 F.3d at 1079.

Here, the prosecutors have turned over more than 1,000 pages of information that they never knew about prior to or during trial, they say. This explanation or apology is not well taken. The individual prosecutors are charged with the same knowledge as their investigative agencies. It can be no excuse that the investigation of Nurse may have been unrelated to the investigation of Simpson or the investigation of Kareem, or that a difference agent was involved in the application for the pole camera than the agent at

trial. *Giglio* clearly disposes of those claims. The prosecutors and the FBI investigators belong to one and the same agency, the Department of Justice. This is why the government's continued argument that the prosecutions of Abdul Kareem, Hendricks, and Wahid are separate or unrelated is unavailing. Yet that has been the government's constant refrain.

The government continues, arguing that Hendricks involvement, since it came after Abdul Kareem's involvement, would not have been exculpatory or otherwise relevant to the defense. Doc. 582, p. 6. Abdul Kareem asserted he was not the mastermind, planner, or bankroller of the attack, contrary to the government assertion that he was. Evidence that Hendrick encouraged the UCA to "go make his voice heard," fits right into that defense, and undermines the government's theory. So, too, with Goldberg's encouragement and claim of responsibility. It shows that other forces were acting on Simpson and Soofi. Evidence that others were promoting the attack, coupled with Abdul Kareem's denials that he was, might have caused a reasonable juror to pause, as it places the government's evidence in a new light.

Information from Nurse's phone and travel records would not have benefitted Abdul Kareem in any way, the prosecution argues. Doc. 582, p. 7. At the outset, we only know that the government had an open investigation of Nurse because the government said so, telling us that from April 27, 2016 to November 7, 2017, Agent Whitson was the case agent for the investigation. Doc. 550, p. 17, n. 9. Perhaps the Nurse investigation was opened prior to April 2017. It is reasonable to believe that the Nurse investigation

was initiated much earlier than the government has indicated, more likely in May or June 2015 when the note, loan, and car keys first came to light. That federal authorities tracked Nurse in and out of the county in May and September 2015, and searched his cell phones on two such occasions, supports that belief. Yet it was not until May 17, 2019, that the government first disclosed there was any investigation of Nurse.

If the government acted as retired Agent Jensen suggested they would, and as they did in this case, then there should be credit reports, bank records, and money transfer records pertaining to Nurse that the government had well before trial in this case and has not made available. Those records, as the travel and phone records do, would have impeached Agent Whitson's testimony at trial and shown it to be suspect or purposely misleading, as well as given concrete support to the defense argument that others, likely Nurse, were the "bankroller" for the Garland attack, not Abdul Kareem.

The government's attempts to compartmentalize investigations and knowledge is unsuccessful from a legal standpoint (*See Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984) but, to a defendant attempting to learn of favorable and material evidence that counters the government's theory of the case and supports his innocence, it is wildly successful.

**Conclusion**

The fact that the new, favorable, material evidence continues to come to light is not troubling, it is outrageous. Anything short of dismissing this case with prejudice implicitly conveys to the prosecution and their investigators that casual disregard for their constitutional obligations and the rights of an accused is acceptable conduct. It invites

more of the same conduct.

RESPECTFULLY SUBMITTED this 16th day of September 2019.

**MAYNARD CRONIN ERICKSON CURRAN & REITER, P.L.C.**

By /s/Daniel D. Maynard
    Daniel D. Maynard
    3200 North Central Avenue, Ste. 1800
    Phoenix, Arizona 85012
    Attorneys for Defendant/Appellant

**DRAKE LAW, PLC**

By /s/Daniel R. Drake
    Daniel R. Drake
    4340 East Indian School Road
    Suite 21-113
    Phoenix, Arizona 85018
    Attorney for Defendant/Appellant

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrants:

AUSA Joseph E. Koehler and AUSA Kristen Brook

Additionally, a copy was served upon Mr. Abdul Kareem by first class letter, postage prepaid, at:

Abdul Malik Abdul Kareem #44126-408
FCI Florence
Federal Correctional Institution
PO Box 6000
Florence, CO  81226

/s/Daniel R. Drake
Daniel R. Drake