MICHAEL BAILEY
United States Attorney
District of Arizona

KRISTEN BROOK
Arizona State Bar No. 023121
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: kristen.brook@usdoj.gov
Email: joe.koehler@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> Abdul Malik Abdul Kareem, <br><br> Defendant. | No. CR-15-00707-01-PHX-SRB <br><br> **HEARING MEMORANDUM** |

The United States, through undersigned counsel, respectfully submits this Memorandum summarizing the evidence the government anticipates will come out during the course of the October 15, 2019, evidentiary hearing.

The government acknowledges that the pole camera video is something undersigned counsel would have disclosed if they had personal knowledge of its existence prior to trial in this case. The government disclosed an extraordinary volume of evidence in the case, including numerous reports that the defense used during cross-examination at trial. Neither the agents nor government counsel had a motive to conceal the pole camera recording. The video offered but one small detail – that Kareem was not seen entering or exiting the west breezeway entrance leading

to Simpson's apartment between approximately 1:26 p.m. and approximately 9:30 p.m. on May 1, 2015, the last time Simpson and/or Soofi were potentially identified in the camera footage. That detail was consistent with the other evidence in the case as well as the government's trial presentation, and no one had any reason to conceal it.

**Testimony of Special Agent Fryberger**

FBI Special Agent (SA) Amy Fryberger will testify that the FBI's case on Elton Simpson was closed in November 2014 and reopened on or about March 2, 2015. The FBI reopened the case after intelligence revealed Simpson was engaged in online communication with other FBI subjects, and specifically a subject located outside the United States who was fighting for a designated terrorist organization overseas. SA Fryberger joined the investigation on April 6, 2015. Agents were in the beginning stages of the reopened investigation when Simpson and Soofi attempted to attack the Garland contest.

SA Fryberger further will testify that FBI conducted sporadic surveillance on Simpson between March 2, 2015, and May 1, 2015, in order to develop information about Simpson's life pattern and associates. The surveillance generally occurred at Simpson's apartment at 13850 North 19th Avenue, Apartment 219, Phoenix, Arizona. The specific dates of surveillance were:

| Date | Time | Note |
|---|---|---|
| March 10, 2015 | | Spot surveillance (drive through complex to spot vehicles) |
| March 11, 2015 | | Spot surveillance (same) |
| April 1, 2015: | 6:50 a.m. to 8:15 a.m. | Special Agent observed Simpson's vehicle in the parking lot north of Building 30 (Simpson's building). |

| | | |
|---|---|---|
| April 3, 2015: | 1:00 p.m. to 5:00 p.m. | At 1:00 p.m. Simpson left his apartment and got into Nadir Soofi's dark Chevy, AGV6488. At 3:20 p.m. Soofi's dark Chevy returned to the Wingate Apartment complex and parked in space 208.[1] |
| April 11, 2015: | Noon to 1:30 p.m. | Surveillance witnessed Simpson leave the Wingate Apartment complex at 11:56 a.m. and drive to a park at 75th Ave and Greenway. He met with two people. Agents performed research and identified one of the two people. |
| April 24-25, 2015 | 12:41 p.m. April 24, 2015, to 11:32 a.m. April 25, 2015. | Round-the-clock surveillance in anticipation of the Pat Tillman run in Tempe, Arizona, on April 25, 2015. Agents followed Simpson to a park and saw him talking to people and holding a young child before terminating surveillance after the Tillman run concluded. |
| April 26, 2015: | 7:24 a.m. to 7:35 a.m. | Simpson's and Soofi's vehicles seen in the parking lot |
| April 27, 2015: | 7:24 a.m. to 8:20 a.m., 8:29 to 9:59 a.m. | Simpson's and Soofi's vehicles seen in the parking lot; later, Soofi's car no longer present. |

---

[1] The complex is now called Latitude Apartment Homes.

Agents conducted spot checks, or brief surveillance check-ins, on additional dates but the spot checks did not result in the generation of reports.

The apartment complex where Simpson and Soofi resided consisted of two adjoining apartment complexes near the corner of 19th Avenue and Thunderbird Road in Phoenix. (*See* Exhibit 1, Apartment Complex Map.) Most of the buildings (including Simpson's) in both complexes consisted of two-story units with a total of 16 individual apartments per building. Each building of that type has two breezeways that each lead to four downstairs and four upstairs apartments. Each breezeway has two entrances, on opposite sides of the building. Thus, one could access the front door of any apartment in the building from either side of the building. Simpson's apartment, number 219, was a downstairs apartment on the east side of Building 30. The apartment patio faced an interior courtyard in the apartment complex.

The sporadic physical surveillance detailed above revealed very little activity on Simpson's part, and did not yield significant results aside from identifying Nadir Soofi as Simpson's roommate. SA Fryberger and others performing surveillance were, for the most part, new to the Simpson case and did not know who his current or former associates were. These agents did not know of Simpson's past or present association with Kareem, and would not have taken note of Kareem unless they saw him and Simpson together.

