United States v. Abdul Malik Abdul Kareem
CR 15-0707-SRB

# EXHIBIT B

Government Disclosure Letters



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Main Office Fax: (602) 514-7693

July 26, 2018

Daniel Maynard
3200 N. Central Ave., Suite 1800
Phoenix, AZ 85012
*Sent via Fax: (602) 279-8500*

Daniel Drake
4340 E. Indian School Rd., Ste. 21-113
Phoenix, AZ 85018
*Sent via Fax: (602) 840-9685*

Re: *United States v. Abdul Malik Abdul Kareem,* CR15-00707-PHX-SRB

Dear Mr. Maynard:

Attached please find the government's supplemental disclosure regarding the above referenced matter consisting of:

1. Bates #867-898

The attached disclosure consists of email messages and a post-event review conducted by the FBI's Inspections Division that were previously classified. The materials were declassified and turned over as Jencks material in connection with the trial of Erick Jamal Hendricks earlier this year. We obtained them from the USAO in the Northern District of Ohio last week. We believe the information in the emails and Inspections Division report is set forth in the Hendricks complaint as well as the trial testimony of the undercover employee and the previously-disclosed messages between the undercover employee and Hendricks. We are disclosing it to you in an effort to provide transparency in light of the arguments set forth in your Supplemental Motion for New Trial.

This material, consistent with all disclosure in this case, is subject to the existing protective order in this case.

Sincerely,

JOHN S. LEONARDO
United States Attorney
District of Arizona

*s/ Joseph Koehler*

JOSEPH KOEHLER
Assistant United States Attorney



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Main Office Fax: (602) 514-7693

January 25, 2019

Daniel Maynard
3200 N. Central Ave., Suite 1800
Phoenix, AZ 85012
*Sent via email*

Daniel Drake
4340 E. Indian School Rd., Ste. 21-113
Phoenix, AZ 85018
*Sent via email*

Re: *United States v. Abdul Malik Abdul Kareem,* CR15-00707-PHX-SRB

Dear Mr. Maynard & Mr. Drake:

We are responding, to the extent that we can, to your discovery request letter dated September 6, 2018. We informed you telephonically on September 10, 2018, that we had reviewed the unredacted version of the Inspections Division report, and that we were working with the FBI to release additional material from the report. As we stated then, this is material we believe to be favorable to the government and not exculpatory, impeachment, or Rule 16 material. Nothing in the redacted material in the Inspections Division report is exculpatory. We continue to pursue authorization to release the additional information in some fashion.

With respect to your asserted "defense" that the FBI was embarrassed because of its failure to prevent the attack and therefore targeted Mr. Kareem as a scapegoat, this is not a defense to the charges in the case. Rather, it is an argument for jury nullification despite the independent proof in the government's case. Importantly, Mr. Maynard asserted this argument in his closing at trial. He pointed to evidence that was admitted during the trial and argued it showed the FBI should have been aware of Simpson's proclivities and stopped him before the attempted attack took place. RT 3/11/16 at 3-4, 55-59. Indeed. Mr. Maynard specifically argued that the FBI sent an alert about Simpson prior to the contest:

> But the FBI seems to have known sometime on May 2nd or May 3rd, at least, at least as of May 3rd, that he was traveling to Dallas, Texas, or Garland, Texas, to commit an act of terror.
>
> They sent his picture. They sent information concerning what the car looked like. And it did no good. They were embarrassed by this. So they went out and they started looking. And they did the right thing. Was there anybody else involved? Was this just two people? Or were there more?

> But what happened is after they interview Stefan Verdugo, my client becomes the target and all the resources, everything else, is geared towards looking at and convicting him. Not getting to the truth, not getting to what really happened, but let's get a conviction.

RT 3/11/16 at 3-4.

The current discovery request not only appears to be in the same vein, but it also pertains to non-relevant information that does not qualify as Rule 16, *Brady*, Jencks or *Giglio* information. Putting the FBI on trial by drawing the jury's attention to the FBI's awareness of Simpson was simply a way of seeking jury nullification by distracting the jury from the evidence relevant to Mr. Kareem's guilt or innocence.

The government's proof at trial came in the form of testimony from various private individuals who had contact with Mr. Kareem, Simpson, and Soofi, and whose testimony the jury credited. The defense had access to ample evidence to show that Simpson was on the FBI's radar prior to May 3, 2015, and both the defense and the government presented substantial evidence of that during the trial, including evidence concerning the FBI's raid on the Cochise residence during 2012 and testimony elicited during Mr. Maynard's cross-examination of S/A Whitson.

