1  GLENN B. McCORMICK
   Acting United States Attorney
2  District of Arizona

3  KRISTEN BROOK
   Arizona State Bar No. 023121
4  JOSEPH E. KOEHLER
   Arizona State Bar No. 013288
5  Assistant U.S. Attorneys
   Two Renaissance Square
6  40 N. Central Ave., Suite 1200
   Phoenix, Arizona 85004
7  Telephone: 602-514-7500
   Email: kristen.brook@usdoj.gov
8  Email: joe.koehler@usdoj.gov
   Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-15-00707-01-PHX-SRB |
|---|---|
| Plaintiff, | |
| v. | **RESPONSE TO MOTION TO COMPEL DISCLOSURE RE RE-SENTENCING** |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

The United States, through undersigned counsel, respectfully requests the Court deny defendant Abdul Malik Abdul Kareem's Motion to Compel Disclosure re Re-Sentencing (CR 701). Defense counsel is seeking early disclosure of identifying information regarding the government's prisoner witnesses without providing any safeguards to protect their safety. Providing full *Giglio* and Jencks Act discovery regarding the prisoner witnesses without appropriate safeguards will unduly place them in grave danger in the prison setting.

At the status hearing on July 29, 2021, the Court encouraged the parties to come to an agreement on a protective order so the government could provide more detailed

discovery to the defense that would reveal the identities of the prisoner witnesses.[1] (CR 700.) Both government and defense counsel indicated they were amenable to entering into such an agreement. The Court noted that if the parties were unable to agree on the terms of a protective order, it would allow the government to disclose information revealing the identities of the prisoner witnesses "very late."

Government counsel conferred telephonically with defense counsel on at least three occasions between the date of the hearing and the date of the instant Motion to Compel. Aside from referring to the original protective order in this case (CR 44), which related to the identities of juveniles and personally identifying information of third parties in the case and was more concerned with privacy rights than safety, defense counsel did not propose limitations that would protect the safety of the prisoner witnesses.[2]

Having not received a satisfactory proposal from defense counsel, on Friday, September 10, 2021, undersigned counsel emailed a draft motion and protective order for defense counsel to review. (Attachment 1.) In the email, undersigned counsel expressed the government's desire to provide earlier discovery regarding the prisoner witnesses with restrictions on dissemination to protect them from the grave risk of harm they face in the prison setting. Specifically, the government offered to provide earlier disclosure of "their criminal histories, any relevant portions of their prison disciplinary histories, their cell locations (and Kareem's) during the times they were housed at FCI Florence with Mr. Kareem, and other information that would be pertinent under *Giglio*." (Attachment 2.)

Without further contact, Kareem filed the instant motion the evening of September 10, 2021.

---

[1] The Court also referenced the defense's desire to interview certain government witnesses from ATF prior to sentencing. The defense has not identified which witnesses it seeks to interview. *See* Doc. 701-1.

[2] The parties later informally agreed to include additional sensitive disclosure within the terms of the protective order. The protection of that information likewise was not related to witness safety.

A. The Materials Sought are not Rule 16 Materials

Kareem cites Federal Rule of Criminal Procedure 16 in support of his request. By its own terms, Rule 16 applies only to items that are material to preparation of the defense, items the government intends to use in its case-in-chief at trial, or items obtained from or belonging to the defendant. Fed. R. Crim. P. 16(a)(1)(E). The items Kareem seeks do not fall within the scope of Rule 16.

First, the items are not material to preparation of the defense. The United States Supreme Court has construed "defense" in Rule 16(a)(1)(E)(i) to mean defense against the government's case-in-chief at trial. *United States v. Armstrong*, 517 U.S. 456, 462-63 (1996) (defendant sought expansive discovery of other criminal investigations to support motion to dismiss based on selective prosecution of African-American defendants). In this context, the Supreme Court explained that Rule 16(a)(1)(E)(i) authorizes disclosure only of those items that are helpful to rebutting the elements of the crimes charged. None of the items relating to the prisoner witnesses relate to the elements of the offenses for which Kareem stands convicted.

Second, the items Kareem seeks relate to sentencing, not the government's case-in-chief at trial. Third, the items were not obtained from and are not the property of Kareem.

Even assuming Kareem has made a threshold showing that the items fall within the scope of Rule 16, discovery under Rule 16 is bounded in additional ways. For example, Federal Rule of Criminal Procedure 16(a)(2) specifically exempts from disclosure all "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Subsection (a)(2) further exempts from disclosure "statements made by prospective government witnesses," except as otherwise authorized in 18 U.S.C. § 3500. *Id.*

The Ninth Circuit analyzed the scope of this exemption in *United States v. Fort*, 472 F.3d 1106, 1120-21 (9th Cir. 2007). The Court construed "government agent" to include "non-federal personnel whose work contributes to a federal criminal case," and "case," in turn, to encompass an investigation that culminates in the federal prosecution of the

defendant. *Id.* at 1110-21 (holding Rule 16(a)(2) exempted from disclosure local agency reports created prior to federal involvement but relinquished to federal prosecutors to support a unified prosecution of defendants for the same criminal activity that was the subject of the local investigation); *cf. Armstrong*, 517 U.S. at 462-63 (characterizing Rule 16(a)(2) as precluding discovery of "government work product in connection with [the defendant's] case"); *cf. also United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2003) (law enforcement canine training materials and records not protected from disclosure under Rule 16(a)(2) because "they were not made in connection with investigating or prosecuting this or *any other case*" (emphasis added)). Thus, even items material to preparing the defense may be withheld, so long as they are not exculpatory, pursuant to Rule 16(a)(2).

