Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON & CURRAN, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500
dmaynard@mmcec.com

Daniel R. Drake, No.003781
**DRAKE LAW, PLC**
4340 East Indian School Road, Suite 21-113
Phoenix, Arizona 85018
(602) 881-5341
drakelawplc@gmail.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 2:15-cr-00707-SRB |
| Plaintiff/Respondent, | **MOTION FOR COURT TO EVALUATE GOVERNMENT ATTORNEYS' POTENTIAL CONFLICT OF INTEREST** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant/Movant. | **(ORAL ARGUMENT)** |

Defendant, Abdul Malik Abdul Kareem ("Mr. Kareem") files this motion requesting the court to evaluate the government attorneys' potential conflict of interest in this case as it impacts on the presentation of information at sentencing and their refusal to timely and freely produce information material and necessary to the defense. That information pertains to the government's investigation of an alleged murder-for-hire-plot and its determination it would not file criminal charges based on the

allegations. Further, Mr. Kareem moves the court to review in camera information concerning the government's investigation of allegations that surfaced on or about May 23, 2018 that Mr. Kareem wanted to kill the prosecutors and defense lawyers in this case. Then it can make its own determination on what should be produced and when. This motion is supported by the attached Memorandum of Points and Authorities.

Excludable delay under 18 U.S.C § 3161(h) will not occur as a result of this motion or of an order based thereon.

| | |
|---|---|
| **MAYNARD CRONIN ERICKSON & CURRAN, P.L.C.** | **DRAKE LAW, PLC** |
| By /s/Daniel D. Maynard<br>Daniel D. Maynard<br>3200 North Central Avenue, Ste. 1800<br>Phoenix, Arizona 85012<br>Attorneys for Defendant/Appellant | By /s/Daniel R. Drake<br>Daniel R. Drake<br>4340 E Indian School Road<br>Suite 21-113<br>Phoenix, Arizona 85078<br>Attorneys for Defendant/Appellant |

## MEMORANDUM OF POINTS AND AUTHORITIES

**A. Background.**

According to information disclosed by the government (the "Disclosure" filed as Exhibit 1 under seal), Mr. Kareem allegedly wanted to kill the attorneys on his case, both prosecution and defense. Federal authorities learned about the allegations on or about May 23, 2018 (Disclosure 006, 029). Two special agents ("SA") from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") made arrangements with authorities at FCI Florence and interviewed inmates who were the alleged sources of the allegations. They interviewed the first inmate ("CS 1") on May 24, 2018, and he

referred them to a second inmate ("CS 2") with whom he was "close" and who allegedly knew the substance of the allegations. (Disclosure 007).

The ATF special agents interviewed CS 2 on May 30, 2018 and recorded the interview. (Disclosure 009). The government has not disclosed the recording of the interview. According to a synopsis of the interview that has been provided, CS 2 provided the ATF agents with an email string of messages between Mr. Kareem and one of his defense attorneys. (Disclosure 010). The ATF special agents read the stolen emails.

According to the Disclosure, the ATF conducted an investigation regarding the allegations. On May 25, 2018, ATF SA McKone submitted a cover letter to the Warden at FCI Florence together with a subpoena to obtain and review Mr. Kareem's electronic communications (Disclosure 031, 061, 063): telephone calls and emails made and received at Florence FCI where he was being held. SA McKone reviewed the email traffic and saw "nothing of note in the emails." (Disclosure 031). Apparently, these included emails to and from counsel; however, none of them are attached to the report and the government has not disclosed those emails. SA McKone reviewed recorded phone calls from April 4, 2018, through April 20, 2018, and reported nothing of note regarding the allegations. (Disclosure 032). On June 13, 2018, SA Bazin, another ATF agent, reviewed recorded phone calls from February 1, 2018, through February 16, 2018, and from April 22, 2018, through April 25, 2018. (Disclosure 044). SA Bazin reported that he "didn't note any pertinent information relating to this

ongoing investigation." (Disclosure 044). The government has not disclosed the recordings of the phone conversations reviewed by SAs McKone and Bazin and it is not clear whether they listened to phone conversations between Mr. Kareem and his lawyers.

On June 4, 2018, FBI SA Julio Alberto Hernandez drafted an FBI Electronic Communication and copied Jon-Todd A. Baker (The FBI Agent handling Mr. Kareem's case). (Disclosure 048). SA Hernandez noted that a review of 65 phone calls and the email traffic provided by BOP personnel "did not reveal derogatory information pertaining to a pending terrorist attack or a murder for hire for plot." (Disclosure 048). Again it appears that this may include listening to conversations between Mr. Kareem and his lawyers as those calls are listed among the 65 calls.

The ATF forwarded the reports on the interviews with CS 1 and CS 2 to the Colorado Springs Resident Agency of the FBI, which received those reports on June 8 and June 11, 2018. (Disclosure 048).

On June 21, 2018 FBI SA Julio Alberto Hernandez interviewed one individual at FCI Florence. (Disclosure 047). The redactions in the FD-302 regarding that interview prevent identification of the individual as either CS 1 or CS 2. The individual confirmed the substance of previously reported conversations with Mr. Kareem. The individual indicated he was willing to assist in the investigation, but he wanted "his sentence reduced." (Disclosure 047).

More than a year later the FBI was still investigating, according to the Disclosure. TFO Gregory Alan Young, a law enforcement officer assigned to a federal task force interviewed an inmate at FCI Florence. He learned that, according to the inmate, Mr. Kareem had "left his mother with $40,000, and that was the money he would use to pay for it [the hit]." (Disclosure 018). According to the inmate, Mr. Kareem was going to explain the plan to his mother. (Disclosure 018).

