GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

KRISTEN BROOK
Arizona State Bar No. 023121
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: kristen.brook@usdoj.gov
Email: joe.koehler@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-15-00707-01-PHX-SRB |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO EVALUATE GOVERNMENT ATTORNEYS' POTENTIONAL CONFLICT OF INTEREST** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant. | |

The United States, through undersigned counsel, respectfully responds to Kareem's Motion to Evaluate Government Attorneys' Potential Conflict of Interest (Doc. 710). Undersigned counsel do not have a potential or actual conflict of interest in this matter, and allowing a criminal defendant to create one through unilateral actions such as those alleged in this case would create perverse incentives for criminal defendants to game the system.

As discussed in previous filings in this matter, agents learned of an alleged murder-for-hire plot from source reporting within the Federal Correctional Institution in Florence, Colorado (FCI Florence), a medium security prison where Kareem was serving his sentence. The agents in turn communicated that information to undersigned counsel. The investigation revealed Kareem decided not to follow through with the scheme in the fall of 2018 because he wished to wait out his appeal before acting. Kareem later changed his

mind – new allegations surfaced in December 2019 after Kareem expressed a renewed interest in his murder-for-hire scheme. Undersigned counsel did not participate in the investigation of the allegations or the decision whether to pursue criminal charges based on them. Undersigned counsel are not witnesses in any proceedings related to that matter.

### I. Kareem's Alleged Actions do not Create a Conflict of Interest for Government Counsel

Arizona Rule of Professional Conduct 1.7 provides, in pertinent part: "(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." Kareem has not shown his alleged actions create a significant risk that undersigned counsel's representation of the government will be materially limited by a personal interest. Nor has Kareem demonstrated a due process right to the removal of undersigned counsel.

State courts routinely have held a prosecutor's participation in a case in which the defendant threatened the prosecutor's life was not a conflict of interest; and therefore, the prosecutor should not be disqualified absent an actual conflict of interest. *State v. McManus*, 941 A.2d 222, 232 (R.I. 2008) (citing *Jorgensen v. State,* 567 N.E.2d 113, 123 (Ind. Ct. App. 1991); *Kindred v. State,* 521 N.E.2d 320, 327 (Ind. 1988); *Summit v. Mudd,* 679 S.W.2d 225, 226 (Ky. 1984)). For example, an actual conflict would exist if the prosecutor is a necessary witness in the case against the defendant. *See State v. Usenia,* 599 A.2d 1026, 1030 (R.I. 1991). In *Kindred*, the Indiana Supreme Court held a prosecutor's participation in a case in which the defendant had threatened the prosecutor's life was not a conflict of interest. "[T]o allow prosecutors to be disqualified merely upon the unilateral action of defendants . . . would lead to absurd consequences." *Id.* at 327.

Similarly, the United States District Court for the Northern District of Indiana held a prosecutor's participation in a case in which the defendant had threatened the prosecutor's life was not a conflict of interest. *Resnover v. Pearson,* 754 F. Supp. 1374, 1388 (N.D.

Ind. 1991). "Unfortunately in the society in which we now live, it is all too commonplace that judges, prosecutors, and lawyers are threatened and their lives are in danger. . . . It is a matter of common knowledge that United States district judges, United States attorneys, state judges and state prosecutors are often threatened and require protection from threats." *Id*. The court concluded not "a shred of authority" supported a conclusion that a defendant who threatens to kill a prosecutor has a constitutional right to have the prosecutor disqualified from the case. *Id.* Rather, the court held "[t]he law is clear that a party, including a defendant in a criminal case, cannot drive a state trial judge off the bench in a case by threatening him or her. It is likewise true that a criminal defendant cannot cause the recusal of his prosecutor by threatening the prosecutor or having him threatened." *Id*. at 1388-89.

In *McManus*, the Rhode Island Supreme Court explained, "Requiring the prosecutor . . . to be disqualified merely because defendant allegedly threatened her life would provide an incentive for defendants to engage in such unlawful conduct 941 A.2d at 232. The court refused to sanction such a strategy. *Id*.

A judge is not biased merely because a party or lawyer before him has filed a judicial conduct complaint against her, threatens to sue her, or does sue her. *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977) ("A judge is not disqualified merely because a litigant sues or threatens to sue him."); *Scarrella v. Midwest Fed. Sav. and Loan*, 536 F.2d 1207, 1209 (8th Cir. 1976) (judges were not disqualified merely because they were parties in a separate action involving one of the litigants); *United States v. Walls*, 2006 U.S. Dist. LEXIS 27381, at *5-6 (E.D. Mich. May 9, 2006) (denying a motion to recuse filed by a criminal defendant who had filed a lawsuit against the judge); *In re WHET, Inc.*, 33 B.R. 424, 425-26, 433 (Bankr. D. Mass. 1983); *Demoulas v. Demoulas*, 432 Mass. 43, 55 (2000). By extension, similar conduct does not trigger a conflict of interest for a prosecutor.

Defense counsel have a duty to vigorously defend their client. A threat from a defendant to defense counsel by its nature can inhibit defense counsel's performance of

that duty regardless of the perceived credibility of the threat. In other words, defense counsel cannot disclaim a conflict simply by questioning the validity of the allegations. In this case, the Court ultimately found defense counsel (who also were targets of the alleged murder for hire plot) did not have a conflict in their representation. The Court likewise should find undersigned counsel, who do not have a duty to vigorously represent Kareem, do not have a conflict.

Simply stated, allowing a criminal defendant's threats or other unilateral action to trigger the disqualification of a prosecutor or judge would create perverse incentives for criminal defendants to game the criminal justice system by making threats or engaging in other unilateral action in order to delay or frustrate the administration of justice. The Court should not sanction such an absurd result here.

