Daniel D. Maynard, No. 009211
**MAYNARD CRONIN ERICKSON & CURRAN, P.L.C.**
3200 North Central Avenue, Suite 1800
Phoenix, Arizona 85012
(602) 279-8500
dmaynard@mmcec.com

Daniel R. Drake, No.003781
**DRAKE LAW, PLC**
4340 East Indian School Road, Suite 21-113
Phoenix, Arizona 85018
(602) 881-5341
drakelawplc@gmail.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 2:15-cr-00707-SRB |
| Plaintiff/Respondent, | **DEFENDANT'S OJECTIONS TO THE DRAFT PRESENTENCE REPORT** |
| v. | |
| Abdul Malik Abdul Kareem, | |
| Defendant/Movant. | |

Defendant, Abdul Malik Abdul Kareem ("Abdul Kareem"), through his undersigned counsel, makes the following objections concerning the Draft Presentence Investigative Report ("DPSR") that was prepared on September 13, 2021.

1

**Related Cases:**

The case of United States v. Erick Jamal Hendricks, 1:16-cr-00265, Northern District of Ohio, should be considered a related case.

As shown in Abdul Kareem's Sentencing Memorandum, the government has claimed the two cases are related. (See Exhibit 1, Doc. 78, Government's Response in Opposition to Defendant's Motion in Limine to Exclude Government's Presentation of Evidence, pp.2-3 ([A]n integral part of the defendant's role in a conspiracy to provide material support to ISIL by creating a cell of supporters to commit attack in the United States is conduct that is tied to the Garland, Texas event.)

Moreover, the government told the jury in opening statements that "the evidence will show that he [Hendricks] was unequivocally tied to this attack." (See Exhibit 2, Reporters Transcript, March 8, 2018, pp. 622-23).

**Part A: The Offense**

**Charge(s) and Convictions**

¶ 9 Contains a description of the charges for Count 2 which is a dismissed charge and therefore should be deleted.

¶ 16 The description is misleading. Abdul Kareem denied these allegations. Following an investigation no criminal charges were filed based on the described allegations, nor did the BOP sanction Abdul Kareem by taking any administrative action

against him nor was he placed in a higher security facility which would have been standard procedure if the allegations had been believed. It should be modified to reflect those undisputed facts.

**Count Group 1: Conspiracy to Provide Material Support or Resources to a Designated Foreign Terrorist Organization (Counts 1, 3 and 5).**

¶ 36 **Base Offense Level**, Abdul Kareem objects to the DPSR writer concluding that the base offense level is 38 for the following reasons. Pursuant to USSG § 2M5.3(a), the base offense level is 26. If the offense involved dangerous weapons then there is an increase by two levels (2M5.3(b)(1)) taking it to a base level of 28. The DPSR writer imposes a base level 38 because of the death of Simpson and Soofi since the cross-reference under 2M5.3(c) states "[i]f the offense resulted in death apply § 2A1.1 (First Degree Murder) if the death was caused intentionally or knowingly, or § 2A1.2 (Second Degree Murder).

In § 2A1.1, murder is defined under 18 U.S.C. § 1111. First-degree murder under federal law requires: (1) an unlawful killing; (2) with malice aforethought; (3) specific intent: deliberate, malicious, willful premeditation; and (4) that the killing occur within the special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 1111. These elements are not present in this case. The offense resulted in the death of the perpetrators; *i.e.*, Simpson and Soofi. The Guideline contemplates the death of one who

is not a perpetrator or co-co-conspirator. The death of Simpson and Soofi do not constitute murder.

If the court were to consider this as felony murder pursuant to 18 U.S.C. § 1111, which it is not since it results in the death of the perpetrators, a downward adjustment would be proper since Abdul Kareem did not cause the death intentionally or knowingly, Application Note 2(B). The Guideline does not contemplate a sentence for murder when the persons who are killed are the perpetrators and not victims.

Additionally, the DPSR writer errs in applying this cross-reference under the facts of this case. In *United States v. Felton*, 166 Fed.App 64, 67-68 (4th Cir. 2006), the appellate court found the district court erred in applying the murder cross-reference to the defendant's sentence, because the murder was not charged in the indictment or found by a jury beyond a reasonable doubt. Additionally, even if the court were to find that the cross-reference applied, the court should depart downward because the cross-reference results in (1) an enormous upward adjustment, (2) for uncharged conduct, (3) not proved at trial, and (4) found by only a preponderance of the evidence; (5) and there is substantial doubt as to the accuracy of the finding. *United States v. Murgas*, 321 F.Supp.2d 451, 455-56 (N.D.N.Y. 2004). There is no discussion that a co-defendant is guilty of murder when his co-defendant is killed by a victim. In this case, Soofi and Simpson may have been intending to kill others or they may have been intending to become martyrs - suicide

by police.

