GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

KRISTEN BROOK
Arizona State Bar No. 023121
JOSEPH E. KOEHLER
Arizona State Bar No. 013288
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: kristen.brook@usdoj.gov
Email: joe.koehler@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Abdul Malik Abdul Kareem,<br><br>Defendant. | No. CR-15-00707-01-PHX-SRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM FOR RESENTENCING** |

**SENTENCING MEMORADUM**

The United States of America respectfully submits this memorandum to assist the Court at re-sentencing on October 19, 2021. For the reasons set forth below, the Court should impose a sentence of 420 months imprisonment. The statutory maximum terms are 5 years each for Counts 1 and 3, 10 years for Count 4, and 15 years for Count 5, for a total of 35 years. PSR ¶ 91. Thus, the combined statutory maximum is 420 months.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties and the Court have repeatedly set forth the factual and procedural background of this case, so the government will refrain from doing so again here. This memorandum will focus on the facts and law pertinent to application of § 3553(a) factors at sentencing.

**A. The Presentence Report**

The Presentence Report, (Doc. 731) filed October 14, 2021, provides a Base Offense Level of 38, with an upward adjustment of 2 levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and arrives at an Adjusted Offense Level of 40. PSR ¶ 45. The government has conceded § 3B1.5 no longer applies in the wake of the Supreme Court's decision in *United States v. Borden*, 141 S. Ct. 1817, 1822 (2021). Thus, the Adjusted Offense Level remains at 40.

In February 2017, this Court found that the Base Offense Level offense was "38 because the cross reference applied under U.S.S.G. § 2M5.3 is U.S.S.G. § 2A1.2 (Second Degree Murder) rather than U.S.S.G. § 2A1.1 (First Degree Murder)." (CR 482 at 1.) In its response to Kareem's objections to the presentence report (Doc. 728) the government noted the First Degree Murder cross reference is more appropriate. Sections 2A1.1(a) and 2M5.3(c)(1) properly apply because the conspiracies for which Kareem stands convicted knowingly and intentionally resulted in the deaths of Simpson and Soofi. PSR ¶ 40. Under § 2M5.3 the cross-reference in subsection (c)(1) applies because Kareem "intentionally and knowingly" caused the deaths of Simpson and Soofi for purposes of the felony-murder rule by intentionally conspiring to violate the material-support statute in a context where those deaths were not merely foreseeable, but expected.[1]

The multiple count adjustments do not result in any change and no adjustment for acceptance of responsibility applies, so if the Court applies U.S.S.G. § 2A1.2 (Second Degree Murder) under U.S.S.G. § 2M5.3, and an upward adjustment of 2 levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1, the Total Offense Level remains at 40. PSR ¶¶ 44 and 52. The resulting guideline range is 324-405 months. PSR ¶ 92. However,

---

[1] Application Note 2B to § 2A1.1 does not alter the result because it considers a downward departure only if the defendant's reduced *mens rea* and the context warrant such a departure. Here, nothing in the manner in which Simpson or Soofi died or Kareem's own conduct provides mitigation for Kareem.

if the Court applies U.S.S.G. § 2A1.1 (First Degree Murder) under U.S.S.G. § 2M5.3, the Total Offense Level would increase to Level 43, with a resulting range of 420 months. The same would be true if the Court applies the terrorism enhancement in U.S.S.G. § 3A1.4.

As stated in its objections to the presentence report and its response to the defendant's objections, the government respectfully submits the Total Adjusted Offense Level should be 43, pursuant to U.S.S.G. Ch. 5, Pt. A cmt. n.2 ("An offense level of more than 43 is to be treated as an offense level of 43.").

**B. Sentencing Recommendation**

First, the "nature and circumstances of the offense" were extremely grave and easily could have resulted in the death of hundreds of civilians and law enforcement officers. Kareem's role in the conspiracies to provide material support to ISIS and to transport firearms in interstate commerce effectively amounts to his having facilitated an attempted mass murder. It is difficult to imagine a more serious offense. The guidelines recommend a life sentence for a defendant like Kareem with an offense level of 43, whether in Criminal History Category II or VI, although the statutory maximum sentence in this case is 420 months.

Next, the "history and characteristics of the defendant" are also a significant concern and call for a sentence consistent with the guideline calculation above – 420 months. Kareem has five criminal convictions, has repeatedly failed to comply with court orders while on probation, and has a history of disregarding his release conditions. (PSR ¶¶ 60-64.) Kareem also has an acknowledged alcohol problem, mental health issues, carries and possesses weapons despite the fact that he is prohibited from doing so under federal and Arizona law, and was arrested while in possession of a bullet proof vest and two firearms. (PSR ¶¶ 2, 17, 30, 63, 67, 86, 87, 102.) Kareem's offenses were not a first-time mistake.

Under section 3553(a)(2), the Court must consider whether the sentence will "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." In this case, all of these factors weigh heavily in

favor of the defendant receiving a lengthy sentence for his crimes. Indeed, this crime was motivated by Kareem's ideological belief system – his purposeful allegiance and commitment to ISIS. Kareem sought to answer ISIS's call to kill non-believers. Kareem's discussions with Simpson and Soofi about attacking other potential targets highlight the risk Kareem poses to the United States whenever he is released from custody.