In addition to the physical surveillance, SA Fryberger requested installation of a pole camera as a surveillance tool on April 9, 2015, but the camera was not installed until May 1, 2015. SA Fryberger submitted the pole camera request electronically, and it was approved electronically the same day.[2] The authorization did not generate a paper form, and was stored in a sub-file of the Simpson electronic

---

[2] The government is disclosing to the defense in advance of the hearing a screen print of the pole camera request along with the surveillance reports referenced above and the activity log and pole camera screen shots referenced below.

case file, which contained thousands of entries.  At the time, SA Fryberger did not have information indicating Simpson posed an immediate threat to public safety.  Installation of a pole camera takes time – a technician must perform a site survey to identify a suitable location for the camera, followed by a covert installation.

The FBI installed only one pole camera, and the camera did not have a view into (or through) the breezeway leading to Simpson's apartment.  It had a view from the southwest that only showed the west entrance to the breezeway.  The camera did not show the east side of the building – the side on which Simpson's apartment was located.  The camera did not show the parking lot area where Simpson parked his car, which was located to the north of Building 30 at a location that was obscured from the camera's view.

The pole camera footage did not show that the entrance on which it had coverage was in fact the west entrance to a breezeway that gave access to Simpson's apartment from two directions.  This meant that Simpson, Soofi, and others could come and go from the apartment through the courtyard on the east side of the building without being seen on the pole camera.[3]  The FBI did not have physical surveillance on Simpson on May 1, 2015.

The pole camera footage streamed to a computer at SA Fryberger's desk, but she was not viewing it on May 1, 2015, or over the ensuing weekend. Agents planned to take advantage of the ability to watch the video in fast-forward mode as a time saver, pausing the video when Simpson came into view so they could identify anyone else with him.  On Sunday, May 3, 2015, SA Fryberger was out of cell phone range the majority of the day, and did not come back into range until later in that evening.

After learning of the Garland attack on May 3, 2015, SA Fryberger went to the FBI Phoenix field office and viewed the pole camera video from the equipment

---

[3] It also meant that people from seven other apartments and their guests, as well as people merely passing through the breezeway, might also be seen in the video.

at her desk as other agents prepared to execute a search warrant (No. 15-6212MB) at the Simpson/Soofi apartment. Agent Fryberger did not note anything of evidentiary significance in the video footage. She did not go back through the footage again, although she or a co-case agent did arrange for an FBI intern to go through it and create a spreadsheet showing times at which persons were seen in the video and along with screen shots of activity seen in the camera footage. This occurred on May 7, 2015, prior to the hard drive containing the recording being logged in to evidence.

Because SA Fryberger had not seen anything of evidentiary significance in it, she did not draw attention to it in meetings or discuss the pole camera footage with SA Whitson when he became case agent on the Kareem investigation on May 8, 2015. She did not write a report (electronic communication or FD-302) about the pole camera footage. SA Fryberger was not involved as a case agent for the Kareem prosecution and was unaware of what items would have been turned over to prosecutors for discovery.

### Testimony of Special Agent Baker

SA Jon Todd Baker became the case agent on the Kareem investigation on November 7, 2017, and ended his participation in the investigation on December 11, 2018, when he transferred squads at the FBI. During his tenure as case agent, the prosecutors in the case sought his assistance in locating the "alert" or "lookout"[4] referenced in Kareem's Supplemental Motion for New Trial, as well as materials related to the trial of Erick Jamal Hendricks that were referenced in the same motion. In November 2018, while searching for the "alert," the prosecutors reviewed internal FBI documents prepared by persons not connected to the investigation, and noted a reference to a pole camera at the Simpson/Soofi apartment complex. The prosecutors asked SA Baker to track down information about the pole camera. SA

---

[4] This turned out to be a Tactical Intel Report sent from FBI Phoenix to FBI Dallas on May 3, 2015. (CR550 at 9-10.)

Baker did so. He found the FBI intern's activity log and screenshots. Within a couple of weeks, SA Mullen became the case agent. SA Baker did not know of the pole camera's existence until he learned of it during the search for the "alert." SA Baker was unable to locate the "alert" itself.

**Testimony of Special Agent Mullen**

On December 11, 2018, SA Ryan Mullen became the FBI case agent for the Kareem investigation. On or about January 24, 2019, prosecutors requested SA Mullen obtain a copy of the pole camera footage acquired during the Simpson investigation for discovery purposes in the Kareem investigation. On January 24, 2019, SA Mullen contacted the FBI Phoenix Field Office (PX) Electronic Surveillance Unit (ELSUR) and requested a copy of pole camera footage be made. SA Mullen subsequently requested FBI PX ELSUR make two additional copies of the pole camera footage for review purposes on or about May 02, 2019 and August 21, 2019.