The paragraphs below address the numbered paragraphs in your letter:

1. The evidence of Simpson's communications as requested in paragraph 1 of the letter has been disclosed. Simpson's Twitter communications that were recovered by the FBI, including those from his @tawaakul and The Sword and the Tongue accounts, were all disclosed on Bates # 436, the 1TB hard drive, on October 13, 2015. Discovery page 635, disclosed November 6, 2015, contains the names of the various Twitter accounts for which the FBI obtained search warrants. Moreover, discovery pages 1677 through 1682, disclosed January 29, 2015, consisted of a report by Investigative Analyst Gregory Neville (one of the government's trial witnesses) titled "Simpson's Use of Twitter as a Means of Expressing Radical Beliefs." This report described Simpson's various Twitter handles and the communications in which he engaged that demonstrated his radical beliefs.

Simpson's encrypted media communications via Surespot handle juba1911 were disclosed in the post-trial disclosure that was the subject of Mr. Kareem's supplement to his original motion for new trial. No additional message content is available because the Surespot communications are encrypted and not recoverable via search warrant from Surespot. Further, Simpson had deleted his other Surespot accounts, including known accounts juba2 and juba 8021. The only available Surespot data other than the UCE's screenshot preservation of messages was the message count between Simpson and other users. A report previously disclosed at Bates-stamped discovery pages 1887-1894 on January 29, 2016, noted that Simpson engaged in at least 209 Surespot communications with Miski leading up to the attack, with at least 103 messages being exchanged on the day of the attack, May 3, 2015. Although the government could not recover the content of these encrypted messages, it did offer trial exhibits featuring Twitter direct messages between Simpson and Miski that showed Miski telling Simpson that

ISIS was encouraging attacks within the United States. Simpson's association with Miski was public knowledge shortly after the attacks. *See* https://www.counterextremism.com/extremists/elton-simpson.

2. As Judge Bolton found in her order denying the motion for new trial, the specific actions the FBI took in pursuing leads regarding Simpson prior to May 3, 2015, are not relevant to the elements of the offenses with which Mr. Kareem was charged, nor do they serve to impeach any government trial witness. All Jencks material concerning the government's trial witnesses, including SA Stewart Whitson, has been disclosed. Impeachment of S/A Whitson about the actions (or lack thereof) of other agents during the trial would have been improper hearsay. Merely stating (as Mr. Maynard did during trial) that as the case agent S/A Whitson would know of and be able to comment on the actions of others involved in the investigation does not overcome the strictures of the hearsay rule.

3. Ms. Theobald's research to identify Simpson as the user of "The Sword and the Tongue" and Surespot IDs juba2 and juba 8021 was not relevant evidence at trial. The government laid other foundation to connect Simpson to those accounts and disclosed the underlying information about those accounts on October 13, 2015, as described above. Ms. Theobald's research was not Jencks or *Giglio* material because she did not testify. The research, which we have not seen, would not have been *Brady* material merely because it did not show online activity associated with Mr. Kareem. The government never contended, nor did the evidence at trial in any way suggest, that Mr. Kareem was a participant in any social media or other electronic communication concerning the Garland attack or that he engaged in any form of electronic communication concerning ISIS, etc. The government's proof concerning Mr. Kareem's activities consisted of evidence of in-person communications and conduct. The government established at trial that Simpson was the person with the online presence and who was communicating with ISIS-affiliated persons such as Mohamed Abdallahi Hassan, aka "Miski," and Junaid Hussain.

4. The government has disclosed reports and evidence[1] supporting S/A Jane's statement about thinking "juba1911 should be of concern." *See* Jane's prior message that same day, which was in the same batch of supplemental discovery (Bates pp. 867-898). S/A Jane did not communicate with Mr. Kareem; therefore, the lack of any statements of S/A Jane with respect to Mr. Kareem is not exculpatory or impeachment material for the same reasons set forth above.

5. S/A Jane's communications within the chain of command concerning his planned trip to Garland, Texas, is not relevant under Rule 16 or *Brady*, nor does it constitute *Giglio*/Jencks material. The transcripts from the trial of Erick Jamal Hendricks support S/A Jane's belief that he was going to Texas in order to bolster his credibility with Hendricks and that he did not anticipate encountering a "PX subject" in Texas. As Jane testified, he was not armed when he was in Garland, Texas. His movements

[1] No Jencks Act evidence exists regarding S/A Jane with respect to Mr. Kareem's trial because S/A Jane did not testify at that trial. Although the Jencks Act does not apply to S/A Jane's declaration or reports, we have endeavored to provide his reports and statements to you in this case in the interest of full disclosure.

were controlled, including his obtaining permission from the on-scene agent to move closer to the event to take photos to prove to Hendricks he had been at the event. As previously mentioned, we continue to work with the FBI to release additional information about S/A Jane's presence in Garland, Texas. We anticipate the additional information would corroborate S/A Jane's assertion that he did not anticipate encountering Simpson.