B. <u>The Materials Sought are not Exculpatory</u>

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the government must disclose information favorable to the accused that is material either to guilt or to punishment. *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016). None of the materials Kareem seeks would serve to exculpate Kareem or mitigate his culpability. Therefore, the materials do not qualify as *Brady* material in that sense. However, some of the materials relate to prior witness statements and/or impeachment of the prisoner witnesses and are discoverable on those bases.

C. <u>Some Materials Sought are Within the Scope of the Jencks Act and/or *Giglio*</u>

The Jencks Act, 18 U.S.C. § 3500, requires the government to disclose previous statements of its witnesses after each witness has testified. The text of § 3500 is clear:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a). *See United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986) (order requiring early disclosure of statements made by prospective government witnesses "was itself inconsistent with the express provision of the Jencks Act and therefore

unenforceable"). Federal Rule of Criminal Procedure 26.2 mirrors the Jencks Act and imposes no additional production burden on the government.

Although not required to do so until after the witnesses testify, the government previously disclosed the written statements of two of the prisoner witnesses – a letter from Witness 1 and handwritten notes from Witness 2. The only redactions were to portions of the statements that would identify the witnesses. In addition, the government disclosed reports of interviews for the three prisoner witnesses, again redacted to protect the identities of the witnesses. The government also disclosed Kareem's mail, phone, and email logs from FCI Florence, and reports analyzing his recorded calls and non-attorney email messages.

Absent a satisfactory protective order, the government further intends to produce the following materials in advance of the sentencing hearing, with redactions to protect those witnesses' identities:

- Transcripts of recorded interviews of two of the prisoner witnesses (the third witness's interview was not recorded)
- Reports of attorney-conducted interviews of the three witnesses
- Criminal histories and related *Giglio* material
- Relevant portions of their prison disciplinary histories
- 302 reports (if they exist, awaiting responsive information) to document the FBI Denver Field Office's closure of its investigation

The reports previously disclosed to the defense note the prisoner witnesses desired to have their sentences reduced. As documented in forthcoming reports, undersigned counsel informed the witnesses that the U.S. Attorney's offices in the districts that handled their prosecutions have stated that they would be amenable to filing Rule 35 motions if the witnesses provide truthful testimony, but no promises or agreements have been made in exchange for their testimony

Additional materials in the government's possession would negatively impact the witnesses' credibility, and therefore fall within the scope of *Giglio*. Again, the government

has offered to provide that information to the defense well in advance of the hearing, subject to a protective order that adequately protects the safety of the prisoner witnesses.

### D. Balancing Kareem's Need for Disclosure Against the Risk of Harm to the Witnesses

The value of the *Giglio* material regarding the prisoner witnesses is likely to be significantly less in the circumstances of this hearing than it would be in the context of a jury trial. The defense and the Court are aware that the prisoner witnesses are federal inmates who have been in custody for at least two years. It goes without saying they all have felony convictions. Further, common experience suggests prison inmates would desire to obtain earlier release, giving them an incentive to provide information to the government in order to achieve that result. *Cf. United States v. Bernal-Obeso*, 989 F.2d 331, 333-35 (9th Cir. 1993) (recounting at length the perils associated with cooperators and prison witnesses while noting criminal justice system could not adequately function without such witnesses in certain cases). The Court, as the trier of fact in this instance, already is aware of the credibility issues that accompany prisoner and cooperator testimony. Specific information about the prisoner witnesses' reputations for truthfulness and criminal histories is unlikely to have significant additional impact in these circumstances. Therefore, lengthy and robust investigation into their histories by outside investigators to develop additional impeachment information borders on pointless.

On the other hand, the witnesses, as prisoners, face a grave risk of harm when their identities are revealed along with their status as cooperating witnesses. *See United States v. Doe*, 870 F.3d 991, 999-1000 (discussing threats of harm to cooperators in the prison setting and their families) (citing Comm. on Ct. Admin. & Case Mgmt. of the Judicial Conference of the U.S., Interim Guidance for Cooperator Information (June 30, 2016), available at http://www.uscourts.gov/sites/default/files/2016-09-criminal-agenda_book_ 0. pdf). Disclosing their status prematurely places them at unnecessary risk in advance of the re-sentencing hearing. Disclosing their status prematurely also risks their becoming unavailable to testify. Thus, an appropriate balance should be struck between Kareem's need for information and the government's interest in protecting the safety and availability

of the prisoner witnesses. *See United States v. Roviaro*, 353 U.S. 53, 60-61 (1957) (defendant's need for information must be balanced against the value of ensuring the safety of informants).

To balance these interests, the government anticipates disclosing the *Giglio* and identifying materials on October 15, 2021. This will give the defense time to review the materials, perform additional public-record searches to follow up on specific items deemed worthy of further review, and to prepare additional questions for cross-examination beyond whatever questions they already will have prepared.

E. Conclusion

Based on the foregoing, the United States respectfully requests the Court deny Kareem's Motion to Compel Disclosure re Re-Sentencing (CR 701).

Respectfully submitted this 16th day of September, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*s/Kristen Brook*
KRISTEN BROOK
JOSEPH E. KOEHLER
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of September, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that true and accurate copies have been transmitted electronically to counsel for the defendant via the ECF system.

Daniel Maynard and Daniel Drake, Attorneys for Defendant

By: */s Joseph E. Koehler*