TFO Young obtained and reviewed recorded phone calls Mr. Kareem made at FCI Florence in 2019. (Disclosure 021). After reviewing the recording of an August 2, 2019, from Mr. Kareem to his mother, TFO Young observed that the mother "seems elderly and unwitting." (Disclosure 021). He summarized an August 12, 2019, call from Mr. Kareem to his mother by noting "Mother on Welfare, food stamps, and housing assistance. Has only $200.00 for food during the month." "Mother has no vehicle and takes public transportation." (Disclosure 022). In a call between Mr. Kareem and his mother on November 24, 2019, TFO Young noted that Mr. Kareem's mother said, "she has no money for traveling and hopes someone else will pay for it." (Disclosure 026). The government has not disclosed the recorded conversations.

According to the Disclosure, on December 19, 2019, TFO Young conducted an interview of an unnamed individual in connection with a proffer of the individual's information. The attorney for the individual listened in to the interview. (Disclosure 014). At the outset of the interview TFO Young read a proffer letter from AUSA David

Tonini setting forth the terms for the interview. (Disclosure 014). The government has not disclosed the proffer letter.

**B. Conflict of Interest of Prosecutors.**

Government counsel has indicated that they were "walled off" from the investigation and prosecuting decisions regarding the alleged murder for hire plot. Presumably that was to remove any personal bias or animus of the prosecutors in this case as alleged victims influencing a potential decision to bring charges based on the allegations. Now, those same alleged victims of the plot are proposing to use the raw information provided by the two collaborating individuals interviewed in 2018 and a third interviewed in 2019 to enhance Mr. Kareem's sentence. Also, they are in charge of disclosing information that might be material and helpful to the defense and have refused to timely provide it to the defense.

Pursuant to ER 3.8 Special Responsibilities of a Prosecutor, the prosecutor in a criminal case shall:

> (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

The American Bar Association has set forth criminal justice standards for the prosecution function. Standard 3-1.2(c) provides that a prosecutor should avoid an appearance of impropriety in performing the prosecution function. In this case, the government determined there is not enough evidence to charge Mr. Kareem with a new

crime, yet the prosecutors, who are two of the alleged victims, plan to use this incredible or insufficient evidence to enhance Mr. Kareem's sentence. Certainly this lends an appearance of impropriety.

The investigators with ATF, the FBI and the US Attorney's Office in Colorado that investigated these allegations indicate by their conduct that they do not believe the allegations true or charges would have been filed. That determination was made based on disbelief of the allegations without any input from Mr. Kareem. Therefore, the alleged evidence from the three inmates should not be presented at Mr. Kareem's sentencing and, if it is, it demonstrates bias or creates an appearance of impropriety by the prosecutors on this case.

Standard 3-1.6(a) provides, in pertinent part:

> A prosecutor should not use … improper considerations, such as partisan or political *or personal considerations*, in exercising prosecutorial discretion. A prosecutor should strive to eliminate implicit biases, and act to mitigate any improper bias or prejudice when credibly informed that it exists within the scope of the prosecutor's authority. (Emphasis added).

Clearly these prosecutors are biased against Mr. Kareem if they truly believe he plotted to kill them. If they do not believe he plotted to kill them, then they should not be attempting to admit the contested testimony of three inmates who are looking to get time off their sentences.

Standard 3-1.4(a) provides in pertinent part:

> In light of a prosecutor's public responsibilities, broad authority and discretion, the prosecutor has a heightened duty of candor to the courts and in fulfilling other professional obligations.

Standard 3-1.4(b) provides:

> The prosecutor should not make a statement of fact or law, ***or offer evidence, that the prosecutor does not reasonably believe to be true***, to a court, lawyer, witness, or third party, except for lawfully authorized investigative purposes. In addition, while seeking to accommodate legitimate confidentiality, safety or security concerns, a prosecutor should correct a prosecutor's representation of material fact or law that the prosecutor reasonably believes is, or later learns was, false, and should disclose a material fact or facts when necessary to avoid assisting a fraudulent or criminal act or to avoid misleading a judge or factfinder. (Emphasis added).

### C. Conclusion.

The prosecutors in this case have failed to investigate their three inmate witnesses and provide the defense with relevant information on these three witnesses. It even discouraged the defense from investigating these witnesses. It wants defense counsel to sit idly by and await the good graces of the government attorneys. This court should review the information in the government's possession and, if relevant, require it to be turned over immediately and should investigate whether the prosecutors handling the case should be removed due to bias and an appearance of impropriety if they represent the government at the re-sentencing of Mr. Kareem.

RESPECTFULLY SUBMITTED this 22nd day of September, 2021.

**MAYNARD CRONIN ERICKSON & CURRAN, P.L.C.**

By /s/Daniel D. Maynard
    Daniel D. Maynard
    3200 North Central Avenue, Ste. 1800
    Phoenix, Arizona 85012
    Attorneys for Defendant/Appellant

**DRAKE LAW, PLC**

By  /s/Daniel R. Drake
    Daniel R. Drake
    4340 East Indian School Road
    Suite 21-113
    Phoenix, Arizona 85018
    Attorney for Defendant/Appellant

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 22nd, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrants: AUSA Joseph E. Koehler and AUSA Kristen Brook. Additionally, a copy was served upon Mr. Abdul Kareem by first class letter, postage prepaid, at:

    Abdul Malik Abdul Kareem #44126-408
    FCI Phoenix
    Federal Correctional Institution
    37910 N 45th Ave
    Phoenix, AZ  85086

                                    /s/Rosalie Mobley
                                    Rosalie Mobley