## II. Government Counsel have Acted Ethically and Reasonably

In 2020, the government advised the Court that information had come to light that indicated defendant Abdul Malik Abdul Kareem "intends to engage, is engaging or has engaged in criminal . . . conduct related to the proceeding." Ariz. R. Prof'l Conduct 3.3(b). Specifically, the government informed the Court that Kareem, while in federal custody following his conviction and sentencing in this case, allegedly attempted to recruit other persons to kill government counsel responsible for prosecuting his case, as well as his defense attorneys, Daniel Drake and Daniel Maynard. The government informed the Court in fulfillment of undersigned counsel's ethical obligation to undertake appropriate remedial measures and in conformance with counsel's duty of candor to the Court. *See* Ariz. R. Prof'l Conduct 3.3(b).

Pursuant to Department of Justice Policy, the U.S. Attorney's Office (USAO) for the District of Arizona (USAAZ) did not supervise the investigation of Kareem's post-sentencing conduct because the alleged murder-for-hire plot targeted attorneys within the USAAZ. The investigation was assigned to the USAO for the District of Colorado, which is responsible for prosecuting alleged violations of federal law in the District of Colorado.

Under ABA Standard 3-1.7(g), Conflict of Interest, "the prosecutor should disclose to appropriate supervisory personnel any facts or interests that could reasonably be viewed as raising a potential conflict of interest. If it is determined that the prosecutor should nevertheless continue to act in the matter, the prosecutor and supervisors should consider whether any disclosure to a court or defense counsel should be made, and make such disclosure if appropriate."

The USAAZ sought and received guidance in late March 2020 from the Department of Justice Professional Responsibility Advisory Office (PRAO). In consultation with PRAO, undersigned counsel assessed they had an ethical obligation to take reasonable remedial measures. Those measures included disclosing the defendant's efforts to engage in criminal conduct related to his re-trial or re-sentencing in conformance with counsel's duty of candor to the Court. This situation implicates Rule 3.3(b), which provides: "[a] lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Ariz. R. Prof'l Conduct 3.3(b); *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 458 (4th Cir. 1993) ("While Rule 3.3 articulates the duty of candor to the tribunal as a necessary protection of the decision-making process and Rule 3.4 articulates an analogous duty to opposing lawyers, neither of these rules nor the Code of Professional Responsibility displaces the broader general duty of candor and good faith required to protect the integrity of the entire judicial process."); *Eagan v. Jackson*, 855 F. Supp. 765, 789 (E.D. Pa. 1994) ("Even beyond the requirements of Rule 3.3(d), an attorney, as an officer of the Court, has an overarching duty of candor to the Court."); *Freeport-McMoran Oil & Gas Co. v. Fed. Energy Regul. Comm'n*, 962 F.2d 45, 47 (D.C. Cir. 1992) (holding government lawyers to higher standards than private lawyers); *Douglas v. Donovan*, 704 F.2d 1276, 1279 (D.C. Cir. 1983) ("As officers of this court, counsel have an obligation to ensure that the tribunal is aware of significant events that may bear directly on the outcome of litigation. . . . This is especially true for government attorneys, who have special

responsibilities to both this court and the public at large.") (citations omitted); *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 293 (7th Cir. 2002) ("government lawyers have a higher competing duty to act in the public interest"); *United States v. Finazzo*, 704 F.2d 300, 309 (6th Cir. 1983) (as a government representative, Assistant United States Attorneys have a "higher duty cast upon them").

Defense asserts, without support, that undersigned government counsel have a conflict of interest which "impacts the presentation of information at sentencing and the timing of discovery." (Doc. 710.) As noted in Doc. 707, the government has provided and continues to provide redacted discovery to the defendant to the extent possible without identifying vulnerable witnesses. Moreover, as the Court suggested, the government provided defense a draft motion and protective order to permit earlier and more fulsome discovery. Defense counsel have not responded to the draft motion and order, even to suggest potential edits. The Court stated on July 29, 2021, that names and identifying information would not be ordered disclosed until "very late" unless a protective order is in place. The government has provided defense with 191 pages of discovery and continues to prepare discovery related to the prisoner witnesses' housing locations during relevant time periods, prison disciplinary infractions, criminal histories, and potential impeachment information.

As the Court is aware, the government has genuine concerns for the safety of the witnesses if their identity is released prematurely. Of note, on October 1, 2021, defense counsel filed *without sealing* an exhibit that included names of individuals defense counsel suspects to be government witnesses.[1] This type of inattentiveness highlights the government's concerns and underlies its reasonable position on the timing of discovery and use of redactions to protect the prisoner witnesses' identities.

---

[1] In addition, Kareem's reply in support of his motion to compel (Doc. 714) included as an attachment the previously-provided discovery relating to re-sentencing, also not initially filed under seal. (Doc. 714-1; Doc. 715.)

**III. Conclusion**

Based on the foregoing, the government respectfully submits undersigned counsel do not have a conflict of interest and no basis exists for disqualifying undersigned counsel from representing the United States in this case.

Respectfully submitted this 7th day of October 2021.

>GLENN B. McCORMICK
>Acting United States Attorney
>District of Arizona
>
>s/ *Kristen Brook*
>s/ *Joseph E. Koehler*
>KRISTEN BROOK
>JOSEPH E. KOEHLER
>Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that true and accurate copies have been transmitted electronically to counsel for the defendant via the ECF system.

Daniel Maynard and Daniel Drake, Attorneys for Defendant

By: /s __Joseph E. Koehler_____