At most, this was tantamount to attempted murder and § 2A2.1 (Assault with Intent to Commit Murder) would apply which would result in a base level 27 or 33. Abdul Kareem believes that the base level should be 26 plus the 2 point enhancement because of weapons for a level 28.

¶43 **Adjustment for Role in the Offense**. Abdul Kareem did not commit a crime of violence. In order to be a "crime of violence" it must be: "An offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). In *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018), the Supreme Court held that the residual clause for the definition of a crime of violence (18 U.S.C. § 16(b)) is impermissibly vague in violation of the Due Process Clause of the Fifth Amendment. Accordingly, to constitute a crime of violence the offense must have an element of "use, attempted use, or threatened use of physical force against the person or property of another."

Abdul Kareem stands convicted of four counts of the second superseding indictment. Doc. 158. Count 3 alleges a false statement in violation of 18 U.S.C. § 1001. The instructions given the jury do not mention "the use, attempted use, or threatened use of physical force." See Doc. 287, Final Jury Instructions, p.23.

> First, on or about May 5, 2015, the defendant made a false statement to the FBI, with all of you agreeing on the false statement he made;
>
> Second, the defendant acted willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and
>
> Third, the statement was material to the activities or decisions of the FBI; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

Doc. 287, Final Jury Instructions, p.23.

Similarly, Count 4, the felony in possession of a firearm on June 10, 2015 charge, does not have as an element "the use, attempted use, or threatened use of physical force." Doc. 158, p.5. The jury instructions make that clear:

> First, on or about June 10, 2015, the defendant knowingly possessed a Taurus model 85 Ultralite .38 caliber revolver and/or a Tanfoglio model Witness 9mm pistol, with all of you agreeing on the particular firearm he possessed;
>
> Second, the Taurus model 85 Ultralite .38 caliber revolver and the Tanfoglio model Witness 9 mm pistol had been shipped or transported from one state to another state; and
>
> Third, at the time the defendant possessed the Taurus model 85 Ultralite .38 caliber revolver and/ or the Tanfoglio model Witness 9 mm pistol, the defendant had been convicted of Aggravated Driving While Under the Influence in the State of Arizona, a felony.

Doc. 287, p. 24.

Two counts (1 and 5) charge conspiracies. The gist of a conspiracy is the agreement, so it is not surprising that the elements do not include the "use, attempted, or threatened use of physical force." The elements shared with the jury for Count 1 read, in pertinent part:

> First, a person transported firearms and ammunition from one state to another with the intent to commit murder and/or aggravated assault in Texas, or with knowledge or reasonable cause to believe that murder and/or aggravated assault would be committed with the firearms and ammunition;
>
> Second, the defendant aided, counseled, commanded, induced or procured that person to transport firearms and ammunition in interstate commerce with the intent to commit murder and/or aggravated assault;
>
> Third, the defendant acted with the intent to facilitate transporting firearms and ammunition in interstate commerce with the intent to commit murder and/or aggravated assault; and
>
> Fourth, the defendant acted before the crime was completed.

Doc. 287, p.19.

Count 5, conspiracy to provide material support to a designated terrorist organization in violation of 18 U.S.C. 2339B does not necessarily involve the use of force. The elements as contained in the jury instruction are:

> First, beginning at an unknown time but no later than in or about June 2014,
> and continuing through May 3, 2015, there was an agreement between two or more persons to provide material support or resources to ISIL, a designated foreign terrorist organization;

> Second, the defendant became a member of the conspiracy knowing of its unlawful object and intending to help accomplish it;
>
> Third, ISIL was designated a foreign terrorist organization at the time of the conspiracy;
>
> Fourth, the defendant knew that at least one of the following conditions existed:
> a. That ISIL was a designated foreign'terrorist organization; or
> b. That ISIL has engaged, or was engaging, in terrorist activity; or
> c. That ISIL has engaged, or was engaging, in terrorism; and
>
> Fifth, the offense occurred in whole, or in part, within the United States.

Doc.287, p.14.