Further, § 3553(a)(4)(A)(i) – which requires sentencing courts to consider "the sentencing range . . . set forth in the guidelines" – also supports the recommended approach. Although the guidelines are not binding, the Supreme Court has emphasized they still serve as the "starting point and initial benchmark" for sentencing decisions, *Gall v. United States*, 552 U.S. 38, 49 (2007), and deserve "respectful consideration." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Finally, the court must consider the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). The sentence requested by the defendant would constitute a variance well below the bottom of the advisory guideline range. The Government is requesting a 420-month sentence for Kareem, as any sentence short of the statutory maximum would not be appropriate.

In the Tenth Circuit, Patrick Stein, Curtis Allen, and Gavin Wright were sentenced to 25, 26 and 30 years imprisonment in Kansas, after jury convictions on charges of conspiring to detonate a bomb at an apartment complex in Garden City where Muslim immigrants lived. These sentences were affirmed on appeal. *United States v. Stein,* 985 F.3d 1254 (2021). The trio was convicted on one count of conspiracy to use a weapon of mass destruction and one count of conspiracy to violate the housing rights of their intended victims. (*Id*.) These defendants did not execute an attack or detonate a device. The conspirators in the instant case moved from plot to action, and two of them died in the attempt. The significant difference in violent action here merits a higher sentence and shows that a downward departure is inappropriate.

In the Third Circuit, Mohamed Elshinawy was sentenced to 20 years in prison and 15 years of supervised release for conspiracy to provide material support to ISIS, providing

and attempting to provide material support to ISIS, terrorism financing, and making false statements in connection with a terrorism matter. *United States v. Eishinawy*, 781 Fed. Appx. 168 (2019). Elshinawy plotted primarily with an FBI informant to provide funding and support to ISIS. Elshinawy also tried to recruit his brother Ahmed (who lived in Saudi Arabia) to join ISIS. Again, this case is distinguished from the conspiracy in this case as Elshinawy never moved from plot to action.

In the Central District of California in October of 2020, Enrique Marquez, Jr., pleaded guilty to conspiracy to provide material support to terrorists and making false statements regarding his involvement in the purchase of guns used by Syed Farook and Farook's wife, Tashfeen Malik, in a 2015 attack at the Inland Regional Center, in San Bernadino. Farook and Malik killed 14 people in the attack. *United States v. Marquez*, No. CR-15-00093-JGB (C.D. CA). Marquez was sentenced to 20 years of imprisonment. Importantly, Marquez purchased the weapons for Farook in 2011 and 2012, three years before the attack. He was not aware of Malik or Farook's eventual plan to attack the Inland Regional Center. Evidence did show he was aware of preliminary attack plans on other locations. Farook persuaded Marquez to convert to Islam at age 16. Marquez broke away from Farook in approximately 2012, after the gun purchase but well before the terrorist attack. CR-15-00093-JGB Doc. 65 at 18-23 (C.D. CA).

In Arizona, Abdul Khabir Wahid (a defense witness in this case) was sentenced to 67 months for offenses he committed *after* the Garland attack. Wahid was convicted of two separate, yet serious offenses predicated on his attempt to foil and harm the terrorism investigation into the Garland attack. First, Wahid willfully made material false statements to the FBI during the course of the terrorism investigation following the Garland attack. Second, Wahid attempted to corruptly persuade and hinder a critical witness from communicating with FBI agents regarding the same investigation. Wahid's conduct did not involve the planning or carrying out of a terror attack; his offenses both occurred after the Garland attack. *United States v. Wahid*, No. CR-17-0036-01-PHX-JJT (D. AZ).

Cases have arisen in which defendants received sentences of life in prison for types of conduct similar to those involved in the conspiracy in this case. In the Eastern District of New York, Russell Defreitas and coconspirator Abdul Kadir were both sentenced to life in prison for conspiring to commit a terrorist attack at John F. Kennedy International Airport in Queens, New York, for plotting to blow up fuel tanks and the fuel pipeline under the airport. Defreitas and Kadir were arrested before this plan came to fruition. *United States v. Defreitas*, Eastern District of New York, Case No. 07-CR-543 DLI SMG. The Second Circuit upheld both Defreitas' and Kadir's convictions and stated that the "gravity of the crimes for which they were convicted easily justifies the life sentences that were imposed." *United States v. Kadir*, 718 F.3d 115, 126 (2d Cir. 2013). Kareem Ibrahim, a third defendant, was convicted of aiding the conspiracy. Ibrahim operated from the country of Trinidad and provided spiritual instruction and operational support to other conspirators. Ibrahim likewise was sentenced to life in prison, which was affirmed on appeal. *United States v. Ibrahim,* 529 F. App'x 59, 65 (2d Cir. 2013). Similarly, in the District of New Jersey, Eljvir Duka, Mohamad Ibrahim Shnewer, Dritan Duka and Shain Duka each were sentenced to life imprisonment for conspiring to use assault rifles and grenades to attack and kill U.S. soldiers at the United States Army Base at Fort Dix. Additionally, Mohamad Ibrahim Shnewer, Dritan Duka and Shain Duka received life plus 30 years. Similarly, the defendants were arrested before this plan could be carried out. *United States v. Duka,* 671 F.3d 329, 333, 335 (3d Cir. 2011).

**C. Conclusion**

Based on the foregoing, the United States respectfully recommends the Court impose a sentence of 420 months imprisonment.

Respectfully submitted this 16th day of October, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

 *s/Kristen Brook*
KRISTEN BROOK
JOSEPH E. KOEHLER

Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of October 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that true and accurate copies have been transmitted electronically to counsel for the defendant via the ECF system.

Daniel Maynard and Daniel Drake, Attorneys for Defendant

By: /s Kristen Brook