SA Mullen reviewed the Kareem investigation electronic ELSUR evidence log for evidence item 1D294, which is described as, "Original hard-drive containing pole camera recording taken at 13850 N. 19th Ave., #219, Phoenix, AZ from 5/1/15 @ 13:26:40 to 5/4/15 @ 10:19:41." (Exhibit 2, ELSUR Evidence Log.). The electronic ELSUR evidence log indicated evidence item 1D294 was initially acquired and entered into ELSUR evidence on May 11, 2015. Item 1D294 has never been removed from ELSUR evidence, but as previously stated three copies were made for discovery and review purposes.

SA Mullen also interviewed an electronic surveillance technician to learn more about the video stored on the hard drive, including whether the hard drive contained video from more than one pole camera associated to this case. He learned from the pole camera technician that pole cameras are labeled with a number (i.e., "Camera 2" or "Camera 3"). The camera system is capable of storing video from more than one camera simultaneously, including cameras from different cases

recording simultaneously. Video from separate cases would be stored on separate hard drives. Additionally, if the hard drive were storing video from more than one camera in the same case, the video from the different cameras in the same case would appear in boxes in the video player so that a person viewing could switch from one camera view to another within the player. Conversely, if only one camera were recording, the video player would display only that one camera. The video in this case only shows one camera view, which confirms that only one camera was recording video at the Simpson apartment from May 1-4, 2015.

### Testimony of Special Agent Whitson

SA Whitson will testify that he became case agent on the Kareem investigation on May 8, 2015. He never was case agent on the Simpson investigation. SA Whitson had access to the Simpson electronic case file and searched it for information relevant to the Kareem investigation. The Simpson electronic case file contained 35 sub-files and thousands of items dating back to the original investigation that led to Simpson's 2010 conviction. SA Whitson did not see the pole camera request or learn of the existence of the pole camera video from his review of the Simpson electronic case file. SA Whitson likewise did not learn of the pole camera from SA Fryberger. SA Whitson learned of the pole camera's existence in January to February 2019, when undersigned counsel asked about it. SA Whitson has not viewed the pole camera footage.

SA Whitson took an expansive view toward identifying items to forward to the prosecutors in the case to review as potential discovery in the case. If an item appeared to be remotely relevant to the case, SA Whitson would turn it over to the prosecutors in the case. Had SA Whitson noted a reference to the pole camera, he would have followed up and obtained the pole camera recording so it could be disclosed if it contained any remotely relevant information. Even if the video were blank, SA Whitson would have at a minimum notified the prosecutors of that fact

and provided the blank recording to them. If requested, he would have written a report to document the fact of the blank video recording.

### Conclusion

Based on the foregoing, the government respectfully submits the testimony and documentary evidence will establish that agents inadvertently overlooked the pole camera footage as they moved forward with the broad and fast-moving investigation. This was because the camera footage did not reveal significant activity and was not capable of showing all people going to and from the Simpson/Soofi apartment. As a result, the Simpson case agents did not note anything significant in the video and did not mention it directly to SA Whitson or in meetings at which he was present. SA Whitson did not learn of the video prior to 2019; if he had noticed its existence prior to trial, he certainly would have obtained it and turned it over to the prosecutors in the case. Likewise, undersigned counsel would have disclosed the video to the defense in this case if they had personal knowledge of its existence.

That said, because the pole camera did not offer a view of both entrances that led to the Simpson/Soofi apartment, the absence of any given individual in the video bore little or no relevance to whether that individual visited the Simpson/Soofi apartment on May 1, 2015. Further, the government never asserted that Kareem visited the apartment after Ali Soofi moved out (no later than early April 2015) or that Kareem would have been present at the apartment on May 1, 2015. For all of these reasons, the pole camera footage did not constitute *Brady*, *Giglio*, or Rule 16 material in this case. Therefore, the failure to disclose the video, although certainly a mistake, does not warrant a new trial either standing alone or in combination with any of the other information disclosed since the trial in this case. Because the failure to disclose the video was unintentional, the failure to disclose likewise does not justify an exercise of the Court's supervisory power to dismiss the case.

Respectfully submitted this 3rd day of October, 2019.

                              MICHAEL BAILEY
                              United States Attorney
                              District of Arizona

                              *s/ Kristen Brook*
                              *s/ Joseph E. Koehler*
                              KRISTEN BROOK
                              JOSEPH E. KOEHLER
                              Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

     I hereby certify that on the 3rd day of October, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that true and accurate copies have been transmitted electronically to counsel for the defendant via the ECF system.

Daniel Drake & Daniel Maynard, Attorneys for Defendant

By: */s Joseph E. Koehler*