6. As stated above, the identity of the persons to whom S/A Jane communicated about his perception that Hendricks wanted him to meet Simpson, and what they did with that information, is not relevant to the defense under Rule 16 or *Brady*, nor is it impeachment material. Again, a "defense" based on this information would not be a legal or factual defense to the charge, but rather an attempt to seek jury nullification, which is not a defense and not a matter on which the defense would be entitled to a jury instruction. All Jencks material concerning the government's trial witnesses, including SA Stewart Whitson, has been disclosed. The existence of other conspirators is not exculpatory – indeed, the government introduced evidence concerning other possible conspirators, including Miski and Hussain, during the trial in this case. The evidence demonstrating Mr. Kareem's involvement consisted of witnesses who described his criminal conduct that occurred well before Simpson's April 23, 2015, tweet about the Garland contest.

7. The identity of persons to whom S/A Jane communicated about the potential to contact Simpson to inquire whether he was at the event is not relevant to the defense under Rule 16 or *Brady*, nor is it impeachment material. S/A Jane testified during the Hendricks trial that he did not receive authorization to approach Simpson, and nothing suggests S/A Jane would have been able to reach Simpson without revealing his use of law enforcement resources. S/A Jane had no means to contact Simpson because Simpson already had dropped his Surespot account, juba1911, through which Jane had communicated with him. Had S/A Jane successfully used Simpson's @tawaakul account on Twitter, that would have immediately drawn suspicion from Simpson because (1) Simpson never provided that username to S/A Jane, (2) the two never previously communicated via that account, and (3) Hendricks provided a misspelled version of that account name to S/A Jane, which may have been an attempt to discover whether Jane knew the true account name.

You also request additional information regarding the reference in the Inspections Division's Garland Shooting Incident Review to Simpson's "go it alone" comment. This comment occurred during the only communications Simpson and the UCE had: the conversation they had over Surespot, which was documented via screen shots and disclosed September 15, 2016.

9. The government already has disclosed the email communications crediting IA Andrea Theobald's analysis with identifying juba1911 as Elton Simpson.

10. The existing disclosure contains the information that led the FBI, and specifically S/A Jane, to conclude it was **possible** Simpson might travel to Garland, Texas. As the disclosure shows, S/A Jane drew the conclusion that it was possible based on his communications with Hendricks and the earlier

conversation with Simpson, as well as the general knowledge that the contest would be an attractive target for an attack. This information would not have been admissible to impeach S/A Whitson or any other government witness, for the same reasons previously stated.

11. The existence of an FBI alert to authorities in the Dallas area to be on the lookout for Simpson was known in the immediate aftermath of the attack. It was repeatedly reported in the media and was referenced during the trial. *E.g.*, https://www.nbcnews.com/news/us-news/fbi-says-it-alerted-garland-police-about-elton-simpson-n355526; https://www.nytimes.com/2015/05/08/us/fbi-says-it-warned-of-gunman-in-garland-texas-attack.html. The existence of the alert was mentioned during the trial, and additional evidence concerning the alert would not be exculpatory; nor would it serve to impeach any of the government's witnesses, for the reasons previously stated. Nevertheless, we have requested a copy of the alert but have not seen it in any form. A new agent recently was assigned to the case and is searching for the alert.

12. The names and locator information of agents who received emails from S/A Jane is not relevant under Rule 16 or *Brady*, nor would it qualify as impeachment material for S/A Whitson or any of the other government witnesses who testified in the case. Again, the FBI's concern about Simpson was well-known and documented, and was addressed in cross-examination of various government witnesses at trial. The FBI's concern about Simpson and the fact that it did not prevent Simpson's and Soofi's attempt to attack the contest is not *Brady* or *Giglio* material; nor does it fall within Rule 16.

13. As discussed above, documentation of S/A Jane's authorization to travel to Garland, Texas, is not discoverable – it does not fall within the scope of Rule 16, *Brady*, or *Giglio*. The evidence already disclosed, along with the Hendricks trial transcript of S/A Jane's testimony, fully describes S/A Jane's purpose and justification for the travel.

14. FBI authorizations, generally and in this context, do not fall within the scope of Rule 16, *Brady*, or *Giglio*. Such evidence does not constitute impeachment for any government witness, nor is it relevant or exculpatory. It bears no relation to the government's case against Mr. Kareem for the reasons set forth above.

15. Briefing notes and materials on the law enforcement presence in Garland do not fall within the scope of Rule 16, *Brady*, or *Giglio*. They are not relevant to any of the issues at trial or any of the elements of the charges in the case.