At the outset, if an offense can be committed without use of force, it is not a crime of violence. Courts use the categorical approach to determine whether an offense is a crime of violence. *Borden v. United States*, 141 S.Ct. 1817, 1822 (2021). If even the least culpable acts criminalized do not entail the requisite force, the statute of conviction does not match the federal definition and so cannot serve as a crime of violence. In *Borden*, supra, the Supreme Court decided whether the definition of a violent crime includes offenses that criminalize reckless conduct. It held it does not. 141 S.Ct. at 1825. The government might argue that aggravated assault under Texas law, V.T.C.A. Penal Code §22.01, requires the use of force. However, the definition of assault provides, in pertinent part,

8

"A person commits an offense if the person:

    (1) Intentionally, knowingly, or **recklessly** causes bodily injury to

    another…;" (emphasis added)

§ 22.01(a), V.T.C.A. Penal Code.

Because there was no special verdict or interrogatory recording whether the jury decided which of the alternatives were chosen - "murder and/or aggravated assault," the rule of lenity guides us to the lesser of the two, the aggravated assault. As shown above, that statute does not qualify as a crime of violence. Accordingly, the application of the adjustment in paragraph 43 of the DPSR is an error.

There is no evidence to support the presentence report writer's statement that the defendant was aware that Soofi wore body armor, just he was aware that Simpson did not and § 3B1.5 does not apply since none of the counts is a crime of violence as is explained in Abdul Kareem's sentencing memorandum.

Pursuant to 3B1.2, Abdul Kareem is entitled to a reduction due to his role in the offense. Simpson and Soofi traveled to Garland, Texas to carry out an act of terror. They drove 1000 miles after packing guns. Soofi told his son goodbye. Another provided money to Simpson for his attack that he repaid by giving him the title and keys to his car.

Abdul Kareem did not travel to Garland, Texas. He did not tweet support to ISIS or the Islamic State as was done by Simpson. He did not help them load their vehicle nor

9

was he seen with Simpson in the days leading up to the attack in Garland. Although Abdul Kareem continues to deny any involvement, the court should make at least a two level reduction.

¶ 45 **Adjusted Offense Level (Subtotal)**. Abdul Kareem states that the Adjusted Offense Level should be 28.

¶ 52 **Multiple Count Adjustment**:

| Group # | Adjusted Offense Levels | Units |
|---------|------------------------|-------|
| 1 | 28 | 1.0 |
| 2 | 14 | 0.0 |

¶ 53 **Greater of the Adjusted Offense Level Above**. The level should be 28.

¶ 55 **Total Offense Level**. The level should be 28.

**Part B. Defendant's Criminal History**.

¶ 73 **Criminal Conduct** involved a civil dispute between Abdul Kareem and Budget Truck Rental. The truck broke down and Abdul Kareem wanted Budget to tow it in but Budget refused. There were never any criminal complaints filed to Abdul Kareem's knowledge.

**PART D – SENTENCING OPTIONS**

¶ 92, Abdul Kareem believes that the total offense level should be 28 with a criminal history of II and that the guidelines imprisonment range is 87-108 months.

## PART E: FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM.

### The Nature and Circumstances of the Offense Warrant a Downward Departure or Variance.

While Simpson and Soofi committed a serious crime, this Court should consider the minimal role Abdul Kareem was found guilty of aiding and abetting a conspiracy. Although Abdul Kareem continues to deny any involvement in the conspiracy, the jury found him guilty.

Under 18 U.S.C. § 3553(a), the Court may consider factors not ordinarily deemed relevant by the Sentencing Guidelines. *Gall v. United States*, 552 U.S. 38. In *Gall*, the Court upheld a downward variance based in large part on withdrawal from the conspiracy even though withdrawal from conspiracy is not a factor ordinarily considered under the Guidelines. *Id*.

The most important and uncontroverted facts established at trial were that Abdul Kareem did not travel to Garland, Texas nor did he participate in the attack. While the attack was occurring, Abdul Kareem was 1,000 miles away working for his moving business. While witnesses testified that Abdul Kareem had possible knowledge of Simpson and Soofi's desire to do harm at the Draw Muhammad Contest, there was no evidence that Abdul Kareem knew any details of the plan or took any steps to go to Texas to participate in the attack. Additionally, even Stefen Verdugo testified that he talked

11

Abdul Kareem out of going to Garland or participating in an assault at the Muhammad Drawing Contest. DPSR ¶23. Abdul Kareem requests this Court consider this along with his minor or minimal participation in the conspiracy as discussed early and grant a downward variance in his sentence.

**The Nature of the Offense Falls Outside the Heartland of Cases to Which the Federal Guideline Range Describes Therefore a Downward Departure is Warranted.**

Abdul Kareem moves for a downward departure pursuant to 5K2.0(a)(2)A) and (B), which provide that the Court can depart downward if there is a factor not adequately taken into consideration by the Sentencing Commission or in exceptional cases in which there is present a circumstance that the Sentencing Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence. Alternatively, he argues for being sentenced to the low end of the guideline range.