We continue to adhere to our obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act, and will continue to disclose any items that arguably would fall within the scope of those obligations as they come into our possession.

Sincerely,

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

JOSEPH KOEHLER
KRISTEN BROOK
Assistant United States Attorneys



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Main Office Fax: (602) 514-7693

March 15, 2019

Daniel Maynard
3200 N. Central Ave., Suite 1800
Phoenix, AZ 85012

Daniel Drake
4340 E. Indian School Rd., Ste. 21-113
Phoenix, AZ 85018

Re: *United States v. Abdul Malik Abdul Kareem,* CR15-00707-PHX-SRB

Dear Mr. Maynard and Mr. Drake:

Please find enclosed one (1) compact disc, Bates-stamped # 000914, containing the results and reports of an extraction by U.S. Customs and Border Protection of a mobile phone belonging to Saabir Nurse on September 26, 2015. In addition, enclosed is one (1) computer hard drive, Bates-stamped # 000915, containing pole camera video (no audio) footage recorded at the Simpson/Soofi apartment from May 1-3, 2015. Finally, with this letter, we are re-disclosing Exhibits 52 and 53 from the trial of Erick Jamal Hendricks Bates-stamped as #000899-000913. Those exhibits previously were disclosed via email.

As with the other post-trial disclosures we have made in the case, we do not believe these items to be relevant and material to the prosecution of Mr. Kareem, but are disclosing them in an abundance of caution.

Sincerely,

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/ Joseph Koehler*

JOSEPH KOEHLER
Assistant United States Attorney

JK/nh



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Criminal Fax: (602) 514-7650
Main Office Fax: (602) 514-7693

October 7, 2019

Daniel Maynard
3200 N. Central Ave., Suite 1800
Phoenix, AZ 85012

Daniel R Drake
4340 E Indian School Rd., Ste. 21-113
Phoenix, AZ 85018

Re: *United States v. Abdul Malik Abdul Kareem*
CR15-0707-PHX-SRB

Dear Mr. Maynard:

Please find the government's supplemental disclosure regarding the above referenced matter. Bates No. 914-1054 consist of:

- Surveillance reports from various dates between 3/10/2015 and 4/27/2015.
- Pole camera authorization request (with "Import Form" cover sheet)
- Pole camera review log and screenshots
- Pole camera evidence collection & storage log (note the electronic chain of custody log was an exhibit to our hearing memorandum)
- Search Warrant 15-6212MB
- Aerial photos of Simpson/Soofi apartment complex
- Photos of Simpson/Soofi apartment building
- Simpson/Soofi apartment complex maps
- Australi Witness posts and tweets

We anticipate using some or all of these materials during the upcoming evidentiary hearing. Although we do not view the materials as *Brady*, *Giglio*, or Rule 16 material with respect to Mr. Kareem's case, they will be relevant to the evidentiary hearing itself.

With respect to Search Warrant 15-6212MB, in going through our files and preparing for the hearing, we reviewed the search warrant affidavit in support of the warrants on the 19th Avenue apartment, Simpson's Infiniti automobile, and Soofi's Chevrolet van (same affidavit for all three). We believe these items to have been previously disclosed, but given the terabytes of disclosure previously sent, we are providing it now in an abundance of caution. Note that the search warrants in this case have been available on the district court's public docket (in this

instance since November 7, 2015), are searchable in PACER, and can be retrieved at the public terminal in the clerk's office.

Sincerely,

MICHAEL BAILEY
United States Attorney
District of Arizona

*/s/ Kristen J. Brook*
KRISTEN J. BROOK
Assistant United States Attorney

Enclosure: Bates No. 914-1054



**Daniel Maynard**

---

| | |
|---|---|
| **From:** | Brook, Kristen (USAAZ) <Kristen.Brook@usdoj.gov> |
| **Sent:** | Friday, October 18, 2019 10:32 AM |
| **To:** | drakelawplc@gmail.com; Daniel Drake; Daniel Maynard |
| **Cc:** | Koehler, Joe (USAAZ) |
| **Subject:** | May 2, 2015 |
| **Attachments:** | Supplemental Discovery_Bates No. 001058-001062.pdf |

Dan & Dan,

Please see attached report from SA Ryan Mullen, which he just authored. It addresses the discovery of two additional surveillance reports, also attached. Let us know if you have any questions before the hearing today. Otherwise, we will see you at 1:30 this afternoon. We have requested SA Glenn Milnor be present today at court, if the Court wishes to follow up on the attached reports.

Best,

Kristen Brook
National Security Section
United States Attorney's Office
District of Arizona
Ph: (602) 514-7503