Chapter 1, Part A(b) of the Federal Sentencing Guidelines Manual states that sentencing courts are to treat each guideline as carving out a "heartland" which is a set of typical cases embodying the conduct that the guideline describes. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Section 5K2.0(a)(4) states "a departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is

12

taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of an offense."

The sentencing court may consider disregarding the Guidelines sentence where the case falls outside the "heartland" to which the Commission intends individual Guidelines to apply. *Rita v United States*, 551 U.S. 338, 351 (2007).

Here, the offense for which Abdul Kareem was convicted falls outside the "heartland" of cases applicable to the guideline range. The instant case is extremely unusual, in that Abdul Kareem has no ties to ISIS or any other terrorist organization. In contrast to Simpson, there is no evidence that he communicated with anyone from ISIS nor did he pledge allegiance to ISIS. Unlike Simpson, Abdul Kareem did not attempt to travel to a foreign country to fight on behalf of a terrorist organization. Most importantly, Abdul Kareem did not travel to Garland or participate in the Garland attack. Also, it should be noted that since this trial we have learned that in the weeks leading up to the Garland attack the FBI was monitoring and following Simpson. No evidence provided by the FBI's surveillance showed that Simpson and Abdul Kareem were even in contact. Given the minimal and attenuated role that Abdul Kareem was convicted of playing in the offense, this case falls outside the heartland to which Guidelines apply.

13

**Harshness of Pretrial Confinement**

The Court should take into account that Abdul Kareem was subjected to solitary confinement from the time he was arrested and charged through his trial; *i.e.*, approximately ten (10) months. He was in a cell that was approximately 7 by 12 with a bed on the ground and no chair. When he met with counsel, he had to sit on the floor next to a grate in his jail door. He was not allowed outside or into an exercise facility and did not have access to a TV, radio or other prisoners. The harshness of this confinement should be taken into consideration in his sentencing. *United States v. Carty*, 264 F.3d 191 (2nd Cir. 2001); *United States v. Pressley*, 345 F.3d 1205 (11th Cir. 2003).

**Justice and Fairness**

Lastly, judges are entitled to use their own sense of what is fair and just. *United States v. Cruz-Rodriguez*, 541 F.3d 19 (1st Cir. 2008); and *United States v. Jones*, 460 F.3d 191 (2nd Cir. 2006). The judge can impose a non-guideline sentence when she considers her own sense of what is fair and just as long as the judge considers the sentencing factors outlined in section 3553(a). The historic role of sentencing judges is to do what is fair and just subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness. In this case, the evidence was conflicting. Abdul Kareem took the stand to explain what he had done and why and to explain how certain things may have gotten into computers he owned because he

permitted others to use them.

The climate in America is a very difficult one for American Muslims to get a fair trial when they are accused of supporting terrorism, especially at the time of trial. Admittedly, Simpson and Soofi did support terrorism. Soofi told his son of his support of terrorism and his plan to go to Garland, Texas but he never mentioned that Abdul Kareem was involved. Simpson and Soofi visited Abdul Kabir Wahid the night they left for Garland and left an envelope for Saabir Nurse but they never mentioned Abdul Kareem. There were no written messages, phone calls or texts to Abdul Kareem about Garland. Although he has been convicted, the judge should decide what she believes is a fair and just sentence under all of these circumstances.

**Conclusion**

The DPSR writer has made factual determinations that are not supported by the record and has added enhancements and upward departures that are not appropriate as outlined above. Abdul Kareem will be filing a sentencing memorandum that will elaborate on the arguments made in this memorandum in favor of a downward departure and or a sentence outside the advisory Guideline System and address the sentencing factors of 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED this 8th day of October, 2021.

**MAYNARD CRONIN ERICKSON & CURRAN, P.L.C.**

By /s/Daniel D. Maynard
    Daniel D. Maynard
    3200 North Central Avenue, Ste. 1800
    Phoenix, Arizona 85012
    Attorneys for Defendant/Appellant

**DRAKE LAW, PLC**

By /s/Daniel R. Drake
    Daniel R. Drake
    4340 East Indian School Road
    Suite 21-113
    Phoenix, Arizona 85018
    Attorney for Defendant/Appellant

# CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to CM/ECF registrants: AUSA Joseph E. Koehler and AUSA Kristen Brook. Additionally, a copy was served upon Mr. Abdul Kareem by first class letter, postage prepaid, at:

> Abdul Malik Abdul Kareem #44126-408
> Central Arizona Florence Correctional Complex
> P.O. Box 6300
> Florence, AZ 85132

                /s/Rosalie Mobley
                Rosalie Mobley